No. 24-4471

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH COURT

_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

UMAR FAROOQ CHAUDHRY,
*Defendant/Appellant.*

_____

On Appeal From the United States District Court
for the Eastern District of Virginia
Alexandria Division (The Hon. Leonie M. Brinkema)

_____

JOINT APPENDIX

VOLUME I of III (pages 1–178)

_____

JESSICA D. ABER
United States Attorney

Joseph Attias
Assistant United States Attorney
Counsel for Appellee
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700

GEREMY C. KAMENS
Federal Public Defender

Geremy C. Kamens
Federal Public Defender
Counsel for Appellant
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800

This page intentionally left blank for double-sided pagination and printing

# TABLE OF CONTENTS

## VOLUME I (pages 1–178)

District Court Docket Sheet (as of Dec. 2, 2024) ....................................................1

Criminal Complaint (Dec. 23, 2009, Doc. 1)..........................................................23

Government's Motion for Limited Unsealing Order (Dec. 24, 2009, Doc. 6)........24

Government's Motion for Limited Unsealing Order (Dec. 31, 2009, Doc. 8)........26

Indictment (Nov. 16, 2017, Doc. 10).......................................................................28

Government's Motion to Certify Case as Complex Under the Speedy Trial
    Act (Sept. 12, 2022, Doc. 69) ..............................................................................34

Order (certifying case as complex) (Sept. 13, 2022, Doc. 73) ................................38

Government's Second Motion to Certify Case as Complex Under the Speedy
    Trial Act (Jan. 25, 2023, Doc. 100) .....................................................................40

Order (certifying case as complex) (Jan. 26, 2023, Doc. 101) ...............................44

Government's Memorandum Memorializing Sentencing Recommendation
    [as to co-defendants Minni and Zamzam] (Apr. 21, 2023, Doc. 114) ...............46

Transcript, Arraignment (Dec. 12, 2023, Doc. 205)................................................61

Defendant's Motion to Dismiss Indictment for Violating the Right to a Speedy
    Trial and Rule 48 (Jan. 11, 2024, Doc. 165) .......................................................68

Government's Opposition to Defendant's Motion to Dismiss Indictment on
    Speedy Trial Grounds (Feb. 12, 2024, Doc. 168)................................................80

Attachment 1 (summary of Dec. 15, 2009, meeting between Assistant
    Legal Attaché and Pakistani Director General of National Crisis
    Management Center, Ministry of Interior) ......................................................112

Attachment 2 (correspondence from Legal Attaché to Pakistani Secretary
    of Ministry of Interior re. transfer of custody of five Americans in
    Sargodha, dated Dec. 24, 2009).......................................................................118

Attachment 3 (five Interpol Red Notice applications)......................................122

Attachment 4 (declaration of Jeffrey M. Olsen)..............................................150

Attachment 5 (letter from Legal Attaché to Pakistani Secretary of Ministry of Interior re. coordination of disposition of five Americans in Sargodha, dated June 23, 2010) ..........................................................................................164

Attachment 6 (memorandum from Legal Attaché to Pakistani Director General of Federal Investigation Agency re. request for meeting to discuss development of a mutual legal assistance treaty, dated Mar. 4, 2013)............168

Attachment 7 (extradition treaty between United Kingdom and United States, signed Dec. 22, 1931, and entered into force June 24, 1935)...............171

Attachment 8 (duplicate of attachment 5) ................................................. omitted

## VOLUME II (pages 179–322)

Defendant's Reply in Support of Motion to Dismiss Indictment for Violating the Sixth Amendment Right to a Speedy Trial and Rule 48(b) (Feb. 22, 2024, Doc. 172)...................................................................................................179

Defendant's Supplement to Motion to Dismiss Indictment (Mar. 27, 2024, Doc. 174)..................................................................................................................190

Exhibit 1 (*United States v. Palos*)....................................................................192

Exhibit 2 (consular visit notes) ........................................................................197

Transcript, Hearing on Motion to Dismiss Indictment (Apr. 4, 2024, Doc. 178) ...............................................................................................................................198

Argument by defense ........................................................................................199

Argument by government ..................................................................................201

Rebuttal by defense...........................................................................................207

Court's ruling.....................................................................................................211

Defense Hearing Exhibit 1 (Apr. 4, 2024, Doc. 176-1) (excerpt from summary of Dec. 15, 2009, meeting between Assistant Legal Attaché and Pakistani Director General of National Crisis Management Center, Ministry of Interior) ...................................................................................217

Order (denying motion to dismiss indictment) (Apr. 9, 2024, Doc. 177) ............218

Transcript, Plea Hearing (May 2, 2024, Doc. 201) ................................................219

Plea Agreement (May 2, 2024, Doc. 180) ............................................................246

Statement of Facts (May 2, 2024, Doc. 181) ........................................................254

Opinion (denying motion to dismiss indictment) (June 5, 2024, Doc. 182) .........266

Defendant's Position on Sentencing (Aug. 7, 2024, Doc. 188)............................283

    Exhibit 1 (declaration of Khalid Farooq Chaudhry).......................................293

Transcript, Sentencing Hearing (Aug. 14, 2024, Doc. 202).................................296

Judgment in a Criminal Case (Aug. 14, 2024, Doc. 193).....................................315

Notice of Appeal (Aug. 28, 2024, Doc. 195)........................................................321

## VOLUME III (pages 323–end) – SEALED

Exhibit 1 to Co-Defendant Aman Yemer's Motion for Emergency Relief and for a Hearing (Aug. 4, 2020, Doc. 29-1) (judgment, District and Sessions Judge of the Anti-Terrorism Court, Sargodha, Pakistan, dated June 24, 2010) .....................................................................................................323

Government's Supplemental Response to Defendant Yemer's Motion for Emergency Relief (Aug. 26, 2020, Doc. 38) ....................................................391

Diplomatic Note from U.S. Embassy to Pakistani Ministry of Foreign Affairs, dated Jan. 8, 2010 ..........................................................................................405

Diplomatic Note from U.S. Embassy to Pakistani Ministry of Foreign Affairs, dated Jan. 15, 2010 ........................................................................................408

This page intentionally left blank for double-sided pagination and printing

# U.S. District Court
## Eastern District of Virginia – (Alexandria)
## CRIMINAL DOCKET FOR CASE #: 1:17–cr–00270–LMB All Defendants

Case title: USA v. Minni, et al            Date Filed: 11/16/2017

Assigned to: District Judge
Leonie M. Brinkema

### Defendant (1)

| | | |
|---|---|---|
| **Ahmed Ameer Minni**<br>*TERMINATED: 08/03/2023* | represented by | **Marc Jason Eisenstein**<br>Coburn & Greenbaum, PLLC<br>1710 Rhode Island Avenue, NW<br>Ste 2nd Floor<br>Washington, DC 20036<br>202–470–2695<br>Fax: 866–561–9712<br>Email: marc@coburngreenbaum.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |
| | | **Edward B. MacMahon**<br>Law Offices of Edward B MacMahon Jr.<br>P.O. Box 25<br>107 East Washington Street<br>Middleburg, VA 20118<br>540–687–3902<br>Fax: 540–687–6366<br>Email: ebmjr@macmahon–law.com<br>*TERMINATED: 08/24/2022*<br>*Designation: CJA Appointment* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:2339B Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization (3) | BOP: TIME SERVED, 20 years supervised release, $100.00 special assessment |

**Highest Offense Level
(Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:2339A Conspiracy to Provide Material Support to Terrorists (1) | Dismissed on govt motion – 8/1/2023 |
| 18:2339A Attempting to Provide Material Support to Terrorists (2) | Dismissed on govt motion – 8/1/2023 |
| 18:2339B Attempting to Provide Material Support to a Designated Foreign Terrorist Organization (4) | Dismissed on govt motion – 8/1/2023 |

**Highest Offense Level**

**(Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| 18:2339A Conspiracy to provide material support to terrorists | |

Assigned to: District Judge
Leonie M. Brinkema

**Defendant (2)**

| **Ramy Said Zamzam** | represented by | **Jessica Nicole Carmichael** |
| --- | --- | --- |
| *TERMINATED: 08/03/2023* | | Carmichael Ellis & Brock |
| | | 108 N Alfred St |
| | | 1st Floor |
| | | Alexandria, VA 22314 |
| | | 703–684–7908 |
| | | Fax: 703–649–6360 |
| | | Email: jessica@carmichaellegal.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: CJA Appointment* |

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:2339B Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization (3) | BOP: TIME SERVED 20 years supervised release, $100.00 special assessment |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 18:2339A Conspiracy to Provide Material Support to Terrorists (1) | Dismissed on govt motion 08/01/2023 |
| 18:2339A Attempting to Provide Material Support to Terrorists (2) | Dismissed on govt motion 08/01/2023 |
| 18:2339B Attempting to Provide Material Support to a Designated Foreign Terrorist Organization (4) | Dismissed on govt motion 08/01/2023 |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| 18:2339A Conspiracy to provide material support to terrorists | |

Assigned to: District Judge Leonie M. Brinkema

**Defendant (3)**

**Aman Hassan Yemer**
*TERMINATED: 10/19/2023*

represented by **Nina J. Ginsberg**
DiMuroGinsberg, P.C.
1001 N. Fairfax Street
Suite 510
Alexandria, VA 22314
703−684−4333
Fax: 703−548−3181
Email: nginsberg@dimuro.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Pending Counts**

**Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**

**Disposition**

18:2339A Conspiracy to Provide
Material Support to Terrorists
(1)

Dismissed on govt motion 10/19/2023.

18:2339A Attempting to Provide
Material Support to Terrorists
(2)

Dismissed on govt motion 10/19/2023.

18:2339B Conspiracy to Provide
Material Support to a Designated
Foreign Terrorist Organization
(3)

Dismissed on govt motion 10/19/2023.

18:2339B Attempting to Provide
Material Support to a Designated
Foreign Terrorist Organization
(4)

Dismissed on govt motion 10/19/2023.

**Highest Offense Level
(Terminated)**

Felony

**Complaints**

**Disposition**

18:2339A Conspiracy to provide
material support to terrorists

Assigned to: District Judge Leonie
M. Brinkema

Appeals court case number:
24−4471 4th Circuit

**Defendant (4)**

**Umar Farooq Chaudhry**
*TERMINATED: 08/14/2024*

represented by **Geremy C. Kamens**
Office of Federal Public Defender
1650 King St
Suite 500
Alexandria, VA 22314

(703) 600–0800
Email: Geremy_Kamens@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lula Hagos**
Office of the Federal Public Defender (Alexandria N/A)
1650 King St
Suite 500
Alexandria, VA 22314
N/A
703 600–0800
Email: lula_hagos@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender*

**Jessica Nicole Carmichael**
(See above for address)
*ATTORNEY TO BE NOTICED*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:2339A Conspiracy to Provide Material Support to Terrorists (1) | Dismissed pursuant to Order dated 8/14/2024 |
| 18:2339A Attempting to Provide Material Support to Terrorists (2) | Dismissed pursuant to Order dated 8/14/2024 |
| 18:2339B Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization (3) | BOP: TIME SERVED; 20 YR SR TERM w/ conditions; $100 SA |
| 18:2339B Attempting to Provide Material Support to a Designated Foreign Terrorist Organization (4) | Dismissed pursuant to Order dated 8/14/2024 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| 18:2339A Conspiracy to provide material support to terrorists | |

Assigned to: District Judge
Leonie M. Brinkema

**Defendant (5)**

**Waqar Hussain Khan**                  represented by   **Pleasant Sanford Brodnax , III**
Law Office of Pleasant S. Brodnax, III
1701 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
202−462−1100
Fax: 202−204−5165
Email: PLEASANT.BRODNAX@GMAIL.COM
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**                                        **Disposition**

18:2339A Conspiracy to
Provide Material Support to
Terrorists
(1)

18:2339A Attempting to
Provide Material Support to
Terrorists
(2)

18:2339B Conspiracy to
Provide Material Support to a
Designated Foreign Terrorist
Organization
(3)

18:2339B Attempting to
Provide Material Support to a
Designated Foreign Terrorist
Organization
(4)

**Highest Offense Level
(Opening)**

Felony

**Terminated Counts**                                     **Disposition**

None

**Highest Offense Level
(Terminated)**

None

**Complaints**                                            **Disposition**

18:2339A Conspiracy to
provide material support to
terrorists

---

**Plaintiff**

**USA**                                  represented by   **James Philip Gillis**
115 Second Street NE #4
Washington, DC 20002
571−271−4319
Email: james.p.gillis@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*Designation: US Attorney*

**John T. Gibbs**
DOJ–USAO
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Email: john.gibbs@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/23/2009 | 1 | COMPLAINT as to Ahmed Ameer Minni (1), Ramy Said Zamzam (2), Aman Hassan Yemer (3), Umar Farooq Chaudhry (4), Waqar Hussain Khan (5). (jlan)[1:09–mj–00858–TCB *SEALED*] (swil, ). (Entered: 12/23/2009) |
| 12/23/2009 | 2 | AFFIDAVIT by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan 1 Complaint (jlan)[1:09–mj–00858–TCB *SEALED*] (swil, ). (Entered: 12/23/2009) |
| 12/23/2009 | 3 | MOTION to Seal by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (jlan)[1:09–mj–00858–TCB *SEALED*] (swil, ). (Entered: 12/23/2009) |
| 12/23/2009 | 4 | ORDER granting 3 Motion to Seal as to Ahmed Ameer Minni (1), Ramy Said Zamzam (2), Aman Hassan Yemer (3), Umar Farooq Chaudhry (4), Waqar Hussain Khan (5). Signed by Magistrate Judge Theresa Carroll Buchanan on 12/23/2009. (jlan)[1:09–mj–00858–TCB *SEALED*] (swil, ). (Entered: 12/23/2009) |
| 12/24/2009 | 6 | Under Seal Motion by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (jlan)[1:09–mj–00858–TCB *SEALED*] (swil, ). (Entered: 12/24/2009) |
| 12/24/2009 | 7 | ORDER granting 6 Under Seal Motion as to Ahmed Ameer Minni (1); granting 6 Motion Under Seal Motion as to Ramy Said Zamzam (2); granting 6 Motion Under Seal Motion as to Aman Hassan Yemer (3); granting 6 Motion Under Seal Motion as to Umar Farooq Chaudhry (4); granting 6 Motion Under Seal Motion as to Waqar Hussain Khan (5). Signed by Magistrate Judge Theresa Carroll Buchanan on 12/24/2009. (jlan)[1:09–mj–00858–TCB *SEALED*] (swil, ). (Entered: 12/24/2009) |
| 12/31/2009 | 8 | MOTION for Limited Unsealing Order by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (jlan)[1:09–mj–00858–TCB *SEALED*] (swil, ). (Entered: 12/31/2009) |
| 12/31/2009 | 9 | ORDER granting 8 Motion for Limited Unsealing Order as to Ahmed Ameer Minni (1); granting 8 Motion for Limited Unsealing Order as to Ramy Said Zamzam (2); granting 8 Motion for Limited Unsealing Order as to Aman Hassan Yemer (3); granting 8 Motion for Limited Unsealing Order as to Umar Farooq Chaudhry (4); granting 8 Motion for Limited Unsealing Order as to Waqar Hussain Khan (5). Signed by Magistrate Judge Ivan D. Davis on 12/31/2009. (jlan)[1:09–mj–00858–TCB *SEALED*] (swil, ). (Entered: 12/31/2009) |
| 11/16/2017 | 10 | INDICTMENT as to Ahmed Ameer Minni (1) count(s) 1, 2, 3, 4, Ramy Said Zamzam (2) count(s) 1, 2, 3, 4, Aman Hassan Yemer (3) count(s) 1, 2, 3, 4, Umar Farooq Chaudhry (4) count(s) 1, 2, 3, 4, Waqar Hussain Khan (5) count(s) 1, 2, 3, 4. (lcre, ) (Entered: 11/17/2017) |
| 11/16/2017 | 12 | MOTION to Seal by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (lcre, ) (Entered: 11/17/2017) |
| 11/16/2017 | 13 | ORDER granting **until further order of the court** 12 Motion to Seal as to Ahmed Ameer Minni (1), Ramy Said Zamzam (2), Aman Hassan Yemer (3), Umar Farooq Chaudhry (4), Waqar Hussain Khan (5). Signed by Magistrate Judge Ivan D. Davis on 11/16/2017. (lcre, ) (Entered: 11/17/2017) |

| 11/16/2017 | 15 | Redacted Criminal Case Cover Sheet (lcre, ) (Entered: 11/17/2017) |
|---|---|---|
| 11/16/2017 | 16 | Arrest Warrant Issued by District Judge Liam O'Grady in case as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (lcre, ) (Entered: 11/17/2017) |
| 11/16/2017 | | **Interpreter Requested** in case as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan (lcre, ) (Entered: 11/17/2017) |
| 11/22/2019 | 17 | MOTION to Appoint Counsel by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (Attachments: # 1 Proposed Order)(lcre, ) (Entered: 11/22/2019) |
| 11/25/2019 | 18 | MOTION to Partially Unseal Indictment by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (Attachments: # 1 Proposed Order)(lcre, ) (Entered: 11/25/2019) |
| 12/10/2019 | 19 | ORDER granting 17 Motion to Appoint Counsel Edward B. MacMahon for Ahmed Ameer Minni,Jessica Nicole Carmichael for Ramy Said Zamzam,Nina J. Ginsberg for Aman Hassan Yemer,Lula Hagos for Umar Farooq Chaudhry,Pleasant Sanford Brodnax, III for Waqar Hussain Khan appointed. as to Ahmed Ameer Minni (1), Ramy Said Zamzam (2), Aman Hassan Yemer (3), Umar Farooq Chaudhry (4), Waqar Hussain Khan (5). Signed by District Judge Liam O'Grady on 12/10/2019. (lcre, ) (c/s per ORDER) (Entered: 12/11/2019) |
| 12/13/2019 | 20 | Sealed Motion by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (Attachments: # 1 Proposed Order)(lcre, ) (Entered: 12/17/2019) |
| 12/17/2019 | 21 | ORDER granting 20 Sealed Motion as to Ahmed Ameer Minni (1), Ramy Said Zamzam (2), Aman Hassan Yemer (3), Umar Farooq Chaudhry (4), Waqar Hussain Khan (5). Signed by District Judge Liam O'Grady on 12/17/2019. (lcre, ) (c/s) (Entered: 12/18/2019) |
| 12/17/2019 | 22 | AMENDED ORDER granting 17 Motion and 18 Motion as to Ahmed Ameer Minni (1), Ramy Said Zamzam (2), Aman Hassan Yemer (3), Umar Farooq Chaudhry (4), Waqar Hussain Khan (5). Signed by District Judge Liam O'Grady on 12/17/2019. (lcre, )(c/s) Modified on 12/18/2019 (lcre, ). Modified on 12/18/2019 (lcre, ). (Entered: 12/18/2019) |
| 12/27/2019 | 23 | Sealed Motion by Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry. (Attachments: # 1 Envelope)(choy, ) (Entered: 12/27/2019) |
| 01/09/2020 | 24 | RESPONSE by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan re 23 Sealed Motion (lcre, ) (Entered: 01/09/2020) |
| 06/26/2020 | 26 | ORDER granting 25 Motion as to Ahmed Ameer Minni (1);Ramy Said Zamzam (2); Aman Hassan Yemer (3); Umar Farooq Chaudhry (4)and ; Waqar Hussain Khan (5). Signed by Magistrate Judge Theresa C. Buchanan on 6/26/2020. (lcre, )(c/s) (Entered: 06/26/2020) |
| 06/26/2020 | 27 | MOTION a copy of sealed documents by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (lcre, ) (Entered: 06/26/2020) |
| 06/26/2020 | 28 | ORDER granting 27 Motion as to Ahmed Ameer Minni (1), Ramy Said Zamzam (2), Aman Hassan Yemer (3), Motion as to Umar Farooq Chaudhry, and Waqar Hussain Khan (5). Signed by Magistrate Judge Theresa Carroll Buchanan on 6/26/2020. (lcre, )(c/s) (Entered: 06/26/2020) |
| 08/04/2020 | 29 | MOTION for Emergency Relief and for a Hearing by Aman Hassan Yemer. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(lcre, ) (Entered: 08/04/2020) |
| 08/04/2020 | 30 | Order to Unseal Case as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. Signed by District Judge Liam O'Grady on 8/4/2020.(lcre, ) (Entered: 08/05/2020) |

| 08/05/2020 | | Set/Reset Deadlines re Motion or Report and Recommendation in case as to Aman Hassan Yemer <u>29</u> MOTION for Emergency Relief and for a Hearing. Motion Hearing set for 8/6/2020 at 10:30 AM in Alexandria Courtroom 1000 before District Judge Liam O'Grady. (awac, ) (Entered: 08/05/2020) |
|---|---|---|
| 08/05/2020 | <u>31</u> | RESPONSE in Opposition by USA as to Aman Hassan Yemer re <u>29</u> MOTION for Emergency Relief and for a Hearing (Gillis, James) (Entered: 08/05/2020) |
| 08/06/2020 | <u>32</u> | Minute Entry for proceedings held before District Judge Liam O'Grady:Motion Hearing as to Ahmed Ameer Minni, Aman Hassan Yemer, Waqar Hussain Khan held on 8/6/2020 re 29 MOTION for Emergency Relief and for a Hearing filed by Aman Hassan Yemer. USA appeared through James Gillis. Defendant Minni appeared through Edward MacMahon, defendant Yemer appeared through Nina Ginsberg and defendant Khan appeared through Pleasant Brodnax. Defendants Khan and Minni join in defendant Yemer's Motion for Emergency Relief. Counsel present arguments. Court makes ruling. Order to follow. Status Conference continued to 8/27/2020 at 02:00 PM in Alexandria Courtroom 1000 before District Judge Liam O'Grady. (Court Reporter S. Wallace.)(awac, ) (Entered: 08/06/2020) |
| 08/07/2020 | <u>33</u> | So ORDERED that the government is ORDERED to direct the State Department to make every effort to determine the status of each of the defendants. ORDERED to refrain from issuing further restrictions on the defendants' status without first communicating with the Court; and to have in place a firm and confirmed plan and itinerary by August 27, 2020 to return the defendants to the United States, or, in the event this is not possible, to provide an FBI agent or other appropriate government representative at the next hearing on August 27, 2020 to testify as to the ongoing efforts to effect such a return. The hearing on this motion shall be continued until August 27, 2020, at 2:00 p.m. re <u>29</u> MOTION for Emergency Relief and for a Hearing filed by Aman Hassan Yemer. Signed by District Judge Liam O'Grady on 8/7/2020. (lcre,) (Entered: 08/07/2020) |
| 08/25/2020 | <u>34</u> | AFFIDAVIT by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer 33 So Ordered,,, (Gillis, James) (Entered: 08/25/2020) |
| 08/26/2020 | <u>35</u> | MOTION for Protective Order *Pertaining to Classified Information* by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer. (Attachments: # <u>1</u> Proposed Order)(Gillis, James) (Entered: 08/26/2020) |
| 08/26/2020 | <u>36</u> | Docketed in Error and Removed.(lcre, ). (Main Document 36 replaced on 8/26/2020) (lcre, ). (Attachment 1 replaced on 8/26/2020) (lcre, ). (Entered: 08/26/2020) |
| 08/26/2020 | <u>37</u> | Sealed Motion by USA as to Aman Hassan Yemer. (Attachments: # <u>1</u> Proposed Order)(lcre, ) (Entered: 08/26/2020) |
| 08/26/2020 | <u>38</u> | Under Seal Response re 29 MOTION for Emergency Relief and for a Hearing filed by Aman Hassan Yemer (lcre, ) (Entered: 08/26/2020) |
| 08/27/2020 | <u>39</u> | Memorandum by Ahmed Ameer Minni re <u>35</u> MOTION for Protective Order *Pertaining to Classified Information Memorandum of Understanding Regarding Receipt of Classified Information – Edward B. MacMahon, Jr.* (MacMahon, Edward) (Entered: 08/27/2020) |
| 08/27/2020 | <u>40</u> | Memorandum by Ramy Said Zamzam re <u>35</u> MOTION for Protective Order *Pertaining to Classified Information* (Carmichael, Jessica) (Entered: 08/27/2020) |
| 08/27/2020 | <u>41</u> | Sealed Order as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. Signed by District Judge Liam O'Grady on 8/27/2020. (lcre, )(c/s) (Entered: 08/27/2020) |
| 08/27/2020 | <u>42</u> | Sealed Document (awac, ) (Entered: 08/27/2020) |
| 08/27/2020 | <u>43</u> | Minute Entry for proceedings held before District Judge Liam O'Grady:Status Conference held on 8/27/2020 as to Ahmed Ameer Minni who appeared by Edward MacMahon, Ramy Said Zamzam who appeared by Jessica Carmichael, Aman Hassan Yemer who appeared by Nina Ginsberg and Umar Farooq Chaudhry who appeared by Geremy Kamens. USA appeared through James Gillis. Counsel present arguments on pleadings. Court grants motion for protective order. Court grants government's motion to continue this matter to Thursday, October 8, 2020 at 3:00 p.m. (Court Reporter S. |

| | | |
|---|---|---|
| | | Wallace.)(awac, ) (Entered: 08/28/2020) |
| 08/27/2020 | | Set/Reset Hearings as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan: Status Conference set for 10/8/2020 at 03:00 PM in Alexandria Courtroom 1000 before District Judge Liam O'Grady. (awac, ) (Entered: 08/28/2020) |
| 08/27/2020 | 44 | PROTECTIVE ORDER as to Ahmed Ameer Minni (1), Ramy Said Zamzam (2), Aman Hassan Yemer (3). Signed by District Judge Liam O'Grady on 8/27/2020. (awac, ) (Entered: 08/28/2020) |
| 09/22/2020 | 45 | NOTICE OF ATTORNEY APPEARANCE John T. Gibbs appearing for USA. (Gibbs, John) (Main Document 45 replaced on 9/23/2020) (lcre, ). (Entered: 09/22/2020) |
| 10/08/2020 | | Status Conference set for 10/8/2020 is UNDER SEAL and will be held telephonically. No interpreter needed. (awac, ) (Entered: 10/08/2020) |
| 10/08/2020 | 46 | Minute Entry for proceedings held before District Judge Liam O'Grady:Sealed Minutes held on 10/8/2020 (Court Reporter S. Wallace.)(cc: via US mail to defense counsel and interoffice to AUSA)(awac, ) (Entered: 10/08/2020) |
| 10/08/2020 | | Set/Reset Hearings as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer: SEALED Telephone Status Conference set for 11/10/2020 at 03:00 PM in Alexandria Telephonically before District Judge Liam O'Grady. (awac, ) (Entered: 10/08/2020) |
| 10/22/2020 | 47 | MOTION FOR CERTIFIED COPIES OF ARREST WARRANTS by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (Attachments: # 1 Proposed Order)(Gillis, James) (Entered: 10/22/2020) |
| 10/23/2020 | 48 | ORDER granting 47 Motion as to Ahmed Ameer Minni (1); Ramy Said Zamzam (2); Aman Hassan Yemer (3); Umar Farooq Chaudhry (4); and as to Waqar Hussain Khan (5). Signed by District Judge Liam O'Grady on 10/23/2020. (lcre, ) (Entered: 10/23/2020) |
| 11/10/2020 | 49 | Minute Entry for proceedings held before District Judge Liam O'Grady: Sealed Minutes of Under Seal telephone conference held on 11/10/2020. SEALED Telephone Conference set for 12/10/2020 at 01:30 PM in Alexandria Telephonically before District Judge Liam O'Grady. (Court Reporter: S. Wallace)(tarm) (Entered: 11/12/2020) |
| 12/10/2020 | 50 | Minute Entry for proceedings held before District Judge Liam O'Grady: Sealed Minutes of Under Seal telephone conference held on 12/10/2020. (Court Reporter: S. Wallace.)(tarm) (Entered: 12/10/2020) |
| 01/22/2021 | 51 | ORDERED that the Government, on or before January 26, 2021 contact the UnitChief for the American Consular Services who spoke to the defendants on January 6, 2021. and apprise that individual of the content of the above–referenced letter, specifically requesting current information regarding the health of the defendants. The Government is directed to report back to the Court on or before February 4, 2021. After a review of the Government's report the Court will schedule a status conference. Signed by District Judge Liam O'Grady on 1/22/2021. (lcre, ) (Entered: 01/22/2021) |
| 01/28/2021 | 52 | Sealed Document (pmil, ) (Entered: 01/28/2021) |
| 02/11/2021 | 53 | MOTION to Set Status Hearing by Aman Hassan Yemer. (Ginsberg, Nina) (Entered: 02/11/2021) |
| 02/11/2021 | 54 | MOTION to Adopt and Join Defendant Yemer's Motion by Ramy Said Zamzam. (Carmichael, Jessica) (Entered: 02/11/2021) |
| 02/12/2021 | 55 | MOTION for Joinder by Ahmed Ameer Minni as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (MacMahon, Edward) (Entered: 02/12/2021) |
| 08/24/2022 | 56 | ORDERED that Edward B. MacMahon, Jr., is hereby relieved as counsel for Ahmed Ameer Minni. It is further ORDERED that Marc Eisenstein is hereby appointed as counsel for Ahmed Ameer Minni effective immediately. Signed by District Judge |

| | | |
|---|---|---|
| | | Liam O'Grady on 8/24/2022. (swil) (Entered: 08/24/2022) |
| 09/07/2022 | | Case as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan Reassigned to District Judge Leonie M. Brinkema. District Judge Liam O'Grady no longer assigned to the case. (jlan) (Entered: 09/07/2022) |
| 09/07/2022 | 57 | Pretrial Services Bond REPORT (Initial Pretrial Services Bond Report) (SEALED – government and defense counsel) as to Ahmed Ameer Minni. (pet, leo) (Entered: 09/07/2022) |
| 09/07/2022 | 58 | Pretrial Services Bond REPORT (Initial Pretrial Services Bond Report) (SEALED – government and defense counsel) as to Ramy Said Zamzam. (Ayala, Emerita) (Entered: 09/07/2022) |
| 09/07/2022 | | Arrest of Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer. (wgar, ) (Entered: 09/07/2022) |
| 09/07/2022 | 59 | Minute Entry for proceedings held before Magistrate Judge John F. Anderson:Initial Appearance as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer held on 9/7/2022. US appeared through: John Gibbs. Deft Yemer appeared with counsel: Nina Ginsberg. Defts Zamzam and Minni appeared with counsel: Jessica Carmichael (on behalf of Eisenstein, M – Minni). Defts informed of rights, charges, and penalties. Counsel for the parties and the defendants were orally advised of the disclosure obligations set forth in Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Gov't is not seeking detention as to Yemer, Minni, and Zamzam. Arraignment set for 9/13/2022 at 09:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. Defts remanded to the custody of the USMS until all conditions are met. (Tape #FTR.)(wgar, ) (Entered: 09/07/2022) |
| 09/07/2022 | 60 | ORDER – This matter comes before the Court on its own initiative. Pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, the Court ORDERS the United States to adhere to the disclosure obligations set forth in Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady v. Maryland instructs that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87. Failure to adhere to this requirement may result in serious consequences, up to and including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the court. Having given counsel the oral admonition required by the Due Process Protections Act, this Order serves as the reminder of prosecutorial obligation and duties in accordance with Rule 5(f) and the Eastern District of Virginia Standing Order concerning the same as to **Aman Hassan Yemer** . Signed by Magistrate Judge John F. Anderson on 09/07/2022. (wgar, ) (Entered: 09/07/2022) |
| 09/07/2022 | 61 | ORDER Setting Conditions of Release as to Aman Hassan Yemer (3) PR BOND. Signed by Magistrate Judge John F. Anderson on 09/07/2022. (wgar, ) (Entered: 09/07/2022) |
| 09/07/2022 | | PR Bond Entered as to Aman Hassan Yemer. (wgar, ) (Entered: 09/07/2022) |
| 09/07/2022 | 62 | ORDER – This matter comes before the Court on its own initiative. Pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, the Court ORDERS the United States to adhere to the disclosure obligations set forth in Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady v. Maryland instructs that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87. Failure to adhere to this requirement may result in serious consequences, up to and including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the court. Having given counsel the oral admonition required by the Due Process Protections Act, this Order serves as the reminder of prosecutorial obligation and duties in accordance with Rule 5(f) and the Eastern District of Virginia Standing Order concerning the same as to **Ahmed Ameer Minni** . Signed by Magistrate Judge John F. Anderson on 09/07/2022. (wgar, ) (Entered: 09/07/2022) |

| | | |
|---|---|---|
| 09/07/2022 | 63 | ORDER Setting Conditions of Release as to Ahmed Ameer Minni (1) PR BOND. Signed by Magistrate Judge John F. Anderson on 09/07/2022. (wgar, ) (Entered: 09/07/2022) |
| 09/07/2022 | | PR Bond Entered as to Ahmed Ameer Minni. (wgar, ) (Entered: 09/07/2022) |
| 09/07/2022 | 64 | ORDER – This matter comes before the Court on its own initiative. Pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, the Court ORDERS the United States to adhere to the disclosure obligations set forth in Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady v. Maryland instructs that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87. Failure to adhere to this requirement may result in serious consequences, up to and including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the court. Having given counsel the oral admonition required by the Due Process Protections Act, this Order serves as the reminder of prosecutorial obligation and duties in accordance with Rule 5(f) and the Eastern District of Virginia Standing Order concerning the same as to **Ramy Said Zamzam** . Signed by Magistrate Judge John F. Anderson on 09/07/2022. (wgar, ) (Entered: 09/07/2022) |
| 09/07/2022 | 65 | ORDER Setting Conditions of Release as to Ramy Said Zamzam (2) PR BOND. Signed by Magistrate Judge John F. Anderson on 09/07/2022. (wgar, ) (Entered: 09/07/2022) |
| 09/07/2022 | 68 | Arrest Warrant Returned Executed on 09/07/2022 in case as to Ramy Said Zamzam. (jlan) (Entered: 09/09/2022) |
| 09/08/2022 | 66 | ORDER as to Aman Hassan Yemer. This defendant appeared before the court on September 7, 2022. At that time an Order Setting Conditions of Release (Docket no. 61) including the condition that the defendant submit to location monitoring/ GPS, was entered by this court. To further clarify that order, the defendant is to remain on home detention with timeouts determined by pretrial services until he is transferred to a treatment facility. All other terms and conditions of the release order remain in full force and effect. Signed by Magistrate Judge John F. Anderson on 09/08/2022. (wgar, ) (Entered: 09/08/2022) |
| 09/08/2022 | 67 | PR Bond Entered as to Ramy Said Zamzam (wgar, ) (Entered: 09/08/2022) |
| 09/12/2022 | 69 | NOTICE of Government's Motion to Certify Case as Complex Under the Speedy Trial Act by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan (Attachments: # 1 Proposed Order)(Gibbs, John) (Entered: 09/12/2022) |
| 09/12/2022 | 70 | Arrest Warrant Returned Executed on 9/7/2022 in case as to Ahmed Ameer Minni. (swil) (Entered: 09/12/2022) |
| 09/13/2022 | 71 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Arraignment as to Ahmed Ameer Minni (1) Count 1,2,3,4 and Ramy Said Zamzam (2) Count 1,2,3,4 and Aman Hassan Yemer (3) Count 1,2,3,4 held on 9/13/2022. U.S. appeared through John Gibbs. Deft Ahmed Ameer Minni appeared with counsel Marc Eisenstein, deft Ramy Said Zamzam appeared with counsel Jessica Carmichael, deft Aman Hassan Yemer appeared with counsel Nina Ginsberg. Defts WFA, PNG, and demanded a trial by Jury. Deft Yemer counsel N. Ginsburg advised the Court she has not had the opportunity to review the indictment with deft and advised the Court of defts mental issues. Counsel to arrange competency evaluation. Counsels oral motion to remove GPS monitor is Granted. All defts directed to check in with pretrial after court today. Govts motion to certify case as complex is Granted. Court gives counsel oral reminder of prosecutorial obligation & duties in accordance with Rule 5(f). Discovery Order filed & entered in open court. Status Conference set for 12/9/2022 at 09:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (Court Reporter S. Austin.)(yguy) (Entered: 09/13/2022) |
| 09/13/2022 | 72 | Agreed Discovery Order as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer. Signed by District Judge Leonie M. Brinkema on 9/13/22. (yguy) (Entered: 09/13/2022) |

| | | |
|---|---|---|
| 09/13/2022 | 73 | ORDER as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer:Before the Court is a Motion by the United States to Certify this Case as Complex Under the Speedy Trial Act. In accordance with 18 U.S.C.§ 3161(h)(7)(B)(ii) of the Speedy Trial Act, for the reasons set forth in the motion and for good cause shown, the Court hereby GRANTS the motion. (see order for details). Signed by District Judge Leonie M. Brinkema on 9/13/22. (yguy) (Entered: 09/13/2022) |
| 09/13/2022 | 74 | ORDER as to Aman Hassan Yemer (3) For the reasons stated in open court, it is hereby ORDERED that the Order Setting Conditions of Release [Dkt. No. 61] entered on September 7, 2022 be and is AMENDED to remove from conditions 7(u) and (v) the requirement of location monitoring with GPS. Specifically, the GPS monitor must be removed from defendant's person and location monitoring may be performed by random checks with defendant and/or his custodian.(c/s to K. Orsino). Signed by District Judge Leonie M. Brinkema on 9/13/22. (yguy) (Entered: 09/13/2022) |
| 09/14/2022 | 80 | ORDER granting 75 Motion for Protective Order as to Ahmed Ameer Minni (1). Signed by District Judge Leonie M. Brinkema on 09/14/2022. (tran) (Entered: 09/15/2022) |
| 09/15/2022 | 75 | First MOTION for Protective Order *as to Ahmed Ameer Minni* by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (Gibbs, John) (Entered: 09/15/2022) |
| 09/15/2022 | 76 | First MOTION for Protective Order *as to Aman Hassan Yemer* by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (Gibbs, John) (Entered: 09/15/2022) |
| 09/15/2022 | 77 | First MOTION for Protective Order *as to Ramy Said Zamzam* by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (Gibbs, John) (Entered: 09/15/2022) |
| 09/15/2022 | 78 | Protective Order as to Ramy Said Zamzam. Signed by District Judge Leonie M. Brinkema on 09/14/2022. (tran) (Entered: 09/15/2022) |
| 09/15/2022 | 79 | ORDER granting 76 Motion for Protective Order as to Aman Hassan Yemer (3). Signed by District Judge Leonie M. Brinkema on 09/14/2022. (tran) (Entered: 09/15/2022) |
| 09/21/2022 | 81 | Ex Parte Under Seal Document (Attachments: # 1 Attachments)(swil) (Entered: 09/21/2022) |
| 09/21/2022 | 83 | Ex Parte Under Seal Motion. (Attachments: # 1 Attachment)(swil) (Entered: 09/22/2022) |
| 09/22/2022 | 82 | Ex Parte Under Seal Order. Signed by District Judge Leonie M. Brinkema on 9/22/2022. (swil) (c/s pursuant to Order) (Entered: 09/22/2022) |
| 09/22/2022 | 84 | Ex Parte Under Seal Order. Signed by District Judge Leonie M. Brinkema on 9/22/2022. (swil) (c/s pursuant to Order) (Entered: 09/22/2022) |
| 10/06/2022 | 85 | NOTICE OF ATTORNEY APPEARANCE: Geremy C. Kamens appearing for Umar Farooq Chaudhry (Kamens, Geremy) (Entered: 10/06/2022) |
| 10/18/2022 | 86 | MOTION for Protective Order *that defines what constitutes Protected Material* by Umar Farooq Chaudhry. (Attachments: # 1 Proposed Order)(Kamens, Geremy) (Entered: 10/18/2022) |
| 10/26/2022 | 87 | RESPONSE in Opposition by USA as to Umar Farooq Chaudhry re 86 MOTION for Protective Order *that defines what constitutes Protected Material* (Attachments: # 1 Proposed Order Proposed Protective Order)(Gibbs, John) (Entered: 10/26/2022) |
| 10/28/2022 | 88 | ORDER denying 86 Motion for Protective Order that defines what constitutes Protected Material. ORDERED that the government submit a proposed Protective Order for this defendant when it is appropriate for his defense counsel to begin receiving discovery as to Umar Farooq Chaudhry (4) (see Order for further details). Signed by District Judge Leonie M. Brinkema on 10/28/2022. (swil) (Entered: 10/31/2022) |

| | | |
|---|---|---|
| 11/15/2022 | 89 | MOTION to Seal *Defendants Notice of Filing and accompanying exhibit* by Aman Hassan Yemer. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 11/15/2022) |
| 11/15/2022 | 90 | Memorandum in Support by Aman Hassan Yemer re 89 MOTION to Seal *Defendants Notice of Filing and accompanying exhibit* (Ginsberg, Nina) (Entered: 11/15/2022) |
| 11/15/2022 | 91 | Notice of Filing and Exhibit 1 (Attachments: # 1 Exhibit 1)(nneb) (Entered: 11/16/2022) |
| 11/16/2022 | 92 | ORDER granting 89 MOTION to Seal Defendants Notice of Filing and accompanying exhibit as to Aman Hassan Yemer (3). Signed by District Judge Leonie M. Brinkema on 11/16/2022. (nneb) (Entered: 11/16/2022) |
| 12/09/2022 | 93 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Status Conference as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer held on 12/9/2022. U.S. appeared through John Gibbs. Defts:#1 Ahmed Ameer Minni with counsel Marc Eisenstein, #2 Ramy Said Zamzam with counsel Jessica Carmichael, #3 Aman Hassan Yemer did not appear with counsel Nina Ginsberg still in hospital. Court advised of case and classified material status. Status Conference set for 2/14/2023 at 09:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (Court Reporter S. Austin.)(yguy) (Entered: 12/09/2022) |
| 12/09/2022 | 94 | UnderSeal letter (yguy) (Entered: 12/09/2022) |
| 12/15/2022 | 95 | TRANSCRIPT of Proceedings held on 12/9/22, before Judge Leonie M. Brinkema. Court reporter Stephanie Austin, Telephone number 571–298–1649. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 1/16/2023. Redacted Transcript Deadline set for 2/14/2023. Release of Transcript Restriction set for 3/15/2023.(Austin, Stephanie) (Entered: 12/15/2022)** |
| 01/17/2023 | 96 | Motion and Proposed Order to Allow Goverment to Review Case File by Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan (Attachments: # 1 Proposed Order)(Gibbs, John) Modified to correct docket event on 1/17/2023 (swil). (Entered: 01/17/2023) |
| 01/17/2023 | 97 | ORDERED that the motion [Dkt. No. 96] is GRANTED and it is hereby ORDERED that ASUS Gibbs shall be allowed to review Docket Entries 1–9 in the case file at the Clerk's Office to determine which documents, if any, need to remain under seal as to Ahmed Ameer Minni (1); Ramy Said Zamzam (2); Aman Hassan Yemer (3). Signed by District Judge Leonie M. Brinkema on 1/17/2023. (swil) (Entered: 01/17/2023) |
| 01/24/2023 | 98 | First MOTION to Unseal Document *at Docket Numbers 1–4 and 6–9* by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (Attachments: # 1 Proposed Order)(Gibbs, John) (Entered: 01/24/2023) |
| 01/25/2023 | 99 | ORDER granting 98 First Motion to Unseal Document at Docket Numbers 1–4 and 6–9 as to Ahmed Ameer Minni (1), Ramy Said Zamzam (2), Aman Hassan Yemer (3), Umar Farooq Chaudhry (4), Waqar Hussain Khan (5) Signed by District Judge Leonie M. Brinkema on 1/25/2023. (swil) Modified to correct docket text on 1/26/2023 (swil). (Entered: 01/25/2023) |
| 01/25/2023 | 100 | NOTICE *of Government's Second Motion to Declare this a Complex Case* by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan (Attachments: # 1 Proposed Order)(Gibbs, John) (Entered: 01/25/2023) |
| 01/25/2023 | | Documents 1–4 and 6–9 unsealed as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. 7 Order on Motion for Miscellaneous Relief, 1 Complaint, 4 Order on Motion to Seal, 6 MOTION |

| | | |
|---|---|---|
| | | Unseal Motion, <u>8</u> MOTION for Limited Unsealing Order, <u>9</u> Order on Motion for Miscellaneous Relief, <u>2</u> Affidavit, <u>3</u> MOTION to Seal (ldab, ) (Entered: 02/06/2023) |
| 01/26/2023 | <u>101</u> | ORDERED that pursuant to 18 U.S.C. § 3161(h)(7)(A), the period from December 12, 2022 through February 14, 2023, shall be excluded in computing the time within which the trial must commence in re <u>100</u> Notice of Government's Second Motion to Declare this a Complex Case filed by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer. Signed by District Judge Leonie M. Brinkema on 1/26/2023. (swil) (Entered: 01/26/2023) |
| 02/08/2023 | <u>102</u> | TRANSCRIPT of arraignment held on 9/13/22, before Judge Leonie M. Brinkema. Court reporter Stephanie Austin, Telephone number 571–298–1649. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 3/10/2023. Redacted Transcript Deadline set for 4/10/2023. Release of Transcript Restriction set for 5/9/2023.(Austin, Stephanie) (Entered: 02/08/2023)** |
| 02/14/2023 | <u>103</u> | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Status Conference as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer. held on 2/14/2023. U.S. appeared through John Gibbs. #1 Ahmed Ameer Minni Marc Eisenstein, #2 Ramy Said Zamzam Jessica Carmichael, #3 Aman Hassan Yemer Nina Ginsberg. Court advised of case and classified material status, court also advised of deft Yemer health status. Trial estimate –1 week. Deft has 4 weeks to file Motions–govt has 2 weeks to respond with Argument on April date to be determined by counsel).Jury Trial set for 8/7/2023 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. At the request of counsel, Court finds case still to be complex and speedy trial is waived. Deft's cont'd on bond. (Court Reporter S. Austin.)(yguy) (Entered: 02/14/2023) |
| 03/28/2023 | <u>104</u> | MOTION to Dismiss *Indictment* by Aman Hassan Yemer. (Ginsberg, Nina) (Entered: 03/28/2023) |
| 03/28/2023 | <u>105</u> | Memorandum in Support by Aman Hassan Yemer re <u>104</u> MOTION to Dismiss *Indictment* (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3, # <u>4</u> Exhibit 4)(Ginsberg, Nina) (Entered: 03/28/2023) |
| 03/28/2023 | <u>106</u> | MOTION to Seal *Defendant's Memorandum in Support of Motion to Dismiss Indictment and Exhibits* by Aman Hassan Yemer. (Ginsberg, Nina) (Entered: 03/28/2023) |
| 03/28/2023 | <u>107</u> | Memorandum in Support by Aman Hassan Yemer re <u>106</u> MOTION to Seal *Defendant's Memorandum in Support of Motion to Dismiss Indictment and Exhibits* (Ginsberg, Nina) (Entered: 03/28/2023) |
| 03/28/2023 | <u>108</u> | ORDERED that defendant's memorandum and exhibits be filed under seal and remain under seal until further order of this Court in re <u>106</u> Motion to Seal Defendant's Memorandum in Support of Motion to Dismiss Indictment and Exhibits as to Aman Hassan Yemer (3). Signed by District Judge Leonie M. Brinkema on 3/28/2023. (swil) (Entered: 03/28/2023) |
| 03/28/2023 | <u>109</u> | Under Seal Memorandum in Support of <u>104</u> Motion to Dismiss *Indictment* filed by Aman Hassan Yemer (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3, # <u>4</u> Exhibit 4)(swil) Modified to correct docket text on 4/5/2023 (swil). (Entered: 03/28/2023) |
| 04/11/2023 | <u>110</u> | Under Seal Motion (Attachments: # <u>1</u> Proposed Order)(swil) (Entered: 04/12/2023) |
| 04/11/2023 | <u>111</u> | Opposition to Defendant's Motion to Dismiss the Indictment filed by the USA as to Aman Hassan Yemer (swil) (Entered: 04/12/2023) |
| 04/11/2023 | <u>112</u> | Under Seal Motion (Attachments: # <u>1</u> Proposed Order)(swil) (Entered: 04/12/2023) |

| 04/12/2023 | 113 | Under Seal Order. Signed by District Judge Leonie M. Brinkema on 4/12/2023. (swil) (Entered: 04/12/2023) |
|---|---|---|
| 04/19/2023 | | Set/Reset Hearings as to Ramy Said Zamzam: Change of Plea Hearing set for 4/26/2023 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (yguy) (Entered: 04/19/2023) |
| 04/20/2023 | | Set/Reset Hearings as to Ahmed Ameer Minni: Change of Plea Hearing set for 4/21/2023 02:00 PM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (yguy) (Entered: 04/20/2023) |
| 04/21/2023 | 114 | SENTENCING MEMORANDUM by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan (Gibbs, John) (Entered: 04/21/2023) |
| 04/21/2023 | 115 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Change of Plea Hearing as to Ahmed Ameer Minni(1) held on 4/21/2023. U.S. appeared through John Gibbs. Deft appeared with counsel Jason Eisenstein. Deft w/d NGP and PG to Count 3 of the Indictment. Plea entered and accepted Guilty Count 3. Deft advised of appeal rights. Matter referred to USPO for PSIR. Sentencing set for 8/1/2023 at 09:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. Deft continued on current bond with added conditions. 1) deft shall cooperate with probation for psir; 2) deft shall reappear on 8/1/23 at 9:00am for sentencing. Deft directed to check in with pretrial after court today.Deft removed from 8/7/23 jury trial. Jury Notified.(Court Reporter S. Austin.)(yguy) (Entered: 04/24/2023) |
| 04/21/2023 | 116 | PLEA AGREEMENT as to Ahmed Ameer Minni(1) (yguy) (Entered: 04/24/2023) |
| 04/21/2023 | 117 | Statement of Facts as to Ahmed Ameer Minni(1) (yguy) (Entered: 04/24/2023) |
| 04/25/2023 | 121 | ORDERED that a hearing be and is SCHEDULED for Tuesday, May 2, 2023 at 2:30 pm in re 104 MOTION to Dismiss Indictment filed by Aman Hassan Yemer. Signed by District Judge Leonie M. Brinkema on 04/25/2023. (jlan) (Entered: 05/01/2023) |
| 04/26/2023 | 118 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Change of Plea Hearing as to Ramy Said Zamzam(2) held on 4/26/2023. U.S. appeared through John Gibbs. Deft appeared with counsel Jessica Carmichael. Deft w/d NGP andPG to Count 3 of the Indictment. Plea entered and accepted Guilty Count 3. Deft advised of appeal rights. Matter referred to USPO for PSIR. Sentencing set for 8/1/2023 at 09:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. Deft continued on current bond. Deft directed to check in with pretrial and probation after court today. Deft removed from 8/07/23 trial. Jury notified. (Court Reporter S. Austin.)(yguy) (Entered: 04/26/2023) |
| 04/26/2023 | 119 | PLEA AGREEMENT as to Ramy Said Zamzam(2) (yguy) (Entered: 04/26/2023) |
| 04/26/2023 | 120 | Statement of Facts as to Ramy Said Zamzam (2) (yguy) (Entered: 04/26/2023) |
| 05/01/2023 | | Set Deadline in re Motion or Report and Recommendation in case as to Aman Hassan Yemer 104 MOTION to Dismiss Indictment. Motion Hearing set for 5/2/2023 at 02:30 PM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (jlan) (Entered: 05/01/2023) |
| 05/01/2023 | 122 | ORDERED that defendant be and is EXCUSED from attending the hearing scheduled for May 2, 2023; and it is further ORDERED that the Clerk docket the April 29, 2023 email from defendant's counsel under seal as to Aman Hassan Yemer. Signed by District Judge Leonie M. Brinkema on 5/1/2023. (swil) (Entered: 05/01/2023) |
| 05/01/2023 | 123 | Under Seal Document (swil) (Entered: 05/01/2023) |
| 05/02/2023 | 124 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Motion Hearing as to Aman Hassan Yemer held on 5/2/2023. U.S. appeared through John Gibbs. Deft appeared through counsel Nina Ginsberg. Court advised of case status. 112 Sealed Motion is argued. Status hearing request is granted. Status Hearing set for 5/30/2023 at 11:30 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (Court Reporter S. Austin.)(yguy) (Entered: 05/03/2023) |

| | | |
|---|---|---|
| 05/08/2023 | 125 | MOTION to Seal *Competency Evaluation* by Aman Hassan Yemer. (Attachments: # 1 Proposed Order)(Ginsberg, Nina) (Entered: 05/08/2023) |
| 05/08/2023 | 126 | Memorandum in Support by Aman Hassan Yemer re 125 MOTION to Seal *Competency Evaluation* (Attachments: # 1 Exhibit Placeholder)(Ginsberg, Nina) (Entered: 05/08/2023) |
| 05/08/2023 | 127 | Under Seal Competency Evaluation (swil) (Entered: 05/08/2023) |
| 05/08/2023 | 128 | ORDERED that the Defendant's Competency Evaluation be filed under seal and remain permanently under seal until further order of the Court in re 125 MOTION to Seal Competency Evaluation as to Aman Hassan Yemer (3). Signed by District Judge Leonie M. Brinkema on 5/8/2023. (swil) (Entered: 05/09/2023) |
| 05/30/2023 | 129 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Status Conference as to Aman Hassan Yemer (3) held on 5/30/2023 U.S. appeared through John Gibbs. Deft appeared with counsel Nina Ginsberg. Court advised of case status. Counsel directed to submit a status report in 2 weeks. (Court Reporter S. Austin.)(yguy) (Entered: 05/31/2023) |
| 06/05/2023 | 130 | ORDER as to Aman Hassan Yemer: This case is currently set for trial on August 7, 2023; however, of the three defendants who are within the jurisdiction of this Court, two have entered guilty pleas and the third is undergoing competency evaluation and treatment. Accordingly, it is hereby ORDERED that the August 7, 2023 trial be and is CANCELLED.. Signed by District Judge Leonie M. Brinkema on 6/5/23. (yguy) (Entered: 06/06/2023) |
| 06/06/2023 | | Terminate Deadlines and Hearings as to Aman Hassan Yemer August 7, 2023 trial be and is CANCELLED per order dated 6/5/23: (yguy) (Entered: 06/06/2023) |
| 06/09/2023 | 131 | Under Seal Order. Signed by District Judge Leonie M. Brinkema on 6/9/2023. (swil) (Entered: 06/09/2023) |
| 06/27/2023 | 132 | PRESENTENCE INVESTIGATION REPORT (Disclosed Presentence Investigation Report) (SEALED – government and defense counsel) as to Ahmed Ameer Minni. Objections to PSI due 7/14/2023. (lazaroff, nadja) (Entered: 06/27/2023) |
| 06/27/2023 | 133 | PRESENTENCE INVESTIGATION REPORT (Disclosed Presentence Investigation Report) (SEALED – government and defense counsel) as to Ramy Said Zamzam. Objections to PSI due 07/14/2023. (palya, mary) (Entered: 06/27/2023) |
| 07/19/2023 | 134 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED – government and defense counsel) as to Ramy Said Zamzam. ATTENTION: The enclosed Presentence Report (PSR) contains sensitive and private information. If a defendant is detained pending sentencing, the defendants attorney should meet with the defendant in person to review the PSR absent extraordinary circumstances. Defense Counsel should consider, on a case–by–case basis, whether retention of the PSR by Defense Counsel will further the goal of confidentiality of the PSR and protect the Defendant and others from the dissemination of its contents. (Attachments: # 1 Letter attorney letter, # 2 Letter therapist letter, # 3 Letter forensic report)(forsyth, carolyn) (Entered: 07/19/2023) |
| 07/20/2023 | 136 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED – government and defense counsel) as to Ahmed Ameer Minni. ATTENTION: The enclosed Presentence Report (PSR) contains sensitive and private information. If a defendant is detained pending sentencing, the defendants attorney should meet with the defendant in person to review the PSR absent extraordinary circumstances. Defense Counsel should consider, on a case–by–case basis, whether retention of the PSR by Defense Counsel will further the goal of confidentiality of the PSR and protect the Defendant and others from the dissemination of its contents. (Attachments: # 1 Letter attorney letter)(forsyth, carolyn) (Entered: 07/20/2023) |
| 07/25/2023 | 138 | SENTENCING MEMORANDUM by Ramy Said Zamzam (Attachments: # 1 Exhibit, (**placed under seal, attorney notified to file a motion to seal within 24 hrs**) # 2 Exhibit, # 3 Exhibit)(Carmichael, Jessica) Modified on 7/25/2023 (Dest). (Attachment 1 replaced on 7/26/2023) (swil, ). (Entered: 07/25/2023) |

| | | |
|---|---|---|
| 07/25/2023 | 139 | MOTION to Replace Exhibit 1 re 138 Sentencing Memorandum by Ramy Said Zamzam. (Attachments: # 1 Exhibit, # 2 Proposed Order)(Carmichael, Jessica) (Entered: 07/25/2023) |
| 07/25/2023 | 140 | SENTENCING MEMORANDUM by Ahmed Ameer Minni (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Eisenstein, Marc) (Entered: 07/25/2023) |
| 07/25/2023 | 141 | ORDERED that the Clerk shall replace the originally–filed Exhibit 1 to Ramy Zamzam's Position on Sentencing (ECF No. 138–1) with the Redacted Exhibit1 attached to Ramy Zamzam's Motion to Replace Exhibit 1 (ECF No. 139–1) in re 139 Motion ti Replace Exhibit 1 as to Ramy Said Zamzam (2). Signed by District Judge Leonie M. Brinkema on 7/25/2023. (swil) (Entered: 07/26/2023) |
| 08/01/2023 | 142 | First MOTION to Dismiss *Counts 1, 2 and 4 of the Indictment* by USA as to Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, Waqar Hussain Khan. (Attachments: # 1 Proposed Order Proposed Order to Dismiss Counts of the Indictment)(Gibbs, John) Modified on 8/30/2023 to terminate motion (wgar, ). (Entered: 08/01/2023) |
| 08/01/2023 | 143 | First MOTION to Dismiss *Counts 1, 2 and 4* by USA as to Ramy Said Zamzam. (Attachments: # 1 Proposed Order)(Gibbs, John) (Entered: 08/01/2023) |
| 08/02/2023 | 144 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Sentencing held on 8/1/2023 for Ahmed Ameer Minni (1), Count 3.U.S. appeared through John Gibbs. deft appeared with counsel Marc Eisenstein. Deft committed to the custody of the BOP to serve a term of: TIME SERVED, 20 years supervised release with special conditions, $100.00 special assessment. Deft advised of appeal rights. Deft directed to report to probation office after court. (Court Reporter S. Austin.)(yguy) (Main Document 144 replaced on 8/8/2023) (yguy, ). (Entered: 08/03/2023) |
| 08/02/2023 | 148 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Sentencing held on 8/1/2023 for Ramy Said Zamzam (2), Count 3.U.S. appeared through John Gibbs. deft appeared with counsel Jessica Carmichael. Deft committed to the custody of the BOP to serve a term of: TIME SERVED 20 years supervised release with special conditions, $100.00 special assessment. Deft advised of appeal rights. Deft directed to report to probation office after court. (Court Reporter S. Austin.)(yguy) Modified on 8/8/2023 (yguy). (Entered: 08/03/2023) |
| 08/03/2023 | 145 | JUDGMENT as to Ahmed Ameer Minni (1), Count 3, BOP: TIME SERVED, 20 years supervised release, $100.00 special assessment. Signed by District Judge Leonie M. Brinkema on 8/3/23. (yguy) (Entered: 08/03/2023) |
| 08/03/2023 | 146 | Sealed Statement of Reasons as to Ahmed Ameer Minni(1) (yguy) (Entered: 08/03/2023) |
| 08/03/2023 | 147 | ORDER granting 142 Motion to Dismiss as to Ahmed Ameer Minni (1) (see order for details). Signed by District Judge Leonie M. Brinkema on 8/1/23. (yguy) (Entered: 08/03/2023) |
| 08/03/2023 | 149 | JUDGMENT as to Ramy Said Zamzam (2), Count 3, BOP: TIME SERVED 20 years supervised release, $100.00 special assessment. Signed by District Judge Leonie M. Brinkema on 8/3/23. (yguy) (Entered: 08/03/2023) |
| 08/03/2023 | 150 | Sealed Statement of Reasons as to Ramy Said Zamzam(2) (yguy) (Entered: 08/03/2023) |
| 08/03/2023 | 151 | ORDER granting 143 Motion to Dismiss as to Ramy Said Zamzam (2) (see order for details). Signed by District Judge Leonie M. Brinkema on 8/1/23. (yguy) (Entered: 08/03/2023) |
| 08/25/2023 | 152 | Under Seal Order. Signed by District Judge Leonie M. Brinkema on 8/25/2023. (swil) (Entered: 08/25/2023) |
| 10/16/2023 | 153 | Under Seal Motion by Aman Hassan Yemer. (Attachments: # 1 Attachment, # 2 Proposed Order)(swil) (Entered: 10/16/2023) |

| | | |
|---|---|---|
| 10/16/2023 | 154 | Under Seal Order. Signed by District Judge Leonie M. Brinkema on 10/16/2023. (swil) (Entered: 10/17/2023) |
| 10/17/2023 | 155 | Under Seal Order. Signed by District Judge Leonie M. Brinkema on 10/17/2023. (swil) (Entered: 10/17/2023) |
| 10/18/2023 | 156 | ORDER as to Aman Hassan Yemer: Having been informed that the government is contemplating filing a motion, it is hereby ORDERED that a motion hearing be and is SET on the Court's docket for Tuesday, October 24, 2023 at 9:30 am. If no motion is filed, a status conference will be held at that time. Signed by District Judge Leonie M. Brinkema on 10/18/23. (yguy) (Entered: 10/18/2023) |
| 10/18/2023 | | Set Deadlines as to Aman Hassan Yemer: Motion Hearing set for 10/24/2023 at 09:30 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (yguy) Modified on 11/22/2023. (Entered: 10/18/2023) |
| 10/19/2023 | 157 | First MOTION to Dismiss *Counts One through Four of Indictment* by USA as to Aman Hassan Yemer. (Gibbs, John) (Entered: 10/19/2023) |
| 10/19/2023 | 158 | Upon motion of United States of America, and for the reasons stated in its motion, it is hereby, ORDERED that Counts One through Four of the indictment in this case as to the defendant, Aman Hassan Yemer, are dismissed with prejudice. Signed by District Judge Leonie M. Brinkema on 10/19/23. (See order for details) (yguy) (Entered: 10/19/2023) |
| 10/19/2023 | | Motion Hearing set for 10/24/2023 at 09:30 AM is cancelled. (Entered: 10/19/2023) |
| 12/06/2023 | | Arrest of Umar Farooq Chaudhry (tfitz, ) (Entered: 12/07/2023) |
| 12/07/2023 | 159 | Arrest Warrant Returned Executed in case as to Umar Farooq Chaudhry. (tfitz, ) (Entered: 12/07/2023) |
| 12/07/2023 | 160 | Minute Entry for proceedings held before Magistrate Judge William E. Fitzpatrick: Initial Appearance as to Umar Farooq Chaudhry held on 12/7/2023. USA appeared through John Gibbs. Deft appeared w/counsel Geremy Kamens. Deft informed of rights, charges and penalties. USA does not seek detention at this time. Arraignment set for 12/12/2023 at 09:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. Deft released on Bond to a 3rd party custodian with conditions (see Bond for full details). (Tape #FTR.)(tfitz, ) (Entered: 12/07/2023) |
| 12/07/2023 | 161 | ORDER – This matter comes before the Court on its own initiative. Pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116–182, 134 Stat. 894 (Oct. 21, 2020), the Court ORDERS the United States to adhere to the disclosure obligations set forth in Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady v. Maryland instructs that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87. Failure to adhere to this requirement may result in serious consequences, up to and including vacating a conviction or disciplinary action against the prosecution. Having given counsel the oral admonition required by the Due Process Protections Act, this Order serves as the reminder of prosecutorial obligation and duties in accordance with Rule 5(f) and the Eastern District of Virginia Standing Order concerning the same as to Umar Farooq Chaudhry. Signed by Magistrate Judge William E. Fitzpatrick on 12/7/23. (tfitz, ) (Entered: 12/07/2023) |
| 12/07/2023 | 162 | ORDER Setting Conditions of Release as to Umar Farooq Chaudhry (4) PR BOND w/3rd Party Custodian.. Signed by Magistrate Judge William E. Fitzpatrick on 12/7/23. (tfitz, ) (Entered: 12/07/2023) |
| 12/12/2023 | 163 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema:Arraignment as to Umar Farooq Chaudhry (4) Count 1,2,3,4 held on 12/12/2023. U.S. appeared through John Gibbs. Deft appeared with counsel Geremy Kamens. Deft WFA, PNG and demanded a trial by Jury. Case previously certified as complex. Jury Trial set for 5/6/2024 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. Court finds deft has made a knowing and voluntary waiver of speedy trial. Discovery order filed and entered in open court. Deft continued on current bond with the added condition that the deft shall appear on 5/6/2024 at 10:00am for trial. Deft directed to check in with probation after court |

| | | |
|---|---|---|
| | | today. (Court Reporter S.AUSTIN.)(yguy) (Entered: 12/12/2023) |
| 12/12/2023 | 164 | Agreed Discovery Order as to Umar Farooq Chaudhry (4). Signed by District Judge Leonie M. Brinkema on 12/12/2023. (yguy,) (Main Document 164 replaced on 12/12/2023) (yguy, ). (Entered: 12/12/2023) |
| 01/11/2024 | 165 | MOTION to Dismiss on Speedy Trial *Based on Sixth Amendment and Rule 48(b)* by Umar Farooq Chaudhry. (Kamens, Geremy) (Entered: 01/11/2024) |
| 01/17/2024 | 166 | Consent MOTION for Extension of Time to File Response/Reply as to 165 MOTION to Dismiss on Speedy Trial *Based on Sixth Amendment and Rule 48(b)* by USA as to Umar Farooq Chaudhry. (Attachments: # 1 Proposed Order)(Gibbs, John) (Entered: 01/17/2024) |
| 01/17/2024 | 167 | ORDERED that the United States shall have until February 12, 2024 to respond to Defendant's Motion to Dismiss Indictment for Violating the Right to a Speedy Trial and Rule 48 filed at Docket 165 in re 166 Motion for Extension of Time to File Response/Reply as to Umar Farooq Chaudhry (4). Signed by District Judge Leonie M. Brinkema on 1/17/2024. (swil) (Entered: 01/18/2024) |
| 02/08/2024 | 169 | Declaration in Response to Defendant Yemer's Motion for Emergency Relief (Original filed with the Classified Information Security Officer). (jlan) (Entered: 02/12/2024) |
| 02/12/2024 | 168 | Reply to Motion by USA as to Umar Farooq Chaudhry re 165 MOTION to Dismiss on Speedy Trial *Based on Sixth Amendment and Rule 48(b) Government*, RESPONSE in Opposition by USA as to Umar Farooq Chaudhry (Attachments: # 1 Attachment # 1, # 2 Attachment # 2, # 3 Attachment # 3, # 4 Attachment # 4, # 5 Attachment # 5, # 6 Attachment # 6, # 7 Attachment # 7, # 8 Attachment # 8)(Gibbs, John) (Entered: 02/12/2024) |
| 02/15/2024 | 170 | Consent MOTION for Extension of Time to File Response/Reply as to 165 MOTION to Dismiss on Speedy Trial *Based on Sixth Amendment and Rule 48(b)* by Umar Farooq Chaudhry. (Attachments: # 1 Proposed Order)(Kamens, Geremy) (Entered: 02/15/2024) |
| 02/15/2024 | 171 | ORDERED that Defendant Chaudhry may file a Reply no later than February 22, 2024 in re 170 Motion for Extension of Time to File Response/Reply as to Umar Farooq Chaudhry (4). Signed by District Judge Leonie M. Brinkema on 2/15/2024. (swil) (Entered: 02/15/2024) |
| 02/22/2024 | 172 | Reply to Motion by Umar Farooq Chaudhry re 165 MOTION to Dismiss on Speedy Trial *Based on Sixth Amendment and Rule 48(b)* (Kamens, Geremy) (Entered: 02/22/2024) |
| 03/04/2024 | 173 | ORDERED that a hearing on defendant's Motion to Dismiss Indictment 165 be and is SCHEDULED for Thursday, April 4, 2024 at 10:00 a.m. in Courtroom 700. Signed by District Judge Leonie M. Brinkema on 3/4/2024. (tran) (Entered: 03/04/2024) |
| 03/04/2024 | | Set Deadlines re Motion in case as to Umar Farooq Chaudhry 165 MOTION to Dismiss on Speedy Trial *Based on Sixth Amendment and Rule 48(b)*. **Motion Hearing set for 4/4/2024 at 10:00 AM** in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (tran) (Entered: 03/04/2024) |
| 03/27/2024 | 174 | Supplemental Memorandum by Umar Farooq Chaudhry re 165 MOTION to Dismiss on Speedy Trial *Based on Sixth Amendment and Rule 48(b)* (Attachments: # 1 Exhibit, # 2 Exhibit)(Kamens, Geremy) (Entered: 03/27/2024) |
| 04/03/2024 | 175 | NOTICE *of Correction re Citation* by Umar Farooq Chaudhry re 165 MOTION to Dismiss on Speedy Trial *Based on Sixth Amendment and Rule 48(b)* (Kamens, Geremy) (Entered: 04/03/2024) |
| 04/04/2024 | 176 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema: Motion Hearing as to Umar Farooq Chaudhry held on 4/4/2024 re 165 MOTION to Dismiss on Speedy Trial *Based on Sixth Amendment and Rule 48(b)* filed by Umar Farooq Chaudhry. U.S. appeared through John Gibbs. Defendant appeared with counsel, Geremy Kamens. Motion argued and denied. Order to follow. (Attachments: # 1 Defendant's Exhibit 1)(Court Reporter S. Austin.)(dzir) (Entered: 04/04/2024) |

| | | |
|---|---|---|
| 04/09/2024 | 177 | ORDERED that defendant's Motion to Dismiss Indictment for Violating the Right to a Speedy Trial and Rule 48 [Dkt. No. 165] be and is DENIED as to Umar Farooq Chaudhry (4). Signed by District Judge Leonie M. Brinkema on 4/9/2024. (swil) (Entered: 04/09/2024) |
| 04/10/2024 | 178 | TRANSCRIPT of motions hearing held on 4–4–24, before Judge Leonie M. Brinkema. Court reporter Stephanie Austin, Telephone number 571–298–1649. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov Transcript may be viewed at the court public terminal or purchased through the court reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 5/10/2024. Redacted Transcript Deadline set for 6/10/2024. Release of Transcript Restriction set for 7/9/2024.(Austin, Stephanie) (Entered: 04/10/2024)** |
| 04/26/2024 | | Set Hearings as to Umar Farooq Chaudhry: Change of Plea Hearing set for 5/2/2024 11:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (kgall) (Entered: 04/26/2024) |
| 05/02/2024 | 179 | Minute Entry for proceedings held before District Judge Leonie M. Brinkema: Change of Plea Hearing as to Umar Farooq Chaudhry held on 5/2/2024. US appeared through John Gibbs. Deft appeared w/ counsel Geremy Kamens. Deft w/d NGP and PG to Count 3 of the Indictment. Plea entered and accepted – Guilty Count 3. Deft referred to PO for PSI. Sentencing set for 7/31/2024 at 10:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. Deft continued on bond w/ added conditions of: to cooperate with the PO for preparation of PSI; reappear for sentencing hearing. (Court Reporter S. Austin)(kgall) (Entered: 05/02/2024) |
| 05/02/2024 | 180 | PLEA AGREEMENT as to Umar Farooq Chaudhry. (kgall) (Entered: 05/02/2024) |
| 05/02/2024 | 181 | Statement of Facts as to Umar Farooq Chaudhry. (kgall) (Entered: 05/02/2024) |
| 06/05/2024 | 182 | MEMORANDUM OPINION in re [Dkt. No. 165] Motion to Dismiss as to Umar Farooq Chaudhry. Signed by District Judge Leonie M. Brinkema on 6/5/2024. (Dest) (Entered: 06/05/2024) |
| 06/26/2024 | 183 | PRESENTENCE INVESTIGATION REPORT (Disclosed Presentence Investigation Report) (SEALED – government and defense counsel) as to Umar Farooq Chaudhry. Objections to PSI due 07/12/2024.ATTENTION: The enclosed Presentence Report (PSR) contains sensitive and private information. If a defendant is detained pending sentencing, the defendant's attorney should meet with the defendant in person to review the PSR absent extraordinary circumstances. Defense Counsel should consider, on a case–by–case basis, whether retention of the PSR by Defense Counsel will further the goal of confidentiality of the PSR and protect the Defendant and others from the dissemination of its contents. (palya, mary) (Entered: 06/26/2024) |
| 07/10/2024 | 184 | Consent MOTION to Continue *Sentencing Hearing* by Umar Farooq Chaudhry. (Attachments: # 1 Proposed Order)(Kamens, Geremy) (Entered: 07/10/2024) |
| 07/10/2024 | 185 | ORDERED that the sentencing hearing in this matter is rescheduled to August 14, 2024, at 9:00 am. Signed by District Judge Leonie M. Brinkema on 7/10/2024. (kgall) (Entered: 07/10/2024) |
| 07/10/2024 | | Set Hearings as to Umar Farooq Chaudhry: Sentencing set for 8/14/2024 at 09:00 AM in Alexandria Courtroom 700 before District Judge Leonie M. Brinkema. (kgall) (Entered: 07/10/2024) |
| 08/01/2024 | 186 | PRESENTENCE INVESTIGATION REPORT (Sentencing Presentence Investigation Report) (SEALED – government and defense counsel) as to Umar Farooq Chaudhry. ATTENTION: The enclosed Presentence Report (PSR) contains sensitive and private information. If a defendant is detained pending sentencing, the defendant's attorney should meet with the defendant in person to review the PSR absent extraordinary circumstances. Defense Counsel should consider, on a case–by–case basis, whether retention of the PSR by Defense Counsel will further the goal of confidentiality of the PSR and protect the Defendant and others from the dissemination of its contents. |

| | | |
|---|---|---|
| | | (Attachments: # <u>1</u> Letter attorney letter)(forsyth, carolyn) (Entered: 08/01/2024) |
| 08/07/2024 | <u>188</u> | Position on Sentencing by Umar Farooq Chaudhry (Attachments: # <u>1</u> Exhibit)(Kamens, Geremy) (Entered: 08/07/2024) |
| 08/09/2024 | <u>189</u> | PRESENTENCE INVESTIGATION REPORT (UPDATED SENTENCING Presentence Investigation Report) (SEALED – government and defense counsel) as to Umar Farooq Chaudhry. ATTENTION: The enclosed Presentence Report (PSR) contains sensitive and private information. If a defendant is detained pending sentencing, the defendant's attorney should meet with the defendant in person to review the PSR absent extraordinary circumstances. Defense Counsel should consider, on a case–by–case basis, whether retention of the PSR by Defense Counsel will further the goal of confidentiality of the PSR and protect the Defendant and others from the dissemination of its contents. (Attachments: # <u>1</u> Letter attorney letter)(forsyth, carolyn) (Entered: 08/09/2024) |
| 08/14/2024 | <u>190</u> | Minute Entry for proceedings held before District Judge Leonie M. Brinkema: Sentencing held on 8/14/2024 for Umar Farooq Chaudhry. US appeared through John Gibbs. Deft appeared w/ counsel Geremy Kamens. Argument of counsel. Statement of deft. Comments of the Court. SENTENCE – BOP: TIME SERVED; 20 YR SR TERM w/ conditions; $100 SA. (Court Reporter S. Austin)(kgall) (Document replaced on 8/15/2024 – kgall) (Entered: 08/14/2024) |
| 08/14/2024 | <u>191</u> | MOTION to Dismiss by USA as to Umar Farooq Chaudhry. (kgall) (Entered: 08/14/2024) |
| 08/14/2024 | <u>192</u> | ORDERED, ADJUDGED AND DECREED THAT Counts 1, 2, and 4 of the Indictment are dismissed without prejudice. Signed by District Judge Leonie M. Brinkema on 8/14/2024. (kgall) (Entered: 08/14/2024) |
| 08/14/2024 | <u>193</u> | JUDGMENT as to Umar Farooq Chaudhry, BOP: TIME SERVED; 20 YR SR TERM w/ conditions; $100 SA. Signed by District Judge Leonie M. Brinkema on 8/14/2024. (kgall) (Entered: 08/15/2024) |
| 08/14/2024 | <u>194</u> | Sealed Statement of Reasons as to Umar Farooq Chaudhry. (kgall) (Entered: 08/15/2024) |
| 08/28/2024 | <u>195</u> | NOTICE OF APPEAL, filed by Umar Farooq Chaudhry as to <u>193</u> JUDGMENT (Kamens, Geremy) (Entered: 08/28/2024) |
| 09/03/2024 | <u>196</u> | Transmission of Notice of Appeal to 4CCA as to Umar Farooq Chaudhry to US Court of Appeals re <u>195</u> Notice of Appeal (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (Dest) (Entered: 09/03/2024) |
| 09/06/2024 | <u>197</u> | USCA Case Number 24–4471 4th Circuit, Case Manager Anisha Walker for <u>195</u> Notice of Appeal, filed by Umar Farooq Chaudhry. (Dest) (Entered: 09/06/2024) |
| 09/06/2024 | <u>198</u> | ORDER of USCA as to Umar Farooq Chaudhry re <u>195</u> Notice of Appeal. The court appoints the Federal Defender for the Eastern District of Virginia to represent appellant in this case. (Dest) (Entered: 09/06/2024) |
| 09/20/2024 | <u>199</u> | TRANSCRIPT REQUEST by Umar Farooq Chaudhry for proceedings held on May 2, 2024 (change of plea) and Aug. 14, 2024 (sentencing) before Judge Leonie M. Brinkema, (Pratt, Frances) (Entered: 09/20/2024) |
| 09/23/2024 | <u>200</u> | Transcript Order Acknowledgment from USCA in re <u>195</u> Notice of Appeal: Court Reporter/Transcriber Stephanie Austin. (Dest) (Entered: 09/23/2024) |
| 10/30/2024 | <u>201</u> | TRANSCRIPT of a plea hearing as to Umar Farooq Chaudhry for tge date of 5/2/24 before Judge Leonie M. Brinkema, re <u>195</u> Notice of Appeal Court Reporter/Transcriber Stephanie Austin, Telephone number 607–743–1894. **<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov</span>** *Does this satisfy all appellate orders for this reporter? n* **Transcript may be viewed at the court public terminal** |

| | | |
|---|---|---|
| | | or purchased through the court reporter/transcriber before the deadline for **Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 11/29/2024. Redacted Transcript Deadline set for 12/30/2024. Release of Transcript Restriction set for 1/28/2025.(Austin, Stephanie) (Entered: 10/30/2024)** |
| 10/30/2024 | 202 | TRANSCRIPT of sentencing hearing as to Umar Farooq Chaudhry for the date of 8/14/24 before Judge Leonie M. Brinkema, re 195 Notice of Appeal Court Reporter/Transcriber Stephanie Austin, Telephone number 607–743–1894. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov** _Does this satisfy all appellate orders for this reporter? y_ **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 11/29/2024. Redacted Transcript Deadline set for 12/30/2024. Release of Transcript Restriction set for 1/28/2025.(Austin, Stephanie) (Entered: 10/30/2024)** |
| 11/14/2024 | 203 | TRANSCRIPT REQUEST by Umar Farooq Chaudhry for proceedings held on Dec. 12, 2023 before Judge Leonie M. Brinkema, (Pratt, Frances) (Entered: 11/14/2024) |
| 11/14/2024 | 204 | Transcript Order Acknowledgment from USCA in re 195 Notice of Appeal: Court Reporter/Transcriber: Stephanie Austin. (wgar, ) (Entered: 11/14/2024) |
| 11/20/2024 | 205 | TRANSCRIPT of arraignment as to Umar Farooq Chaudhry for date of 12/12/23 before Judge Leonie M. Brinkema, re 195 Notice of Appeal Court Reporter/Transcriber Stephanie Austin, Telephone number 607–743–1894. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have thirty(30) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vaed.uscourts.gov** _Does this satisfy all appellate orders for this reporter? y_ **Transcript may be viewed at the court public terminal or purchased through the court reporter/transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 12/20/2024. Redacted Transcript Deadline set for 1/20/2025. Release of Transcript Restriction set for 2/18/2025.(Austin, Stephanie) (Entered: 11/20/2024)** |

AO 91 (Rev. 01/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| AHMED AMEER MINNI, | ) | Case No.   1:09mj  *858* |
| RAMY SAID ZAMZAM, | ) | |
| AMAN HASSAN YEMER, | ) | |
| UMAR FAROOQ CHAUDHRY, and | ) | |
| WAQAR HUSSAIN KHAN, | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of ___August to December 2009___ in the county of ___Fairfax___ in the ___Eastern___ District of ___Virginia___, the defendant(s) violated ___18___ U.S.C. § ___2339A___ an offense described as follows:

From in or about August 2009 and continuing until at least December 9, 2009, in the Eastern District of Virginia and elsewhere, defendants AHMED AMEER MINNI, RAMY SAID ZAMZAM, AMAN HASSAN YEMER, UMAR FAROOQ CHAUDHRY, and WAQAR HUSSAIN KHAN did unlawfully and knowingly conspire with each other and with others, known and unknown, to knowingly provide material support and resources, that is, their services as "personnel," as defined in 18 U.S.C. 2339A(b)(1), knowing and intending that such services were to be used in preparation for, and in carrying out, a violation of Title 18, United States Code, Section 956 (conspiracy to kill and maim persons outside of the United States).

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Bruce D. Schwindt
Special Agent
Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
*Judge's signature*

Date: ___12/23/2009___

City and state: ___Alexandria, Virginia___

Theresa Carroll Buchanan, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **UNDER SEAL** |
| | ) | |
| v. | ) | CRIMINAL NO. 1:09mj858 |
| | ) | |
| AHMED AMEER MINNI, | ) | |
| RAMY SAID ZAMZAM, | ) | |
| AMAN HASSAN YEMER, | ) | |
| UMAR FAROOQ CHAUDHRY, and | ) | |
| WAQAR HUSSAIN KHAN, | ) | |
| | ) | |
| Defendants. | ) | |

GOVERNMENT'S MOTION FOR LIMITED UNSEALING ORDER

The United States of America, by its attorneys, Neil H. MacBride, United States Attorney

for the Eastern District of Virginia, and W. Neil Hammerstrom, Jr., Assistant United States

Attorney, hereby moves the Court for a limited unsealing order in the above captioned case, as

follows:

1. On December 23, 2009, a criminal complaint was filed with the Court, charging the

defendants with conspiracy to provide material support to terrorists, in violation of Title 18,

United States Code, Section 2339A.  Arrest warrants were issued by the Court for all five

defendants.  Upon motion of the United States, both the complaint and the affidavit in support of

the complaint were ordered sealed by the Court (Buchanan, M.J.).  To date, the defendants

remain in the custody of law enforcement authorities in the country of Pakistan.

2. Federal law enforcement agents of the Federal Bureau of Investigation (FBI) would

like to enter into INTERPOL Red Notice/Wanted Person Diffusion Alerts with respect to the

warrants issued by this Court for the defendants' arrest.  INTERPOL is the world's largest

international police organization with approximately 188 member countries.  A Red Notice is

implemented by INTERPOL to seek the arrest or provisional arrest of a wanted person for later

extradition to the country in which that person is wanted.

4.  INTERPOL will not approve and facilitate the issuance of Red Notices without a

summary of the defendants' offense conduct, the applicable federal statutes, and the maximum

penalties.  Accordingly, the government moves the Court to enter a limited unsealing order so

that summary information as to the defendants' offense conduct can be taken from the complaint

and supporting affidavit and provided to INTERPOL as required.  In all other respects, the

government desires to keep the complaint and affidavit in support of the complaint under seal, in

order not to jeopardize the ongoing investigation.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:  W. Neil Hammerstrom, Jr.
Assistant United States Attorney

Date:  December 24, 2009

2

**J.A. 025**

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **UNDER SEAL** |
| | ) | |
| v. | ) | CRIMINAL NO. 1:09mj858 |
| | ) | |
| AHMED AMEER MINNI, | ) | |
| RAMY SAID ZAMZAM, | ) | |
| AMAN HASSAN YEMER, | ) | |
| UMAR FAROOQ CHAUDHRY, and | ) | |
| WAQAR HUSSAIN KHAN, | ) | |
| | ) | |
| Defendants. | ) | |

DEC 3 1 2009

### GOVERNMENT'S MOTION FOR LIMITED UNSEALING ORDER

The United States of America, by its attorneys, Neil H. MacBride, United States Attorney

for the Eastern District of Virginia, and W. Neil Hammerstrom, Jr., Assistant United States

Attorney, hereby moves the Court for a limited unsealing order in the above captioned case, as

follows:

1. On December 23, 2009, a criminal complaint was filed with the Court, charging the

defendants with conspiracy to provide material support to terrorists, in violation of Title 18,

United States Code, Section 2339A. Arrest warrants were issued by the Court for all five

defendants. Upon motion of the United States, both the complaint and the affidavit in support of

the complaint were ordered sealed by the Court (Buchanan, M.J.). To date, the defendants

remain in the custody of law enforcement authorities in the country of Pakistan.

2. On December 24, 2009 on motion of the United States, the Court issued a limited

unsealing order so that federal law enforcement agents of the Federal Bureau of Investigation

(FBI) could provide information from the criminal complaint to the international police

**J.A. 026**

organization INTERPOL, for subsequent issuance of Red Notice/Wanted Person Diffusion Alerts with respect to the warrants issued by this Court for the defendants' arrest.

     3. The United States now moves the Court for another limited unsealing order so that the Department of State can submit to the government of Pakistan a formal request for the deportation or expulsion of the defendants from Pakistan and the transfer of custody to the United States.  It is anticipated that this request will include a brief summary of the facts contained in the complaint affidavit and the nature of the charge in the criminal complaint.

     4. In all other respects, the government desires to keep the complaint and affidavit in support of the complaint under seal, in order not to jeopardize the ongoing investigation.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:     _W. Neil Hammerstrom_
W.  Neil Hammerstrom, Jr.
Assistant United States Attorney

Date:  December 31, 2009

2

**J.A. 027**

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 1:17-CR-*270* |
| | ) | |
| | ) | |
| v. | ) | **UNDER SEAL** |
| | ) | |
| | ) | COUNT ONE: |
| AHMED AMEER MINNI, | ) | Conspiracy To Provide Material Support to |
| | ) | Terrorists (18 U.S.C. § 2339A) |
| | ) | |
| RAMY SAID ZAMZAM, | ) | COUNT TWO: |
| | ) | Attempting To Provide Material Support to |
| | ) | Terrorists (18 U.S.C. § 2339A) |
| AMAN HASSAN YEMER, | ) | |
| | ) | COUNT THREE: |
| | ) | Conspiracy To Provide Material Support to |
| UMAR FAROOQ CHAUDHRY, and | ) | a Designated Foreign Terrorist |
| | ) | Organization (18 U.S.C. § 2339B) |
| | ) | |
| WAQAR HUSSAIN KHAN, | ) | COUNT FOUR: |
| | ) | Attempting To Provide Material Support to |
| | ) | a Designated Foreign Terrorist |
| Defendants | ) | Organization (18 U.S.C. § 2339B) |

## I N D I C T M E N T

November Term 2017 – At Alexandria

-1-

COUNT ONE

*Conspiracy To Provide Material Support to Terrorists*
*18 U.S.C. § 2339A*

THE GRAND JURY CHARGES THAT:

From in or about November 2009 through on or about December 9, 2009, within the

Eastern District of Virginia and elsewhere, the defendants,

AHMED AMEER MINNI,

RAMY SAID ZAMZAM,

AMAN HASSAN YEMER,

UMAR FAROOQ CHAUDHRY, and

WAQAR HUSSAIN KHAN,

and others known and unknown to the Grand Jury, did knowingly conspire and agree to provide

material support and resources and to conceal the nature, location, source, and ownership of

material support and resources, knowing and intending that they were to be used in preparation

for, and in carrying out a violation of 18 U.S.C. § 956 (conspiracy to kill, maim, and injure

persons or property in a foreign country), a violation of 18 U.S.C. § 1114 (the killing of and the

attempted killing of an officer and employee of the United States and of an agency in a branch of

the United States Government (including a member of the uniformed services) while such officer

and employee was engaged in and on account of the performance of official duties, and a person

assisting such an officer and employee in the performance of such duties, and on account of that

assistance), and other violations enumerated in 18 U.S.C. § 2339A(a).

(In violation of Title 18, United States Code, Section 2339A)

-2-

COUNT TWO

*Attempt To Provide Material Support to Terrorists*
*18 U.S.C. § 2339A*

THE GRAND JURY FURTHER CHARGES THAT:

From in or about November 2009 through on or about December 9, 2009, within the

Eastern District of Virginia and elsewhere, the defendants,

AHMED AMEER MINNI,

RAMY SAID ZAMZAM,

AMAN HASSAN YEMER,

UMAR FAROOQ CHAUDHRY, and

WAQAR HUSSAIN KHAN,

did knowingly attempt to provide material support and resources and to conceal the nature,

location, source, and ownership of material support and resources, knowing and intending that

they were to be used in preparation for, and in carrying out a violation of 18 U.S.C. § 956

(conspiracy to kill, maim, and injure persons or property in a foreign country), a violation of 18

U.S.C. § 1114 (the killing of and the attempted killing of an officer and employee of the United

States and of an agency in a branch of the United States Government (including a member of the

uniformed services) while such officer and employee was engaged in and on account of the

performance of official duties, and a person assisting such an officer and employee in the

performance of such duties, and on account of that assistance), and other violations enumerated

in 18 U.S.C. § 2339A(a).

(In violation of Title 18, United States Code, Section 2339A)

-3-

COUNT THREE

*Conspiracy To Provide Material Support to a Foreign Terrorist Organization*
*18 U.S.C. § 2339B*

THE GRAND JURY FURTHER CHARGES THAT:

From in or about November 2009 through on or about December 9, 2009, within the

Eastern District of Virginia and elsewhere, the defendants,

AHMED AMEER MINNI,

RAMY SAID ZAMZAM,

AMAN HASSAN YEMER,

UMAR FAROOQ CHAUDHRY, and

WAQAR HUSSAIN KHAN,

and others known and unknown to the Grand Jury, did knowingly conspire and agree to provide

material support and resources (as defined in 18 U.S.C. § 2339A(b)(1)) to a designated foreign

terrorist organization, that is, *Jaish-e-Mohammed* and *Lashkar-e-Tayyiba.*

(In violation of Title 18, United States Code, Section 2339B)

COUNT FOUR

*Attempt To Provide Material Support to a Foreign Terrorist Organization*
*18 U.S.C. § 2339B*

THE GRAND JURY FURTHER CHARGES THAT:

From in or about November 2009 through on or about December 9, 2009, within the

Eastern District of Virginia and elsewhere, the defendants,

AHMED AMEER MINNI,

RAMY SAID ZAMZAM,

AMAN HASSAN YEMER,

UMAR FAROOQ CHAUDHRY, and

WAQAR HUSSAIN KHAN,

did knowingly attempt to provide material support and resources (as defined in 18 U.S.C.

§ 2339A(b)(1)) to a designated foreign terrorist organization, that is, *Jaish-e-Mohammed* and

*Lashkar-e-Tayyiba*.

(In violation of Title 18, United States Code, Section 2339B)

-5-

**J.A. 032**

A TRUE BILL:

Pursuant to the E-Government Act,,
The original of this page has been filed
under seal in the Clerk's Office

Foreman

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____

James R. Gillis
John T. Gibbs
Assistant United States Attorneys

Rebecca A. Magnone
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice

-6-

**J.A. 033**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA )
)
v. )
) No. 1:17-cr-270-LMB
AHMED AMEER MINNI, )
RAMY SAID ZAMZAM and )
AMAN HASSAN YEMER. )
)
*Defendants.* )

## MOTION OF THE UNITED STATES TO CERTIFY
## CASE AS COMPLEX UNDER THE SPEEDY TRIAL ACT

Absent special findings, the Speedy Trial Act requires trial to commence within 70 days of

the public filing of an indictment or defendant's first appearance before a judicial officer if de-

fendant pleads not guilty. *See* 18 U.S.C. § 3161(c)(1). As defendants made their initial appearance

before the magistrate judge on Wednesday, September 7, 2022, that 70-day clock would run on

Wednesday, November 16, 2022. Because this timeframe does not reasonably allow adequate

preparation for pretrial proceedings and commencement of the trial itself, the United States re-

spectfully requests that the Court certify this case as unusual and complex and find that the ends

of justice in a continuance outweigh any interest of the public or defendants in a speedy trial.

Section 3161(h)(7)(B)(ii) permits the Court to grant continuances beyond the 70-day time

limit of the Speedy Trial Act when "the case is so unusual or so complex, due to the number of

defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it

is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within

the time limits established by this section." *See also United States v. Reavis,* 48 F.3d 763, 771 (4th

Cir. 1995). For a variety of reasons, this case is both unusual and complex, and it would be unreasonable to expect adequate preparation for pretrial proceedings and trial within the 70-day time frame set forth in the Speedy Trial Act. The government respectfully requests that, rather than scheduling the matter for trial at the arraignment, the Court set a status hearing 90 days from the date of the arraignment: Monday, December 12, 2022.

The indictment alleges that these three defendants were active participants in a criminal conspiracy which involved five young men from the northern Virginia area. Those five defendants, Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, and Waqar Hussain Khan, left the United States in late-2009 and flew to Pakistan for the purpose of traveling onward to Afghanistan in order to defend Muslims against American and other foreign troops there. Prior to their departure they had been influenced by a facilitator overseas who encouraged them to make this journey. Shortly before their departure defendant Zamzam made a "final message" video which explained the reasons for this trip. Among the reasons he cited was a need for Muslims who were able to go overseas to assist their fellow Muslims physically, by fighting. He characterized this as an obligation. Soon after arriving in Pakistan, all five defendants were arrested by Pakistani authorities and ultimately charged with terrorism offenses there. They were sentenced to ten-years in prison in Pakistan. The defendants completed those Pakistani sentences which exceeded ten years. After completing their jail terms in Pakistan, all three defendants were deported back to the United States. At the initial appearance on September 7, 2022, all three defendants bonded out. They are currently living with their families under conditions of supervised release.

In addition to the unique and complex circumstances alleged in defendants' planning and successful travel overseas to seek to fight in Afghanistan, the government anticipates extensive

pretrial proceedings, including complex discovery in this case. The government will be producing to defense counsel voluminous discovery, which is not at all unusual for a national security case involving five defendants.  Given this case's national security and terrorism components, the government anticipates that pretrial proceedings under the Classified Information Procedures Act, 18 U.S.C. app. 3, may be necessary[1].

The government will be providing discovery materials to the defense well in advance of the requested status hearing. The government will also endeavor to reach mutually acceptable protective orders and discovery orders to propose to the Court. Scheduling a status hearing rather than a trial date will give the defense time to assess the nature of the evidence, identify potential motions, and determine how much time will be needed to prepare for trial.

In addition to the reasons listed above in favor of certifying this case as unusual and complex, the United States also intends to file a motion for a competency examination of defendant Aman Hassan Yemer.  The defense is aware of this motion,  and agrees that it is necessary to obtain a professional opinion as to whether defendant Yemer is competent to stand trial and assist in his defense.  Any delay of trial occasioned by a competency evaluation and competency hearing is excludable under 18 U.S.C. § 3161(h)(1)(A). *See United States v. Moser*, 541 F.Supp.2d 1235 (2008) (W.D. Okla. 2008).

Therefore, the United States requests that the Court certify the case as unusual and complex and find that the ends of justice served by scheduling a trial beyond the 70-day deadline of the Speedy Trial Act outweigh the best interests of the public and the defendants in a speedy trial. The

---

[1] It should be noted that a Protective Order Pertaining to Classified Information was entered in this case on August 27, 2020.  See, Dkt. No. 44.

United States further requests that the Court set a status hearing 90 days from the date of the arraignment on September 7, 2022. A proposed order is submitted herewith for the convenience of the Court.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:      /s/   John T. Gibbs
John T. Gibbs
Assistant United States Attorney
United States Attorney's Office for the
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
703-299-3700

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2022, I electronically filed this motion with the Clerk of Court using the CM/ECF system, which will transmit a Notice of Electronic Filing to all counsel of record in this case.

   /s/   John T. Gibbs
John T. Gibbs
Assistant United States Attorney
United States Attorney's Office for the
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
703-299-3700

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

IN OF E... \
SEP 1 3 2022 \
CLERK, U.S. DISTRICT COURT \
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:17-cr-270-LMB |
| AHMED AMEER MINNI, | ) | |
| RAMY SAID ZAMZAM and | ) | |
| AMAN HASSAN YEMER. | ) | |
| | ) | |
| *Defendants.* | ) | |

## ORDER

Before the Court is a Motion by the United States to Certify this Case as Complex Under the Speedy Trial Act. In accordance with 18 U.S.C. § 3161(h)(7)(B)(ii) of the Speedy Trial Act, for the reasons set forth in the motion and for good cause shown, the Court hereby GRANTS the motion. Specifically, the Court finds pursuant to 18 U.S.C. § 3161(h)(7) that the case is unusual and complex and that the ends of justice served in scheduling a trial beyond the 70-day deadline established by the Speedy Trial Act outweigh the best interest of the public and the defendants in a speedy trial.

Based on the parties' representations, the Court notes that the allegations are serious and involve overseas conduct, that discovery in this case is likely to be voluminous and complex, and that proceedings under the Classified Information Procedures Act, 18 U.S.C. app. 3, may be required. The Court therefore finds that that the ends of justice require a 90-day period in which the parties can coordinate discovery and which will permit the defense to receive and assess evidence to determine a reasonable schedule for trial.

Accordingly, it is hereby ORDERED that a status conference will be set for December 9, 2022, and that, pursuant to 18 U.S.C. § 3161(h)(7)(A), the period from September 7, 2022, through December 9, 2022, shall be excluded in computing the time within which the trial must commence.

Date: September 13, 2022
Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *v.* | ) | |
| | ) | No. 1:17-cr-270-LMB |
| AHMED AMEER MINNI, | ) | |
| RAMY SAID ZAMZAM and | ) | |
| AMAN HASSAN YEMER. | ) | |
| | ) | |
| *Defendants*. | ) | |

**SECOND MOTION OF THE UNITED STATES TO CERTIFY
CASE AS COMPLEX UNDER THE SPEEDY TRIAL ACT**

On September 12, 2022, the government filed a motion to certify this case as complex under the Speedy Trial Act. Dkt. 69. On September 13, 2022, this Honorable Court issued an order declaring this a complex case. Dkt. 73. That order excluded the time from September 7, 2022, through December 9, 2022, in computing the time within which the trial must commence. The reasons justifying excluding this time under the Speedy Trial Act described in the order dated September 13, 2022, still exist in this case, and the government adopts and incorporates by reference the reasons articulated in its motion at Dkt. 69.

As noted in the government's prior motion, given the nature of the crimes allegedly committed by these five defendants, there is a large volume of complex discovery in this case. The government has already begun producing to defense counsel voluminous discovery, and the next production, which is imminent, will consist of more than 28,000 documents. It should also be noted that none of the three defendants are currently incarcerated. The government agreed to their pretrial release at their initial appearances.

Therefore, the United States requests that the Court certify the case as unusual and complex and find that the ends of justice served by scheduling a trial beyond the 70-day deadline of the Speedy Trial Act outweigh the best interests of the public and the defendants in a speedy trial. The United States further requests that the Court exclude the time from December 9, 2022, until the next status conference, scheduled for February 14, 2023.  A proposed order is submitted herewith for the convenience of the Court.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:       /s/   John T. Gibbs
John T. Gibbs
Assistant United States Attorney
United States Attorney's Office for the
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
703-299-3700

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2023, I electronically filed this motion with the Clerk of Court using the CM/ECF system, which will transmit a Notice of Electronic Filing to all counsel of record in this case.

/s/   John T. Gibbs
John T. Gibbs
Assistant United States Attorney
United States Attorney's Office for the
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
703-299-3700

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA )
)
         *v.* )
)   No. 1:17-cr-270-LMB
AHMED AMEER MINNI, )
RAMY SAID ZAMZAM and )
AMAN HASSAN YEMER. )
)
    *Defendants.* )

## **ORDER**

Before the Court is a Second Motion by the United States to Certify this Case as Complex Under the Speedy Trial Act. In accordance with 18 U.S.C. § 3161(h)(7)(B)(ii) of the Speedy Trial Act, for the reasons set forth in the motion and for good cause shown, the Court hereby GRANTS the motion. Specifically, the Court finds pursuant to 18 U.S.C. § 3161(h)(7) that the case is unusual and complex and that the ends of justice served in scheduling a trial beyond the 70-day deadline established by the Speedy Trial Act outweigh the best interest of the public and the defendants in a speedy trial.

The Court notes that the allegations are serious and involve overseas conduct, that discovery in this case is, which is ongoing, is voluminous and complex, and that proceedings under the Classified Information Procedures Act, 18 U.S.C. app. 3, may be required. The Court therefore finds that that the ends of justice require a 90-day period in which the parties can coordinate discovery and which will permit the defense to receive and assess evidence to determine a reasonable schedule for trial.

Accordingly, it is hereby ORDERED that pursuant to 18 U.S.C. § 3161(h)(7)(A), the period from December 12, 2022 through February 14, 2023, shall be excluded in computing the time within which the trial must commence.

Date: January 26, 2023
Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *v.* | ) | |
| | ) | No. 1:17-cr-270-LMB |
| AHMED AMEER MINNI, and | ) | |
| RAMY SAID ZAMZAM. | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OF THE UNITED STATES MEMORIALIZING SENTENCING RECOMMENDATION

## I.      INTRODUCTION

The government hereby submits this Memorandum Memorializing its Sentencing

Recommendation for the sentencings of defendants Ahmed Ameer Minni and Ramy Said

Zamzam, who were recently extradited to the United States after serving nearly 13 years in

prison in Pakistan.  For the reasons set forth herein, absent any violations of the law or release

conditions and assuming full compliance with all requirements imposed by the Court and the

Probation Office, the government intends to recommend a sentence of imprisonment of one day,

with credit for the time served in the Alexandria Detention Center on or about September 7,

2022, followed by a term of supervised release of 20 years, which the parties have jointly agreed

to recommend.  The government further intends to recommend that this sentence, which is below

the Guidelines Range, be imposed through a downward departure or variance, as deemed

appropriate by this Court.

## II.     Factual Background

The Statement of Facts filed with the plea agreements is based on the best current

**J.A. 046**

information available to the government, subject to the information contained in the final Presentence Report.   To summarize briefly, in November 2009, Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, and Waqar Hussain Khan traveled to Pakistan with the intent of joining in *jihad* on the front lines in Afghanistan.  This conspiracy began in approximately May 2009 when Minni was first contacted by a recruiter by the name of "Saifullah" as a result of Minni's postings about *jihadist* videos on YouTube.[1]  "Saifullah" encouraged Minni to travel to Pakistan to engage in violent *jihad*.  Around the same time, Yemer was also in contact with "Saifullah."  "Saifullah" provided guidance on how to travel in Pakistan in a manner that would not arouse suspicion. After his early on-line communications with "Saifullah," Minni successfully solicited the other four defendants to join him in traveling overseas.

One of the hallmarks of this conspiracy was its extreme secrecy.  At the time of their departures, all five defendants were seemingly living quietly in northern Virginia and going to school.  Yet, from approximately late-summer 2009 until December 2009, these defendants managed to make numerous preparations for their trip without arousing the suspicion of anyone.  Not their families. Not their friends.  Not their classmates.  And not law enforcement.

They obtained visas, airline tickets, and got immunizations required for entry into Pakistan.  They had many of these travel documents sent to a friend's house to avoid having them sent to their homes where they might be found out.  They obtained money for the trip, sometimes using student loan money, or even taking money from their families without telling

---

[1] "Saifullah" was, in fact, an American citizen named Jude Kenan Mohammad who was living in the region around the borders of Pakistan and Afghanistan.   Mohammad was charged in a sealed indictment in the Eastern District of North Carolina for conspiring to provide material support to terrorism.  This indictment was unsealed in August 2009.  In approximately November 2011, Mohammad was killed in a drone strike in Pakistan.

them.  Prior to their departure, Minni and Zamzam produced a video which they called a "Final Message."  Zamzam was the only speaker in the video, and he claimed that when Muslim lands are invaded, physical *jihad* against the disbelievers becomes obligatory.  This video was saved onto a USB drive which was given to Yemer's brother so that he could share it with the defendants' families after their departures.

On November 28, 2009, Minni, Yemer, and Chaudhry departed Dulles International Airport for Heathrow Airport in London, England, with a final destination of Pakistan.  The following day, Khan and Zamzam departed Dulles on flights with the same destinations.  After his departure, Zamzam was contacted by a friend on his cell phone.  Zamzam acknowledged at that point that he and the other defendants were overseas.  He also told this individual that he would never see Zamzam again.

Once in Pakistan, the defendants established email accounts in order to be able to communicate while they traveled separately in two groups.  They also purchased two cellular telephones in Pakistan to assist in communicating.  Minni made multiple attempts on-line to contact "Saifullah" to set up a meeting with "Saifullah" and his "brothers."

By December 9, 2009, all five defendants had traveled to Sarhodha, Pakistan, with a plan of soon making it in Afghanistan.  That same day, all five defendants were in a house in Sargodha that belonged to Chaudhry's family.  Minni spoke briefly to "Saifullah" by telephone from that house, and shortly thereafter, the police entered the home and placed all five defendants under arrest.  Not long thereafter, they were all charged in Pakistan with terrorism-related offenses.

**A.**   **United States' Efforts to Obtain Custody of all Five Defendants**

Almost immediately after the defendants' arrests, the FBI sent a team of agents to

**J.A. 048**

Pakistan to attempt to interview the defendants. The Assistant Legal Attache (ALAT)[2] in Pakistan conducted several of his own interviews beginning on December 10, 2009, before the U.S.-based FBI agents arrived in Pakistan.  From December 10, 2009, through December 19, 2009, the FBI team conducted a total of nine interviews of the defendants in Pakistan. Throughout these FBI contacts, Defendants Zamzam and Yemer both refused to speak to the FBI.  Defendant Chaudhry largely refused as well, though at one point he did make a few pertinent admissions.  Defendants Minni and Khan both spoke to the FBI, and made numerous admissions.  They were each interviewed twice by the FBI team following that initial interview by the ALAT.

On December 23, 2009, the United States Attorney's Office for the Eastern District of Virginia filed the criminal complaint in this matter [Dkt. # 1].  The following day, on December 24, 2009, the government filed a motion and proposed order seeking a limited unsealing order so that "summary information as to the defendants' offense conduct could be taken from the complaint and supporting affidavit and provided to INTERPOL, as required for issuance of a Red Notice/Wanted Person Diffusion Alerts with respect to the warrants issued by the Court for the defendants' arrest" [Dkt. # 6, 7].  An INTERPOL Red Notice is an international notification to all country members of INTERPOL (which includes Pakistan) that the defendants were wanted in the United States on a criminal complaint, and that the United States government has made a firm commitment to seek the defendants' extradition.

On December 30, 2009, the United States Attorney's Office was notified via email that the Red Notice applications had been approved for all five defendants.  [Attachment 1]. That email made clear that the purpose of the Red Notice was to seek extradition, "NOTE: As previously

---

[2] An Assistant Legal Attache is an FBI employee stationed in a foreign country, typically for several years, to act as an FBI liaison in that country.

noted, the Red Notice is a firm commitment by your office, and by the United States to request this fugitive's extradition in all but the most exceptional circumstances."  [Attachment 1 at p. 2]. The Red Notice package appended to this email then listed the identity particulars of each of the five defendants charged in this case, and under the heading "Action to be taken if traced," stated for each defendant, "**Locate and arrest with a view to extradition.**  Assurances are given that extradition will be sought upon arrest of the person, in conformity with national laws and/or the applicable bilateral and multilateral treaties." [Emphasis in the original].

On December 31, 2009, the government filed a second motion for a limited unsealing order so that "summary information as to the defendants' offense conduct can be taken from the complaint and supporting affidavit and used in a formal request from the United States Government to the Government of Pakistan, requesting the deportation or expulsion of the defendants from Pakistan." [Dkt. # 8, 9].  The motion was granted, and on January 15, 2010, a diplomatic note from the United States Embassy was sent to the Ministry of Foreign Affairs in Pakistan seeking the "transfer, by deportation, expulsion, or other lawful means," of the five defendants to face charges in the United States. [Attachment 2, at page 1].  In support of this request, the United States noted:

> Given the seriousness of the charges these individuals are facing in the United States, as well as the fact that most of their alleged criminal conduct took place in the United States, the United States believes that the transfer of the defendants now rather than at the conclusion of any proceedings in Pakistan would serve both our Governments' interests in this matter in combating terrorism more broadly.

[Attachment 2 at p. 2].  The Diplomatic Note went on to request that the Pakistani government "consider suspending or otherwise deferring its criminal proceedings against the defendants and deporting or expelling them as soon as possible to the United States." [Attachment 2 at p. 3].

**B.    The Pakistani Prosecution**

**J.A. 050**

Despite the diligent efforts of the United States government, the Pakistani government refused to turn the defendants over.  This was fully consistent with the bilateral treaty with Pakistan which specifically states that "[i]f the person claimed should be under examination or under punishment in the territories of the High Contracting Party applied to for any other crime or offence, his extradition ***shall be deferred*** until the conclusion of the trial and the full execution of any punishment awarded to him."  [Attachment 3, Pakistani Extradition Treaty, Article 4, Emphasis added].  That is precisely what occurred in this case.  At the time that the United States government first sought their transfer by deportation or expulsion, all five defendants were in custody in Pakistan awaiting trial.

Pakistan proceeded with that trial expeditiously.  Within seven months of their arrest, all five defendants were found guilty of various charges in Pakistan following a trial. The judgment of the District and Sessions Judge of the Anti-Terrorism Court in Sargodha, Pakistan ("Pakistani Judgment"), dated June 24, 2010, is Attachment 1 to Defendant Aman Yemer's Motion for Emergency Relief and For a Hearing [Dkt. # 29].  That written judgment is 52-pages long, and it describes much of what occurred in the trial.

### C.     The Pakistani Convictions

On June 24, 2010, all five defendants were convicted of terrorism offenses in Pakistan and sentenced to ten years imprisonment.  Pakistani Judgment at P. 52.  Consistent with Pakistan's bilateral treaty, they were required to serve out the entirety of their sentences in Pakistan.  On June 22, 2020, via a Diplomatic Note, the United States government was informed that those sentences had ended on January 3, 2020, subject to the payment of fines. [Attachment 4].  In that Diplomatic Note, the Pakistani government requested that the U.S. government arrange for travel documents and air transportation so that defendants Zamzam, Yemer and

6

Minni could be deported back to the United States.[3]  The U.S. government promptly did so.  Yet despite those efforts, defendants Minni, Zamzam and Yemer, who did not have dual Pakistani citizenship, remained in prison for over two more years.  On approximately September 7, 2022, they were finally turned over to the FBI in Pakistan and deported back to the United States.  Their total time in prison was approximately 12 years and 9 months.

## III.   SENTENCING GUIDELINES

In accordance with the Plea Agreement entered in this case, the government agrees that the following provisions of the Guidelines apply:

- The Base Offense Level is 26 pursuant to U.S.S.G. § 2M5.3(a).

- A 12-level enhancement applies pursuant to U.S.S.G. § 3A1.4(a) because the offense of conviction is a felony that involved, or was intended to promote, a federal crime of terrorism.

Also, pursuant to Section 3E1.1(b), the government moves the Court to grant the defendant an additional one-level reduction in the offense level for acceptance of responsibility, in addition to the two-levels provided in 3E1.1(a).  Factoring in these reductions, the parties believe that the Guidelines will properly be calculated as a level 35 and Criminal History Category VI, leading to an advisory Guideline range of 292-365 months in prison.  However, the statutory maximum penalty for this offense in 2009 was 15 years in prison.

## IV.   A VERY SHORT PERIOD OF IMPRISONMENT FOLLOWED BY A LENGTHY PERIOD OF SUPERVISED RELEASE IS WARRANTED IN THIS CASE UNDER THE SECTION 3553(a) SENTENCING FACTORS

After calculating the appropriate advisory Guidelines range, a sentencing court must "determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and,

---

[3]  This Diplomatic Note also addressed Chaudhry and Khan who were dual Pakistani citizens.  In their case, the Pakistanis requested an extradition request which the U.S. government promptly provided. As of the date of this pleading, they remain in Pakistan subject to extradition.

if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006).  Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant.[4]  Additional factors set forth in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[5]

As described more fully herein, based on the particular facts and circumstances of this case, including the deterrent impact of the defendants' imprisonment in Pakistan, a short period of

---

[4] Courts have routinely noted that this statutory command requires the consideration of uncharged conduct about the defendant's past actions.  *See, e.g.*, *Pepper v. United States*, 562 U.S. 476, 488 (2011) (a sentencing court is permitted to "consider the widest possible breadth of information about a defendant"); *United States v. Elbaz*, 39 F.4th 214, 229 (4th Cir. 2022) (same); *United States v. Brown*, 816 F. App'x 240, 247 (11th Cir. 2020) (noting that the district court "was required to consider what [the government] learned about [the defendant's] past conduct, even if uncharged, as part of the 'nature and circumstances' of the charged conduct and [the defendant's] 'history and characteristics'"); *United States v. Chavez-Calderon*, 494 F.3d 1266, 1270 (10th Cir. 2007) ("The sentencing court is well within its discretion and, indeed, is required to carefully consider the facts contained in the PSR when evaluating the § 3553(a) sentencing factors, including the history and characteristics of the defendant . . . ." (quoting *United States v. Mateo*, 471 F.3d 1162, 1167 (10th Cir. 2006)).

[5] Title 18, United States Code § 3583(c) sets forth a number of factors to be considered in including a term of supervised release, which closely mirror the 3553(a) sentencing factors.  Specially, that statute indicates that if a term of supervised release is to be considered, the court "**shall consider** the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D)…" [Emphasis added].  Based on a careful consideration of those factors, as set forth herein, the government is seeking 20 years of supervised release, after arguing for a sentence of imprisonment just long enough to trigger that term of supervised release.

imprisonment followed by a 20-year term of supervised release serves the factors set forth in section 3553(a).[6]

### A.      The Government Requests a Below-Guidelines Sentence

---

[6] To be clear, this is not to say that the defendants should receive *credit* for the time that they served in Pakistani prison, since that would mean they were getting credit for a foreign sentence in a foreign country.  The statute governing computation of custody credit for federal sentences is 18 U.S.C. § 3585. Under this section, it is the Attorney General, acting through the BOP—not the district court—who has authority to compute custody credits. *United States v. Wilson*, 503 U.S. 329, 333-35 (1992) ("[Section] 3585(b) does not authorize a district court to compute the [presentence detention] credit at sentencing."); *United States v. Peters*, 470 F.3d 907, 909 (9th Cir. 2006) ("[T]he prerogative to grant credits in the first instance rests with the Attorney General, acting through the Bureau of Prisons."); *United States v. Martinez*, 837 F.2d 861, 865–66 (9th Cir. 1988) (citing *United States v. Clayton*, 588 F.2d 1288, 1292 (9th Cir. 1979)) ("It is the administrative responsibility of the Attorney General, then Department of Justice, and the Bureau of Prisons to compute sentences and apply credit where it is due. It is not the province of the sentencing court.").  Because the computation of custody credit is an executive function and not a judicial one, federal prisoners must exhaust all administrative remedies through the BOP before seeking judicial relief.[2] And the exhaustion requirement is jurisdictional. *United States v. Lucas*, 898 F.2d 1554, 1556 (11th Cir. 1990).  More importantly, under § 3585(b)(2), federal prisoners may not receive credit for prior custody against their federal sentences if that time has been previously credited against another sentence—including a foreign sentence. *See Ezeobi v. Fairton*, 782 Fed. Appx. 106, 107 (3rd Cir. 2019) (defendant who was incarcerated in U.K. and who received credit against his U.K. sentence before being deported to the U.S. was not entitled to custody credit under 18 U.S.C.S. § 3585(b)(2)); *Comrie v. Wilner*, 380 Fed. Appx. 783, 785 (10th Cir. 2010) (federal prisoner not entitled to credit under § 3585(b) because the prisoner's prior time in custody was credited to his state sentence).  As the Tenth Circuit has explained, a defendant isn't entitled to "double credit" when he "owe[s] a debt to two separate sovereigns" because each "ha[s] a right to exact its debt independently of the other." *Goode v. McCune*, 543 F.2d 751, 753 (10th Cir. 1976). Additionally, § 3585 (b)(1) specifies that credit for prior custody shall only be given in connection with "the offense for which the sentence was imposed," i.e., a federal sentence imposed by a United States District Court. Federal appellate case law has long held that even when the identical criminal "acts" formed the basis for both a federal offense and a foreign offense, a prisoner is not entitled to credit against a federal sentence for time spent serving a prior foreign sentence. *Jackson v. Brennan*, 924 F.2d 725, 728 (7th Cir. 1991) (applying the predecessor to 18 U.S.C. § 3585 and concluding defendant was not entitled to credit for incarceration in Cuba for related conduct; credit is due "only when the pre-sentence custody is federal custody or non-federal custody that was caused or sustained by the federal government"); *see also Kendrick v. Carlson*, 995 F.2d 1440, 1445–46 (8th Cir. 1993) (no credit for incarceration in the Netherlands for related conduct); *Marks v. Clark*, 61 F.3d 906, 906 (7th Cir. 1995) (federal inmate's prior custody for violating U.K. law was not creditable toward his federal sentence pursuant to 18 U.S.C. § 3585(b)).

Given the unique facts of this case, the government is not seeking a sentence within the Guidelines.  To the contrary, the government is asking the Court to impose a very short term of imprisonment through a downward departure or a variance, followed by a lengthy term of supervised release.  USSG §1B1.4 provides that, "[i]n determining the sentence to impose within the guideline range, **or whether a departure from the guidelines is warranted**, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See*, 18 USC §3661." (Emphasis added). The Commentary to §1B1.4 notes that "Congress intended that no limitation would be placed on the information that a court may consider in imposing an appropriate sentence."

The 18 U.S.C. § 3553(a) factors support the recommended sentence in this particular case. As stated above, based on the particular facts and circumstances of this case, it is the government's position that the time already spent in Pakistani custody serves as adequate deterrence to future criminal conduct.  Coupled with the lengthy term of supervised release that the government and the defense are jointly seeking, this serves to protect the public from further criminal activity by these particular defendants.   Consequently, considering the 3553(a) factors, a sentence of this nature, while unique, is "sufficient, but not greater than necessary" to achieve the purposes of 18 U.S.C. § 3553(a).

### B.      The Appropriate Sentence in this Case

While the government is not seeking a substantial term of imprisonment in this case, it is clear that *some* term of imprisonment must be imposed in order to trigger the Court's ability to impose a term of supervised release.  Title 18 U.S.C. 3583(a) authorizes a term of supervised release by saying, "The court, **in imposing a sentence to a term of imprisonment for a felony** or a misdemeanor, may include as a part of the sentence a requirement that the defendant be

placed on a term of supervised release after imprisonment. . . ." [Emphasis added].  Here, the government would simply ask the Court to impose a sentence of imprisonment of one day and to credit the time that the defendants spent detained at the Alexandria Detention Center on or about September 7, 2022.  This would satisfy the requirement that the defendants be sentenced to a term of imprisonment,  and would allow this Court to impose a period of 20 years of supervised release, which is appropriate in this case for the reasons explained below.

## V.    THE 18 USC 3553(a) FACTORS WARRANT 20 YEARS OF SUPERVISED RELEASE

The parties have jointly recommended in the plea agreement a term of 20 years of supervised release.  For the following reasons, after factoring in the relevant 3553(a) factors, this is the appropriate sentence in this case.

### A.    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant (18 USC 3553(a)(1))

There is no doubt that this is a serious offense.  Crimes of terrorism are undoubtedly serious offenses, and here the defendants conspired to travel abroad in order to fight against American troops in Afghanistan.  Before leaving on this trip, defendants Minni and Zamzam produced a video that they titled "A Final Message" to explain the reasons why they were doing what they were doing.  In short, they claimed that it was obligatory for them to travel overseas to fight in *jihad* to defend their fellow Muslims.

It is indicative of how seriously they took this obligation that these five defendants were able to make a trip like this undetected.  They employed very good operational security and were very disciplined, allowing them to conceal their plans from their closest friends and family.

And while these defendants were not involved in any sort of criminal activity prior to this trip, that is a factor that should weigh in favor of a lengthy term of supervised release, not against

J.A. 056

it.  Despite stable family lives, great educational opportunities, and promising futures, these defendants chose to embark upon a dangerous, and potentially violent path.  It is very likely that the only thing that stopped their planned acts of violence was their prompt arrest by the Pakistani authorities.

Now, having served out those Pakistani sentences, the defendants are back in the community where they first hatched this conspiracy.  Without some period of incarceration here in the United States, it is certainly appropriate to have them supervised by the Probation Office as they transition back into the civilian world.  Doing so will help to protect the community and will ensure that the defendants remain vigilant about staying out of any further trouble.

### B.    To Reflect the Seriousness of the Offense, To Promote Respect for the Law, and to Provide Just Punishment (18 USC 3553(a)(2)(A))

As noted above, this is a serious offense.  A sentence of 20 years of supervised release helps to reflect that fact.  It also promotes respect for the law.  During their time of supervised release, the defendants will be in regular contact with experienced U.S. Probation Officers who can stress the importance of adhering to the law and being productive members of society.

A 20-year supervised release term will also provide just punishment.  While it is admittedly not equivalent to imprisonment, in this case it is the appropriate punishment in light of the unique circumstances outlined above.  Such a sentence makes the point that the defendants are not entirely free and clear after returning to the United States.  They will be required to live law-abiding lives while being required to strictly adhere to specific supervised release conditions that will ensure proper oversight and compliance.

### C.    To Afford Adequate Deterrence to Criminal Conduct (18 USC 3553(a)(2)(B))

A sentence of 20 years supervised release provides adequate deterrence to criminal conduct.  At the time that these defendants traveled to Pakistan, this case garnered a great deal of

J.A. 057

media attention, both here and around the world.[7]  Since they have returned, the media has continued to follow this case.  A sentence of 20-years of supervised release will demonstrate that the government views these offenses very seriously, and anyone contemplating similar conduct will face severe consequences.  While it is the government's position that the time already spent in Pakistani custody serves as adequate deterrence to future criminal conduct, the defendants will need to comply with supervised release conditions or find themselves subject to additional imprisonment in the future.

### D. To Provide the Defendants with Needed Educational or Vocational Training, Medical Care or Other Correctional Treatment in the Most Effective Manner

A sentence of 20-years supervised release helps to achieve these objectives.  While the defendants will not be under confinement where they will receive educational or vocational training, they will be subject to supervision by the Probation Office.  They will need to make efforts to work or go to school.  They will need to meet on a regular basis with a Probation Officer who can keep tabs on, and encourage, their continued progress.  And they will have the benefit of an experienced Probation Officer who can help smooth the transition back to life in the United States.

### CONCLUSION

For all of the foregoing reasons, the government intends to recommend a sentence of imprisonment of one day, with credit for time served on or about September 7, 2022, followed by a jointly recommended term of supervised release of 20 years.

---

[7]  *See e.g.*, "Mosque of Americans arrested in Pakistan plans investigation." https://www.cnn.com/2009/WORLD/asiapcf/12/11/pakistan.arrests/index.html; "5 Americans Get 10-Year Sentences in Pakistan Terror Plot." https://abcnews.go.com/Blotter/americans-convicted-terrorism-pakistan/story;

Respectfully submitted,

Jessica D. Aber
United States Attorney


By:      /s/   John T. Gibbs
        John T. Gibbs
        Assistant United States Attorney
        United States Attorney's Office for the
        Eastern District of Virginia
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        703-299-3700

**J.A. 059**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2023, I electronically filed this motion with the Clerk of

Court using the CM/ECF system, which will transmit a Notice of Electronic Filing to all counsel

of record in this case.

                      <u>  /s/  John T. Gibbs      </u>
                      John T. Gibbs
                      Assistant United States Attorney
                      United States Attorney's Office for the
                      Eastern District of Virginia
                      2100 Jamieson Avenue
                      Alexandria, Virginia 22314
                      703-299-3700

**J.A. 060**

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF VIRGINIA
 2                   ALEXANDRIA DIVISION

 3    --------------------------x
      UNITED STATES OF AMERICA   :    Criminal Action No.:
 4                               :    1:17-cr-270
           versus                :
 5                               :    Thursday, December 12, 2023
      UMAR FAROOQ CHAUDHRY,      :    Alexandria, Virginia
 6                               :
                  Defendant.     :    Pages 1-7
 7    --------------------------x

 8         The above-entitled arraignment was heard before the
      Honorable Leonie M. Brinkema, United States District Judge.
 9    This proceeding commenced at 8:56 a.m.

10                   A P P E A R A N C E S:

11    FOR THE GOVERNMENT:    JOHN GIBBS, ESQUIRE
                             OFFICE OF THE UNITED STATES ATTORNEY
12                           2100 Jamieson Avenue
                             Alexandria, Virginia  22314
13                           (703) 299-3700

14    FOR THE DEFENDANT:     GEREMY KAMENS, ESQUIRE
                             OFFICE OF THE FEDERAL PUBLIC DEFENDER
15                           1650 King Street
                             Suite 500
16                           Alexandria, Virginia  22314
                             (703) 600-0800
17
      COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
18                           Official Court Reporter
                             United States District Court
19                           401 Courthouse Square
                             Alexandria, Virginia  22314
20                           (607) 743-1894
                             S.AustinReporting@gmail.com
21
          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
22

23

24

25
                                                              1
```

```
 1                    P R O C E E D I N G S

 2           THE DEPUTY CLERK:  Criminal Number 17-270-4,

 3    United States of America versus Umar Farooq Chaudhry.

 4           Would counsel please note their appearances for

 5    the record.

 6           MR. GIBBS:  Good morning, Your Honor.  John Gibbs

 7    on behalf of the United States.  I also have Dan Abrams from

 8    the FBI with me at counsel table.

 9           THE COURT:  Good morning.

10           MR. KAMENS:  Good morning, Your Honor.  Geremy

11    Kamens on behalf of Mr. Chaudhry, who is present.

12           THE COURT:  All right.  This is -- your client

13    comes on for an arraignment.

14           Do you wish a formal or informal -- we don't need

15    an interpreter.  No.

16           MR. KAMENS:  No, we don't need an interpreter.

17           THE COURT:  Do you wish a formal or informal

18    arraignment?

19           MR. KAMENS:  Your Honor, we would waive formal

20    reading, we would -- we received a copy of the indictment

21    and would enter a plea of not guilty and request a trial by

22    jury.

23           THE COURT:  All right.  Have you and the United

24    States talked about a possible trial date?

25           MR. KAMENS:  Yes, we have.  Your Honor, I think
```

2

```
 1  the Court has already certified the case as complex.  We

 2  would suggest a date in May, if that would be amenable to

 3  the Court.

 4          THE COURT:  All right.  Of course, you know,

 5  you're aware that all the co-defendants in this case, their

 6  cases have been resolved.

 7          MR. KAMENS:  I understand, Your Honor.

 8          THE COURT:  All right.  Monday, May 6th?

 9          MR. GIBBS:  That's fine with the government,

10  Judge.

11          MR. KAMENS:  That's fine, Your Honor.

12          THE COURT:  That will be at 10:00 with a jury.  I

13  assume a jury.

14          Mr. Kamens, you would want a jury?

15          MR. KAMENS:  Yes, Your Honor.  We would request

16  trial by jury.

17          THE COURT:  All right.  All right.  Is there a

18  discovery order that's been prepared yet?

19          MR. GIBBS:  There is, Judge.  I'd like to hand

20  that up.

21          THE COURT:  A protective order as well, or just a

22  discovery order?

23          MR. GIBBS:  Just a discovery order, Judge.

24          THE COURT:  Okay.

25          MR. GIBBS:  I believe the Court has already
```

```
 1    entered a protective order, and I have a copy -- I have a
 2    copy of the file.
 3              THE COURT:  That would apply as well, Mr. Kamens,
 4    to you.
 5              MR. KAMENS:  Understood.
 6              THE COURT:  I think just for the record I need to
 7    hear from Mr. Chaudhry about the Speedy Trial Act.  So,
 8    Mr. Chaudhry, if you would go up to the lectern.
 9              Mr. Chaudhry, did your attorney, Mr. Kamens,
10    explain to you that you do have a right under the Speedy
11    Trial Act to insist upon a trial within 70 days of today's
12    date; do you know that?
13              THE DEFENDANT:  Yes.
14              THE COURT:  All right.  And he discussed that with
15    you?
16              THE DEFENDANT:  Yes.
17              THE COURT:  He has requested and the Court has
18    previously found this is a complex case because of the
19    nature of the charges and the evidence, and therefore
20    normally we would have the right to extend the Speedy Trial
21    Act.
22              Is it your desire to do that?
23              THE DEFENDANT:  Yes.
24              THE COURT:  In any respect, do you feel anybody's
25    put any force or pressure on you to make the decision to
```

4

```
 1   waive the Speedy Trial Act?

 2             THE DEFENDANT:  No.

 3             THE COURT:  And have you discussed it

 4   thoroughly -- this decision, have you discussed it

 5   thoroughly with Mr. Kamens?

 6             THE DEFENDANT:  Yes.

 7             THE COURT:  In any respect, do you feel anybody's

 8   put any force or pressure on you or that you've been

 9   promised anything, any special leniency or anything like

10   that, by waiving the Speedy Trial Act?

11             THE DEFENDANT:  No.

12             THE COURT:  All right.  Then I am going to find as

13   well that the defendant has knowingly and voluntarily and

14   with the full advice of counsel waived the Speedy Trial Act.

15   I don't need a written waiver, I think, based on this

16   record.

17             Mr. Kamens, I will direct that any motions be

18   filed within 30 days of today's date.  The government will

19   have 14 days to respond, and then you'll have to consult

20   with chambers in terms of setting a date for a hearing.

21             MR. KAMENS:  Thank you.

22             THE COURT:  I also want to just put everybody on

23   notice that I'm going to be very involved in a significant

24   criminal trial starting Monday, January, I think it's the

25   8th, and I'm trying to avoid interfering with that schedule
```

```
1    as much as possible.  So were this case to be worked out, I
2    would prefer that it get worked out either before January 8
3    or after about February 9th.  I will, in an emergency, take
4    a plea at 8 or 8:30, but, I mean, I cannot interfere with
5    that trial; all right?
6              MR. KAMENS:  Understood, Your Honor.
7              THE COURT:  All right.  Is there anything further
8    we need to address with this case?
9              MR. GIBBS:  Not from the government, Judge.  Thank
10   you.
11             THE COURT:  The defendant is on bond.
12             MR. GIBBS:  Right.
13             THE COURT:  Are there any issues about his bond,
14   Mr. Kamens?
15             MR. KAMENS:  No, Your Honor.
16             With respect to motions, I just wanted to mention,
17   I discussed with the government the process of receiving
18   discovery.  As I understand it, all of the discovery has
19   been downgraded so that there is no classified discovery.
20   That said, it may take some time to provide the device to
21   get all of the discovery transmitted to us.  And so I say
22   that in respect to the motions date.  The Court said
23   30 days.  It may be -- depending upon how quickly we're able
24   to get discovery, that we may ask for some additional time.
25             THE COURT:  Well, I'm assuming the previous
```

6

```
1   counsel in this case got discovery as well, so it may not

2   take as long as you think to get it; all right?

3            MR. KAMENS:  That's my hope, Your Honor.

4            THE COURT:  Very good.

5            Anything further on this case?  If not,

6   Mr. Chaudhry, just check in with the probation office so the

7   pretrial officer knows that you were here today; all right?

8            THE DEFENDANT:  Okay.

9            THE COURT:  And all your conditions of bond remain

10  in place with the additional condition that you reappear in

11  this court for the trial that's been set; all right?

12           THE DEFENDANT:  Okay.

13           THE COURT:  All right.  You're all free to go.

14           MR. KAMENS:  Thank you, Your Honor.

15           MR. GIBBS:  Thank you, Judge.

16           (Proceedings adjourned at 9:01 a.m.)

17           ----------------------------------

18  I certify that the foregoing is a true and accurate

19  transcription of my stenographic notes.

20

21           _____
                  Stephanie Austin

22                Stephanie M. Austin, RPR, CRR

23

24

25
                                                              7
```

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:17cr270(LMB)** |
| | ) | |
| **UMAR FAROOQ CHAUDHRY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION TO DISMISS INDICTMENT
FOR VIOLATING THE RIGHT TO A SPEEDY TRIAL AND RULE 48**

This case is a relic of a different time, when almost every intelligence and federal law enforcement agency was focused on the terrorist threat posed by non-state actors. Since the federal complaint and arrest warrant were issued against Mr. Chaudhry and his co-defendants in December 2009, and the indictment was issued on the eve of the expiration of the statute of limitations in 2017, the national security landscape has dramatically changed.

The U.S. has withdrawn from Afghanistan, and the Taliban succeeded in re-taking governing control of the country. And the focus of the national security establishment has shifted away from terrorist threats to those posed by state actors such as Russia and China, cybersecurity threats, and pandemic preparedness. In the most recent Annual Threat Assessment issued by the Director of National Intelligence, for example, the report does not discuss the threat of global terrorism

until page 31. *See* Office of the Director of National Intelligence, Annual Threat Assessment of the U.S. Intelligence Community (Feb. 6, 2023).[1]

This shift in focus, and the U.S. government's knowledge that Mr. Chaudhry was sentenced to serve a 10-year prison sentence in Pakistan, may explain the government's lack of reasonable diligence in pursuing Mr. Chaudhry's extradition.

The Sixth Amendment right to a speedy trial arises once a defendant is "indicted, arrested, or otherwise official accused." *United States v. MacDonald*, 456 U.S. 1, 6 (1982). If the government knows that a defendant is located overseas, the Sixth Amendment requires it to make serious efforts to seek extradition, even when a defendant is incarcerated and serving a foreign sentence. *United States v. Pomeroy*, 822 F.2d 718, 721–22 (8th Cir. 1987) (affirming dismissal of indictment based on government's failure to seek extradition while defendant served Canadian prison sentence); *United States v. McConahy*, 505 F.2d 770, 773-74 (7th Cir. 1974) (ordering dismissal of indictment because government failed to seek extradition while defendant served sentence in England); *United States v. Fernandes*, 618 F. Supp. 2d 62, 69 (D.D.C. 2009) ("In cases such as this one—where a defendant is located abroad for much of the delay—the hallmark of government diligence is extradition.").

That a country may not honor an extradition request is no excuse for failing to make one. 'The possibility of a refusal is not the equivalent of asking and receiving a rebuff.'" *Smith v. Hooey*, 393 U.S. 374, 382 (1969). Waiting to seek extradition until

---

[1] Available at: https://www.dni.gov/index.php/newsroom/reports-publications/reports-publications-2023/3676-2023-annual-threat-assessment-of-the-u-s-intelligence-community.

after a defendant has finished serving a foreign sentence prejudices a defendant by eliminating the possibility of serving partially concurrent sentences, can require imprisonment under harsher conditions, and can impair the defendant's ability to defend against the pending charge. *Id.* at 378-79.

In this case, the government filed a criminal complaint and obtained an arrest warrant on December 23, 2009, and was well aware that Mr. Chaudhry had been arrested by Pakistani authorities. The government waited almost eight years to seek an indictment, which was filed on November 16, 2017. Meanwhile, Mr. Chaudhry served 10 years of imprisonment under horrific conditions in Pakistan, from December 2009 until March 1, 2020. Yet the government did not formally request Mr. Chaudhry's extradition until August 26, 2020, almost 11 years after the filing of the complaint, and almost three years after obtaining the indictment.

Umar Farooq Chaudhry, through counsel, moves this Court to dismiss the indictment for violating Mr. Chaudhry's Sixth Amendment right to a speedy trial and for unnecessary delay in bringing him to trial pursuant to Federal Rule of Criminal Procedure 48(b).

## FACTUAL SUMMARY

The indictment alleges that from November 2009 through December 2009, Mr. Chaudhry conspired and attempted to provide material support knowing and intending such support to be used to commit violations of statutes enumerated in 18 U.S.C. § 2339A, and conspired and attempted to provide material support to two designated terrorist organizations, Jaish-e-Mohammed and Lashkar-e-Tayyiba, in

violation of 18 U.S.C. § 2339B. A criminal complaint was filed on December 23, 2009, ECF 1, and an arrest warrant for Mr. Chaudhry was issued on that date. Mot. Limited Unsealing, ECF 6, ¶ 1. The affidavit in support of the criminal complaint states that Mr. Chaudhry and four other young men traveled to Pakistan on November 28, 2009. Aff, ECF 2, ¶ 11. He was then arrested in Sargodha, Pakistan, on December 9, 2009. *Id.* ¶ 13. Two of the men arrested with Mr. Chaudhry, Ahmed Minni and Waqar Khan, provided statements stating that the group sought to travel to Afghanistan to fight on behalf of oppressed Muslims. *Id.* ¶¶ 15-18.

On December 24, 2009, the Court authorized a limited unsealing of the case so that the FBI could seek the issuance of a "red notice" from Interpol, the international law enforcement organization. Gov't Mot. Limited Unsealing Order, ECF 8, ¶ 2. A "red notice" "is the closest instrument to an international arrest warrant in use today." *Guan v. Barr*, 925 F.3d 1022, 1030 n.2 (9th Cir. 2019) (citation omitted).

The government also sought a limited unsealing order to request Pakistan to deport Mr. Chaudhry and his co-defendants. ECF 8 ¶ 3. As of December 15, 2009, however, the Pakistani government advised the U.S. government to follow "the formal extradition process," and that "the USG should initiate a formal request soon." Bates No. FBI-00053080.[2]

Mr. Chaudhry was prosecuted for violations of Pakistani law and was sentenced to serve 10 years of "rigorous imprisonment." He completed his sentence on or about March 1, 2020.

---

[2] "Bates No. ___" refers to discovery provided by the government.

The government did not seek an indictment until almost eight years after the filing of the criminal complaint, on the eve of the expiration of the statute of limitations. Indictment, ECF 10 (Nov. 16, 2017). And it did not seek extradition of Mr. Chaudhry until August 26, 2020, almost three years after the indictment was issued, and after Mr. Chaudhry had completed serving his Pakistani sentence. Bates No. FBI-00053112.

Pakistan ultimately ordered that Mr. Chaudhry be extradited to the United States. At the conclusion of the extradition process, Mr. Chaudhry turned himself in to U.S. custody on or about December 2, 2023. This Court held an initial appearance on December 7, arraigned Mr. Chaudhry on December 12, and set a jury trial date for May 6, 2024.  ECF No. 160-63.

## ARGUMENT

The government's lack of reasonable diligence in seeking Mr. Chaudhry's extradition after instituting federal criminal charges violates the Sixth Amendment right to a speedy trial and constitutes unnecessary delay pursuant to Federal Rule of Criminal Procedure 48(b). After instituting federal charges, the government cannot simply wait around until a defendant has finished serving a sentence imposed by another jurisdiction to pursue its prosecution. *See Smith v. Hooey*, 393 U.S. 374 (1969). Because the government failed to act with reasonable diligence in seeking Mr. Chaudhry's extradition, the Court should dismiss the indictment.

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In

determining whether the right to a speedy trial has been violated, the Court must balance four factors: (1) the length of the delay; (2) the government's justification for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

Once a defendant meets a threshold showing that "the interval between accusation and trial" implicates the Sixth Amendment, the government is required to establish that it acted with "reasonable diligence" in seeking the defendant's custody. *Doggett v. United States*, 505 U.S. 647, 652, 656 (1992). Nonetheless, "even in cases where the defendant is imprisoned in a foreign treaty country which might elect to defer extradition, the failure to seek extradition is delay which is attributable to the government." *United States v. Pomeroy*, 822 F.2d 718 (8th Cir. 1987). The sole remedy for a violation of the speedy-trial right is dismissal of the charges. *See Strunk v. United States*, 412 U.S. 434, 439–40 (1973); *Pollard v. United States*, 352 U.S. 354, 361 n.7 (1957).

Federal Rule Criminal Procedure 48(b) provides that "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in… bringing a defendant to trial." Fed. R. Crim. P. 48(b). "Under both Rule 48(b) and its supervisory power, a district court has broad discretion." *United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000). A court can dismiss under Rule 48 "even where the delay is not of a constitutional magnitude." *Id.* at 513; *see also United States v. Balochi*, 527 F.2d 562, 563–64 (4th Cir. 1976) (Rule 48(b) "supplements the district court's obligation to

dismiss indictments in order to protect a defendant's constitutional rights, and it is broader in compass").

I.    <u>The Criminal Complaint, Arrest Warrant, and Interpol Red Notice Triggered Mr. Chaudhry's Sixth Amendment Right to a Speedy Trial, and the Subsequent 11 year Delay until the U.S. Sought Extradition is Presumptively Prejudicial.</u>

A defendant's constitutional right to a speedy trial arises when the defendant is "indicted, arrested, or otherwise officially accused." *United States v. MacDonald*, 456 U.S. 1, 6 (1982); *Dickey v. Florida*, 398 U.S. 30, 32 (1970) (state arrest warrant and detainer triggered Sixth Amendment speedy trial right). Accordingly, the Fourth Circuit has held that the issuance of a criminal complaint, arrest warrant, and detainer triggers the charging jurisdiction's obligations to diligently seek custody of a defendant. *See United States v. Woolfolk*, 399 F.3d 590, 597 (4th Cir. 2005) ("the filing of the detainer, warrant and complaint [] triggered Woolfolk's Sixth Amendment speedy trial rights"); *United States v. Thomas*, 55 F.3d 144, 149 (4th Cir. 1995) (same).

To "trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Woolfolk*, 399 F.3d 590, 597 (4th Cir. 2005) (citing *Doggett v. United States*, 505 U.S. 647, 651 (1992)). In *Doggett*, the Supreme Court noted that "postaccusation delay [has generally been found] 'presumptively prejudicial' at least as it approaches one year." 505 U.S. at 652 n.1. The Fourth Circuit stated in *Woolfolk* that "any delay of eight months or longer is presumptively

prejudicial." Woolfolk, 399 F.3d at 598 (citing 4 Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, Criminal Procedure § 18.2(b)(2d ed. 1999)).

Whatever the standard, it is met in this case. The complaint, arrest warrant, and red notice were issued in 2009, and the indictment was issued in 2017. But the government did not seek to extradite Mr. Chaudhry until 2020, and he consequently was not arrested by the United States until December 2023.

II.   The Government Did Not Act with Reasonable Diligence in Seeking Custody of Mr. Chaudhry.

When a defendant is incarcerated in another jurisdiction, the charging jurisdiction has a "constitutional duty to make a diligent, good-faith effort to bring [the defendant] before the [charging] court for trial." *Smith*, 393 U.S. at 383. Accordingly, determination of whether the government violated Mr. Chaudhry's speedy trial right turns on whether it "pursued [Mr. Chaudhry] with reasonable diligence from his [accusation] to his arrest." *Doggett*, 505 U.S. at 656; *accord Thomas*, 55 F.3d at 150. Because it did not request Mr. Chaudhry's extradition from Pakistan until 2020, however, the government cannot establish that it acted with reasonable diligence.

The rule established in *Smith v. Hooey* requiring a charging jurisdiction to diligently seek custody of a defendant held elsewhere applies with equal force to circumstances in which "the defendant is incarcerated by a foreign government rather than the United States or one of its states." *United States v. McDonald*, 172 F. Supp. 2d 941, 948 (W.D. Mich. 2001). As such, "[i]n cases such as this one—where a defendant is located abroad for much of the delay—the hallmark of government

diligence is extradition." *United States v. Fernandes*, 618 F. Supp. 2d 62, 69 (D.D.C. 2009).

Accordingly, the Eighth Circuit affirmed the dismissal of an indictment where the government failed to seek to extradite a defendant imprisoned in Canada. *United States v. Pomeroy*, 822 F.2d 718, 722 (8th Cir. 1987). As the court explained, "when such an attempt [to extradite] would not have been futile, courts have held that the government had 'a constitutional duty to make a diligent, good-faith effort to bring [the fugitive] before the [district] court for trial.'" *Id.* (citations omitted).

Likewise, the Sixth Circuit ordered the dismissal of an indictment because the "government did not pursue extradition for almost three years because of the possibility that Switzerland would place conditions on [the defendant's] extradition." *United States v. Heshelman*, 521 F. App'x 501, 508 (6th Cir. 2013). In the absence of evidence that extradition proceedings would have been futile, the government's "intentional[] delay pursuing [the defendant's] extradition for nearly three years" established the government's responsibility for violating the defendant's constitutional right to a speedy trial. *Id.* at 509; *accord United States v. McConahy*, 505 F.2d 770, 773 (7th Cir. 1974).

In this case, the government waited until August 2020 to request Mr. Chaudhry's extradition from Pakistan, almost 11 years after the filing of the complaint and arrest warrant in this case, and almost three years after the filing of the indictment. The government plainly did not act with reasonable diligence in seeking Mr. Chaudhry's extradition from Pakistan.

III.    Mr. Chaudhry Has Timely Asserted His Speedy Trial Right.

While the "[f]ailure to assert the right to speedy trial, and even the explicit waiver of that right, is not dispositive of a Sixth Amendment speedy-trial claim," *Thomas*, 55 F.3d at 150, filing a motion to dismiss the indictment within the time period set by the Court satisfies the requirement that a defendant timely assert his constitutional right to a speedy trial. *See, e.g., McDonald*, 172 F. Supp. 2d at 949 (finding defendant "timely asserted his right to speedy trial by motion soon after being arraigned on the charges in the United States").

IV.    The delay and transportation of Mr. Chaudhry has prejudiced not only his case, but also his medical and mental health.

When the government fails to "exercise due diligence" in obtaining custody of a defendant who is overseas, "a strong presumption that [the defendant] suffered prejudice" arises. *United States v. Mendoza*, 530 F.3d 758, 764–65 (9th Cir. 2008). Indeed, while "[a]t first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from 'undue and oppressive incarceration prior to trial[,]' … delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge." *Smith v. Hooey*, 393 U.S. 374, 378 (1969).

First, the government's delay in seeking Mr. Chaudhry's extradition eliminated any possibility of him potentially serving concurrent sentences if he were to be convicted. *Id.* (noting "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be

10

forever lost if trial of the pending charge is postponed"). Second, "the conditions under which he must serve his sentence [may be] greatly worsened, by the pendency of another criminal charge outstanding against him." *Id.* And third, "it is self-evident that 'the possibilities that long delay will impair the ability of an accused to defend himself' are markedly increased when the accused is incarcerated in another jurisdiction." *Id.* at 379.

Those factors establish are present in this case, and establish prejudice. The delay in seeking Mr. Chaudhry's extradition eliminated the possibility that he could potentially serve concurrent sentences. The government also waited until after Mr. Chaudhry was released from Pakistani custody, following the completion of his 10 year term of incarceration under extraordinarily difficult circumstances, before seeking his return via extradition.

Finally, the delay of over a decade between the filing of the complaint and Mr. Chaudhry's arrest necessarily impacts the ability of those involved to provide accurate testimony. One co-defendant is incompetent. And the memories of everyone involved has necessarily dimmed, such that the documentary evidence is elevated in importance. In sum, the delay in this case between the accusation and the arrest has "impair[ed] the ability of [Mr. Chaudhry] to defend himself." *See Smith*, 393 U.S. at 379.

<u>Conclusion</u>

The four *Barker* factors weigh in favor of Mr. Chaudhry, and require the Court to find that the government violated his constitutional right to a speedy trial. Even if

this were a close case as to the finding of a constitutional violation, this case warrants exercise of the Court's discretionary authority to dismiss pursuant to Federal Rule of Criminal Procedure 48(b).

Respectfully submitted,

UMAR FAROOQ CHAUDHRY

By:      /s/
    Geremy C. Kamens
    Federal Public Defender
    Virginia Bar No. 41596
    Office of the Federal Public Defender
    1650 King Street, Suite 500
    Alexandria, Virginia 22314
    Telephone: 703-600-0800
    Facsimile: 703-600-0880
    Geremy_Kamens@fd.org

**J.A. 079**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *v.* | ) | |
| | ) | No. 1:17-cr-270-LMB |
| UMAR FAROOQ CHAUDHRY, | ) | |
| | ) | |
| *Defendant*. | ) | |

**Government's Opposition To Defendant's
Motion To Dismiss Indictment On Speedy Trial Grounds**

Pakistani authorities arrested the defendant in December 2009 on terrorism charges. Thereafter, the U.S. government issued a criminal complaint charging the defendant with providing material support to a foreign terrorist organization. The U.S. government obtained an arrest warrant, INTERPOL Red Notice, and repeatedly pressed Pakistani authorities to return the defendant to the U.S. for prosecution, including through a formal diplomatic request. But by June 2010, a Pakistani court had convicted the defendant and sentenced him to 10 years' imprisonment. In these circumstances, the governing treaty provides that any extradition "shall be deferred until the conclusion of the trial and the full execution of any punishment[.]" Based on the treaty, past practice, and governing doctrine, the U.S. government did not need to submit a formal extradition request until the defendant was released from Pakistani prison.

In the meantime, in November 2017, a grand jury in this Court returned an indictment charging the defendant with material support offenses. Once the defendant was released from Pakistani prison in June 2020, the U.S. government swiftly filed a formal extradition request.

1

During this entire period, a Pakistani court order barred the defendant's transfer to another country. Once the defendant was rearrested by Pakistani authorities, his extradition proceedings began. But the defendant contested extradition for almost one year. The defendant ultimately consented to extradition and appeared before this Court on December 6, 2023

Despite being in a Pakistani prison for a decade, never asserting his interest in a speedy trial, never surrendering to U.S. authorities upon release from Pakistani prison, and later fighting extradition to the U.S., the defendant now claims the government violated his Sixth Amendment right to a speedy. Because the defendant cannot satisfy the test set forth in *Barker v. Wingo*, 407 U.S. 530 (1972), the Court should deny his motion.

## I.      Factual and Procedural Background

### a.  Criminal Conduct

The indictment in this case alleges a criminal conspiracy among five young men from the northern Virginia area. Those five defendants, Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry, and Waqar Hussain Khan left the United States in two groups on November 28 and November 29, 2009, and flew to Pakistan for the purpose of traveling onward to Afghanistan to defend Muslims against American and other foreign troops. Prior to their departures, Minni and Yemer were in regular contact with a U.S. facilitator located overseas who encouraged them to make this journey. Shortly before their departures, Zamzam, assisted by Minni, recorded a "Final Message" video explaining the reasons for their trip. Among the reasons cited was the need for Muslims to go overseas and assist their fellow Muslims physically, by fighting. Zamzam described this as a religious obligation.

The criminal conspiracy began in August 2009 and ended in December 2009.  It was characterized by extreme secrecy. At the time the defendants left the U.S., almost no one knew of their

**J.A. 081**

plans. Not their families, not their friends, not their classmates[1], and not U.S. law enforcement. They all managed to travel to Pakistan undetected.  In fact, the FBI first became aware of these defendants because their families came forward to report that their sons were missing.

On December 9, 2009, Pakistani authorities arrested all five defendants in a house belonging to the defendant's cousin in Sargodha, Pakistan. All five defendants were detained pending trial in Pakistan. The FBI immediately sent a team of agents to attempt to interview them. The Assistant Legal Attaché (ALAT) in Pakistan, also conducted his own interviews. From December 10, 2009, through December 19, 2009, the FBI conducted a total of nine interviews of the defendants. On December 10, 2009, the ALAT in Pakistan interviewed all five defendants for the first time. Zamzam and Yemer both refused to speak to the FBI. The defendant largely refused as well, though at one point he did make a few pertinent admissions, especially related to the Final Message video. Minni and Khan both spoke to the FBI and made numerous admissions. The FBI interviewed them twice following that initial interview by the ALAT.

Around December 15, 2009, the ALAT met with his counterpart in the Pakistani Ministry of the Interior concerning the defendants and communicated the FBI's desire to see them promptly returned to the U.S. for prosecution. Specifically, the ALAT asked if the Pakistani government would be "willing to deport the five directly to a USG operated plane in Pakistan for immediate repatriation to the United States." [Attachment 1 at 2.]  However, the ALAT was told that because the five defendants had received a consular visit[2], their detention was now "formal" and "on the books," meaning that Pakistan would want the U.S. to follow the formal extradition process.

---

[1] Virtually the only exception was Yemer's brother who was alerted to the plan beforehand. He was provided with the Final Message video approximately two days before they left the country. When they did so, they told him that he would know what to do with it. [Dkt. No. 1 at ¶¶ 6, 7.]

[2] Throughout their time in custody, the defendants continued to receive consular visits from personnel working at the U.S. Embassy in Pakistan.

### b.  The Government Files a Criminal Complaint Against the Defendants.

On December 23, 2009, the United States Attorney's Office for the Eastern District of Virginia filed a criminal complaint against the defendants. [Dkt. No. 1.]  The following day, on December 24, 2009, the government filed a motion seeking a limited unsealing order so that "summary information as to the defendants' offense conduct could be taken from the complaint and supporting affidavit and provided to INTERPOL, as required for issuance of a Red Notice/Wanted Person Diffusion Alerts with respect to the warrants issued by the Court for the defendants' arrest[.]" [Dkt. Nos. 6, 7].  An INTERPOL Red Notice is an international notification to all country members of INTERPOL (including Pakistan) that the defendants were wanted in the U.S. on a criminal complaint, and that the U.S. has made a firm commitment to seek their extradition.[3]

Also on December 24, 2009, the Legal Attaché provided the Ministry of the Interior in Pakistan copies of the arrest warrants for the five defendants in a letter. The Legal Attaché also advised the Ministry of the Interior that "[t]he US Government seeks custody of these individuals so that they may stand trial in the US for the charge above and any additional charges that may be added to the complaint.  The Legat office is prepared to facilitate the transfer of the five via air transport from Pakistan to the US within a timeframe of 72 hours." [Attachment 2 at 2.] That same day, Pakistan informed the Legat that "that there was a court order from the local court which

---

[3] On December 30, 2009, the United States Attorney's Office was notified via email that the Red Notice applications had been approved for all five defendants. [Attachment 3.] That email made clear that the purpose of the Red Notice was to seek extradition, "NOTE: As previously noted, the Red Notice is a firm commitment by your office, and by the United States to request this fugitive's extradition in all but the most exceptional circumstances." [Attachment 3 at 2]. The Red Notice package appended to this email then listed the identity particulars of each of the five defendants charged in this case, and under the heading, "Action to be taken if traced," stated for each defendant, "**Locate and arrest with a view to extradition**. Assurances are given that extradition will be sought upon arrest of the person, in conformity with national laws and/or the applicable bilateral and multilateral treaties." [Attachment 3 at 6.]

4

ordered the Sargodha Fives' detention, prohibiting their transfer to any foreign government." [Attachment 4 (Olson Decl. ¶ 21).]

On December 28, 2009, Legat advised that an official request from the U.S. for the transfer of custody of the defendants might carry more weight than simply providing the arrest warrants. Legat also noted that the defendants would likely be formally charged in Pakistan on January 4, 2010, for Directing Terrorist Activities. *Id*. at ¶ 22.[4]

In response, OIA and EDVA worked together to provide an official request to Pakistan to turn over the five defendants. *Id*. at ¶ 23. This request issued in the form of a diplomatic note presented to the Ministry of Foreign Affairs in Islamabad, Pakistan on January 8, 2010. *Id*. Due to a typographical error, an amended diplomatic note was presented on January 15, 2010. *Id*. This diplomatic note requested the transfer by "deportation, expulsion, or other lawful means," of the five defendants named in the compliant. *Id*. at ¶ 24. Because all five defendants were U.S. citizens, the government did not seek extradition. *Id*. at ¶¶ 13, 24. Instead, it sought Pakistan's consent to return them to the U.S. *Id*.

The diplomatic note acknowledged that Pakistan had initiated its own criminal proceedings, but nonetheless made the following request: "[the] United States respectfully requests that the Government of Pakistan consider suspending or otherwise deferring its criminal proceedings against the defendants and deporting or expelling them as soon as possible to the United States." *Id*. at ¶ 25. The diplomatic note also argued that because most of the criminal conduct had occurred in the U.S., it would be more appropriate for the defendants to be tried in the U.S. *Id*.

---

[4] On December 31, 2009, the government filed a second motion for limited unsealing so that "summary information as to the defendants' offense conduct can be taken from the complaint and supporting affidavit and used in a formal request from the United States Government to the Government of Pakistan, requesting the deportation or expulsion of the defendants from Pakistan." [Dkt. Nos. 8, 9].

The government has no record of a response from Pakistan to this request. On June 5 or 6, 2010, the U.S. Ambassador to Pakistan met with the Pakistani Minister of Interior to reiterate the U.S.'s position that the defendants be returned to the U.S. [Olson Decl. ¶ 27.]

    **c. The Defendants Are Convicted of Terrorism Offenses in a Pakistani Court.**

Instead, of transferring the defendants to the U.S., Pakistan swiftly prosecuted them. Within seven months of their arrest, all five defendants were found guilty at trial of various charges. The judgment of the District and Sessions Judge of the Anti-Terrorism Court in Sargodha, Pakistan, dated June 24, 2010, is Attachment 1 to Defendant Aman Yemer's Motion for Emergency Relief and For a Hearing [Dkt. 29]; *see also* Olson Decl. ¶ 28. The written judgment is 52-pages long and describes much of what occurred in the trial. Toward the end of the judgment, the court explained why these offenses were viewed so seriously in Pakistan. [*See* Judgment at 50-51.]. The court returned to this theme one page later:

> The menace of terrorism is to be curbed with iron hand. A clear and loud message is to be given that Pakistan is not open to any Tom, Dick and Harry to fulfill his evil designs. Hence keeping all the fact and circumstances in view, accused Umar Farooq, Waqar Hussain, Rami Zam Zam, Ahmad Abdullah Mini and Aman Hassan Yemer are sentenced to 10 years R.I. (each).

[Judgment at 51-52.] Consistent with this judgment, all five defendants ultimately served at least ten-years in Pakistani prison.

On June 23, 2010, the day before the Pakistani court issued its Judgment, the Legal Attache in Islamabad sent a letter to the Pakistani Ministry of Interior about these five defendants, reiterating that "the US Government has a strong interest in seeing their custody transferred to the United States at the earliest opportunity." [Attachment 8 at 1.] The letter continued by stating that the defendants could be held in custody "until a US Government aircraft could arrive to transport those who are deported out of Pakistan." *Id.*

Over the next ten or so years, "Legat routinely inquired with the Pakistan government as to the completion of their sentences." [Olson Decl. ¶ 31.] For example, on March 4, 2013, while the defendants were serving their sentences, the Legal Attache in Pakistan sent a letter to the Director General of the Federal Investigative Agency in Pakistan regarding these defendants. The letter stressed that the U.S. government was "interested in discussing a number of pending requests for extradition in Pakistan to the United States, such as [the five named defendants in this case]." [Attachment 6 at 1.]

### d.   A Grand Jury Charges the Defendants with Terrorism Offenses.

On November 16, 2017, while the defendants were still serving their sentences in Pakistan, a grand jury in this Court charged the defendants in a four-count indictment with material support offenses. [Dkt. No. 10.]

### e.   The Government Prepares for the Defendant's Release from Prison.

In early November 2019, Jefferey M. Olson, Associate Director at the Office of International Affairs (OIA) of the United States Department of Justice traveled to Pakistan to discuss several matters, including this case, with Pakistani counterparts. [Olson Decl. ¶ 32.] Olson learned that the defendants would be released in early 2020. *Id*. In early December 2019, Olson requested that the Department of State and U.S. Embassy in Islamabad "send a cable to the Pakistan Ministry of Foreign Affairs, noting that it was our understanding that the sentences of the [defendants] were due to expire imminently, and asking for confirmation of that fact so that the U.S. could proceed with extradition or deportation." *Id*. at ¶ 34.

On November 22, 2019, in anticipation of the defendants' release from prison in Pakistan, the government filed a motion to appoint the defendants counsel. [Dkt. No. 17.] The government explained that it expected the defendants' sentence in Pakistan to conclude in early January 2020,

**J.A. 086**

and that "[i]t [wa]s unclear what the Pakistan government will do upon the defendants' release, including whether the Pakistanis will release the defendants directly to the U.S. State Department." *Id*. at 1. The government continued as follows:

> Presumably, when released by the Pakistani authorities, the defendants will be free to choose whether to return to the United States or to remain overseas. We do not expect that the defendants will be released into the custody of the U.S. law enforcement authorities based upon the outstanding warrant for the U.S. indictment. The families of the defendants, on the defendants' behalf, have asked the FBI what criminal justice consequences the defendants might face if they were to return to the United States. The United States believes that it would be helpful to the defendants to have representation during these discussions.

*Id*. at 1–2.  The government went on to request that Judge O'Grady appoint the defendants counsel with national security experience and identified two specific attorneys who met that criteria and were either interested in the case or had already communicated with one of the families. *Id*. at 2–3.  Judge O'Grady granted the motion. [Dkt. No. 19.] On December 17, 2019, Judge O'Grady issued an amended order granting the government's earlier motion to unseal the indictment for the purpose of sharing it with defense counsel. [Dkt. No. 22.]

### f.  Extradition

The defendant was released from Pakistani prison on June 9, 2020. [Olson Decl. ¶ 38.] On June 22, 2020, the Pakistani Ministry of Foreign Affairs sent the U.S. Embassy a diplomatic note requesting extradition documents for Chaudhry and Khan. [Olson Decl. ¶ 36.] The timing of Pakistan's request was consistent with its extradition treaty, which states that, "If the person claimed should be under examination or under punishment in the territories of the High Contracting Party applied to for any other crime or offence, his extradition ***shall be deferred*** until the conclusion of the trial and the full execution of any punishment awarded to him." [Attachment 7 at p. 3 (Pakistani Extradition Treaty, Article 4)] (Emphasis added); Olson Decl. ¶¶ 29–30.] In other words, now that

the defendant had completed his sentence, the government of Pakistan was prepared to return him to the U.S. to face charges.

But Pakistan did not consent to simply deporting the defendant. [Olson Decl. ¶ 37.] Through its request of June 22, 2020, Pakistan sought extradition documents for the defendant and Khan, who held dual Pakistani-U.S. citizenship.  As for the other three defendants, Minni, Zamzam and Yemer, they did not have Pakistani citizenship and Pakistan simply required travel documents and airline tickets to facilitate their deportation. Deportation was, in fact, the method that the U.S. government had asked Pakistan to employ in its formal request to obtain custody of all five defendants in June 2010. [Attachment 5 at p.1; Olson Decl. ¶¶ 24–25.] On August 17, 2020, defense counsel for the defendant confirmed that the defendant would contest extradition from Pakistan. [(Dkt. No. 38 at 10).]

Thereafter, OIA and the U.S. Attorney's Office worked together to prepare an extradition request for Pakistan. [Olson Decl. ¶ 37.] In the interim, the U.S. Embassy in Pakistan sent a diplomatic note to Pakistan requesting additional information concerning the defendants, confirming that extradition requests were being prepared for the defendant and Khan, and requesting confirmation of release dates for the remaining three defendants. [*Id*. at ¶ 38.]

On August 24, 2020, OIA received two sworn copies of the approved extradition requests for the defendant and Khan from the U.S. Attorney's Office. *Id*. at ¶ 40. Due to delays from the COVID-19 pandemic, as well as other factors, OIA sent the certified extradition package to the Department of State on October 27, 2020. *Id*. Five days before that, on October 22, 2020, the government filed a motion for certified copies of the defendants' arrest warrants "to effect the foreign transfer of custody of the defendants to the United States Government and to secure their appearance in this District." [Dkt. No. 47.] Judge O'Grady granted the motion the next day.

**J.A. 088**

On the day OIA sent the certified extradition package to the Department of State (October 27, 2020), Legat advised that the December 2009 order prohibiting the defendants' transfer to any foreign government (*see* Olson Decl. ¶ 21) was still in effect. *Id*. ¶ 40. Legat advised that they were working with the Pakistani Ministry of Interior to petition the local court to lift the order to facilitate the deportation and extradition of the defendants. *Id*.

Around November 9, 2020, the U.S. Department of State sent the extradition requests to the U.S. Embassy in Pakistan. The requests were presented to the Pakistani Ministry of Foreign Affairs around November 12, 2020. *Id*. at ¶ 41.

On March 2, 2021, the Pakistani Ministry of Interior informed the U.S. Charge d'Affaires in Islamabad that one of the extradition requests had been approved by the Pakistani Cabinet and that the other would be considered shortly. *Id*. at ¶ 42. This approval, however, only confirmed that the individual was eligible for extradition and permitted the request to proceed to judicial review. *Id*. Because the defendant had been released from prison in June 2020, he had to be rearrested for the extradition proceedings to begin. *Id*. On May 16, 2021, the Pakistani Federal Secretary of the Ministry of the Interior informed Legat that arrest warrants had issued for the defendant and Khan and that extradition proceedings would begin once they were detained. *Id*. at ¶ 44. The defendant was arrested around August 17, 2022, after which extradition proceeding commenced. *Id*. ¶ 46. Subsequently, Legat regularly updated OIA on the defendant's extradition proceedings, including on court sitting held on November 29, 2022; December 13, 2022; January 12, 2023; March 16, 2023; April 18, 2023; May 24, 2023; and June 13, 2023. [Olson Decl. ¶ 46.] Around July 5, 2023, the defendant finally consented to extradition. *Id*. ¶ 47.

### g. Concurrent Efforts to Obtain Information about the Defendants.

On August 4, 2020, Yemer's attorney filed a Motion for Emergency Relief and for a Hearing. [Dkt. No. 29.] The government responded the next day and indicated that there were still impediments within Pakistan to getting any of the defendants [Dkt. No. 31.] On August 26, 2020, the government then filed an under seal supplemental response to Yemer's emergency petition. [Dkt. No. 38.] The government's response described the long-standing efforts by the U.S. government to obtain custody of the five defendants. [Dkt. No. 38 at 2-5.]  The government also included a classified declaration[5] of FBI Special Agent Christopher T. Rowe which described the FBI's efforts going back to 2016 to either obtain custody of these defendants, or simply to get more information about their status. These documents demonstrate that the U.S. government was energetically seeking custody of the defendants, but that Pakistan was firm in requiring them to serve out their Pakistani sentences.  The Rowe Declaration also indicates that the FBI informed the families of all five defendants between September 9, 2019, and September 11, 2019, that warrants had been issued for their sons' arrests based upon the indictment in EDVA. [Rowe Decl. ¶11].[6]

## II.    The Defendant has not Satisfied the Four-Part *Barker* Test

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy public trial ...." U.S. CONST. amend. VI. The Sixth Amendment right to a speedy trial does not attach until the defendant has been indicted or arrested. *See Doggett v. United States*, 505 U.S. 647, 655 (1992). Based on a plain reading of the Amendment, the Sixth Amendment right to speedy trial "attaches only when a formal criminal charge is instituted

---

[5] The government will refile this declaration with the Court Security Officer as part of this response and incorporates it by reference herein.

[6] While the overall classification of the Rowe Declaration is Secret/Noforn, the paragraphs are all portion marked, and Paragraph 11 is unclassified.

and a criminal prosecution begins." *United States v. MacDonald*, 456 U.S. 1, 6 (1982).

The defendant asserts that his Sixth Amendment rights attached when the government charged him by complaint in 2009. (Def. Mot. 7-8.) So conceived, the defendant permits himself to argue that there has been an 11-year delay in bringing him to trial, notwithstanding the fact that a grand jury only indicted him in 2017. But it is well established that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion*, 404 U.S. 307, 320 (1971). That is why "the Sixth Amendment right to a speedy trial right does not attach until indictment or arrest." *United States v. Uribe-Rios*, 558 F.3d 347, 359 n.8 (4th Cir. 2009) (citing *Jones v. Angelone*, 94 F.3d 900, 906 n.6 (4th Cir. 1996)); *see also Doggett*, 505 U.S. 647 (calculating delay between indictment and arrest). Likewise, an arrest or indictment by one sovereign does not trigger the speedy trial guarantee of the Sixth Amendment with relation to subsequent indictments by another sovereign. *See MacDonald*, 456 U.S. at 10 n.11.

Thus, it is irrelevant that the defendant was arrested on Pakistani charges in 2009, or that there was a U.S. arrest warrant and Red Notice pending. The defendant was not indicted until 2017, and his prior detention flowed from Pakistani charges not the instant charges. *See United States v. Loud Hawk*, 474 U.S. 302, 310 (1986) ("The Court has found that when no indictment is outstanding, only the '*actual* restraints imposed by arrest and holding to answer a criminal charge ... engage the particular protections of the speedy trial provision of the Sixth Amendment.'" (quoting *Marion*, 404 U.S. at 320).[7] In fact, the defendant's Sixth Amendment right

---

[7] The defendant understandably relies on *United States v. Thomas*, 55 F.3d 144 (4th Cir. 1995) and *United States v. Woolfolk*, 399 F.3d 590 (4th Cir. 2005). But these cases are in deep tension with Supreme Court precedent, as even *Thomas* recognized, *see* 55 F.3d at 149 n.4, as well as other

attached when he was indicted in 2017. But even assuming the defendant's Sixth Amendment right attached in 2009, it would not aid his cause. If the defendant's Sixth Amendment right attached in 2009, then he only first asserted that right in 2024. This fact, as explained below, weighs heavily against the defendant. Moreover, irrespective of whether the defendant's Sixth Amendment speedy trial clock began in 2009 or 2017, he cannot satisfy the test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972).[8]

In assessing a Sixth Amendment speedy trial claim, the defendant must demonstrate that the following four factors weigh in his favor: (1) the length of the delay; (2) the government's justification for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Id.*

### A.  The Length of the Delay

"The length of the delay is both the [*Barker*] balancing test's first factor and a threshold requirement because the defendant must establish that the length of the delay is at least presumptively prejudicial to trigger the balancing inquiry." *United States v. Villa*, 70 F.4th 704, 713 (4th Cir. 2023) (internal quotation marks and citation omitted). Here, the length of the delay is enough to trigger further inquiry under *Barker*. But even though the defendant "has satisfied the threshold requirement, that fact by no means ends [the] *Barker* inquiry." *Woolfolk*, 399 F.3d at 598. This is

---

Fourth Circuit cases. Nevertheless, the Court need not resolve this tension as the defendant's challenge fails under *Barker* irrespective of when his Sixth Amendment right attached.

[8] While the defendant complains about the length of time between complaint and indictment, he does not actually assert a claim of pre-indictment delay. Such a claim would be governed by Due Process principles, *see United States v. Lovasco*, 431 U.S. 783 S. Ct. 2044 (1977), which the defendant has not invoked here. Moreover, the grand jury returned an indictment within the applicable statute of limitations, "[t]here is thus no need to press the Sixth Amendment into service to guard against the mere possibility that pre-accusation delays will prejudice the defense in a criminal case since statutes of limitation already perform that function." *Marion*, 404 U.S. at 323. Instead, the defendant's repeated citations to the Sixth Amendment and reliance on *Barker* make clear that he is challenging the length of time between accusation and trial.

because "[a] criminal defendant cannot win a Sixth Amendment challenge by pointing to a calendar and counting off the days. He instead must show that, by balancing the four factors the Supreme Court has instructed us to consider in speedy-trial cases, he should receive relief." *Martinez v. United States*, 828 F.3d 451, 458 (6th Cir. 2016). The Supreme Court has repeatedly explained that "presumptive prejudice [from a lengthy delay] cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Doggett*, 505 U.S. 655-66; *see also id*. at 652 n.1 ("'[P]resumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the [four-factor] enquiry."). Because the remaining *Barker* factors weigh in the government's favor, the length of the delay is insufficient to merit dismissal. *See United States v. Hills*, 618 F.3d 619, 632 (7th Cir. 2010) ("[A]s long as the government shows reasonable diligence in prosecuting its case, a defendant who cannot demonstrate prejudice with specificity will not show a Sixth Amendment violation, no matter how long the delay.").

### B.  The Government's Justification for the Delay

#### 1.  Delay caused by the defendant's conviction in Pakistan.

Quoting *Smith v. Hooey*, 393 U.S. 374, 383 (1969), the defendant asserts that "[w]hen a defendant is incarcerated in another jurisdiction, the charging jurisdiction has a 'constitutional duty to make a diligent, good-faith effort to bring [the defendant] before the [charging] court for trial.'" (Def. Mot. 8.) But what the Supreme Court actually said is that, "*Upon the petitioner's demand*, [the charging jurisdiction] had a constitutional duty to make a diligent, good-faith effort to bring [the defendant] before the [charging] court for trial." *Smith*, 393 U.S. at 383 (emphasis added). This makes sense given that the defendant in *Smith* requested a speedy trial shortly after learning of the charges against him, despite being incarcerated in another jurisdiction, and spent

14

**J.A. 093**

the next six years repeating that demand. *Id*. at 375. In turn, the charging jurisdiction in *Smith* made no effort to secure the defendant's presence and conceded that it could have secured his presence had it made such an effort. *Id*. 380–381. Unlike this case, the defendant never demanded a speedy trial while incarcerated in Pakistan—or even after release—and the government *did* repeatedly seek to obtain his custody from Pakistani authorities.

By contrast, the Fourth Circuit has repeatedly held that "waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay." *United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998). And "[v]alid reasons for delaying a trial are weighed in favor of the [g]overnment." *Id*. The Fourth Circuit has characterized "[t]he need to allow [a defendant] to be prosecuted by the State without interference by the federal government" as "an obvious additional reason for [] delay[.]" *Thomas*, 55 F.3d at 150. Applying *Thomas*, the Fourth Circuit recently confirmed that, "[b]ecause the government was awaiting Georgia's prosecution of [the defendant], the reason for delay weighs in its favor." *United States v. Robinson*, 55 F.4th 390, 400 (4th Cir. 2022). The Fourth Circuit went on to hold that "[i]t's immaterial whether, as [the defendant] argues, the government 'had the ability to secure [a codefendant's] appearance and set a trial date' because the "need to allow [a defendant] to be prosecuted by the State without interference by the federal government is an obvious reason to delay federal proceedings." *Id*. (quoting *Thomas*, 55 F.3d at 150) (internal citation omitted).

The Fourth Circuit's entrenched view that allowing other domestic jurisdictions to complete their prosecutions counts as a "valid" reason under *Barker*, coupled with the defendant's years-long failure to request a speedy trial, calls into question the defendant's theory that the government was obligated to diligently pursue him in a foreign jurisdiction while he was incarcerated, aware of the U.S. charges, but made no effort to request a speedy trial. *Cf. United States*

*v. Hooker*, 607 F.2d 286, 286–289 (9th Cir. 1979) (questioning *Smith*'s applicability to defendants in foreign prisons); *see also In re Kashamu*, 769 F.3d 490, 494 (7th Cir. 2014) ("[W]e're not at all sure that the government ever must try to extradite a fugitive so as to protect his right to a speedy trial.").

In any event, the defendant's argument (Def. Mot. 8-9) that the government failed to act with reasonable diligence to obtain his custody from Pakistan fails. In support of this argument, the defendant appears to claim that the only hallmark of government diligence is a formal extradition request. At the same time, the defendant recognizes that the government is not required to undertake futile steps to satisfy its Sixth Amendment obligations. (Def. Mot. 9.) As explained below, the government repeatedly attempted to secure custody of the defendant from Pakistan. Beyond that, other steps would have been futile and need not have been taken.

Courts have held that the government must make a diligent, good faith effort to obtain custody of a defendant when he is being held in a foreign country. But "there is no case law to support [the] argument[] … that absent a formal request for extradition from one government to another, there has been no diligent good faith effort." *United States v. Walton*, 814 F.2d 376, 379 (7th Cir. 1987); *United States v. Diacolios*, 837 F.2d 79, 83 (2d Cir. 1988) ("[W]e are aware of no case that holds that a formal request for extradition must be made before due diligence can be found to have existed."). Thus, courts have held that "[w]hile a formal extradition request is not required, some effort on the part of the Government is necessary to satisfy the due diligence requirement." *United States v. Marquez-Charry*, 1997 WL 208403, at *2 (N.D. Ill. Apr. 22, 1997); *United States v. Demirtas*, 204 F. Supp. 3d 158, 180 (D.D.C. 2016) ("The Court, accordingly, finds that the government held a good-faith belief that a formal extradition request to the Netherlands would be denied."). And "the government usually satisfies its diligence obligation if

16

it shows that it attempted extradition informally." *United States v. Fernandes*, 618 F. Supp. 2d 62, 69 (D.D.C. 2009); *see also United States v. Valencia-Quintana*, 136 F. App'x 707, 709 (5th Cir. 2005) (holding that "[a]lthough the government did not formally request extradition," the government satisfied its diligence obligation by "procur[ing] an agreement from Dominican officials to notify the [government] prior to [defendant's] release" from a Dominican jail).

Here, the government promptly sought custody of the defendant upon his arrest in Pakistan. However, Pakistan is a foreign sovereign and chose to prosecute all five defendants under its own laws. Despite substantial effort on the part of the U.S. government, Pakistan only agreed to release the defendants after they completed their prison sentences, which is consistent with the way that Pakistan treats defendants charged with crimes in that country.

Pakistani authorities arrested the defendant around December 9, 2009. The FBI immediately sent a team of agents to attempt to interview them. From that moment, the government pursued custody of the defendant. From December 10, 2009, through December 19, 2009, the FBI conducted a total of nine interviews of the defendants. On approximately December 15, 2009, the ALAT met with his counterpart in the Pakistani Ministry of the Interior and communicated the FBI's desire to see the defendants promptly returned to the U.S. for prosecution. Specifically, the ALAT asked if the Pakistani government would be "willing to deport the five directly to a USG operated plane in Pakistan for immediate repatriation to the United States." [Attachment 1 at 2.]

On December 23, 2009, the United States Attorney's Office filed a criminal complaint. [Dkt. No. 1.] The following day, the government filed a motion and proposed order seeking a limited unsealing order so that "summary information as to the defendants' offense conduct could be taken from the complaint and supporting affidavit and provided to INTERPOL, as required for

issuance of a Red Notice/Wanted Person Diffusion Alerts with respect to the warrants issued by the Court for the defendants' arrest" [Dkt. Nos. 6, 7.]

Also on December 24, 2009, the Legal Attaché provided the Ministry of the Interior in Pakistan copies of the arrest warrants for the five defendants. The Legal Attaché also advised the Ministry of the Interior that "[t]he US Government seeks custody of these individuals so that they may stand trial in the US for the charge above and any additional charges that may be added to the complaint. The Legat office is prepared to facilitate the transfer of the five via air transport from Pakistan to the US within a timeframe of 72 hours." [Attachment 2 at 2]. That same day, Pakistan informed the Legat "that there was a court order from the local court which ordered the Sargodha Fives' detention, prohibiting their transfer to any foreign government." [Olson Decl. ¶ 21.]

In January 2010, the U.S. Government formally requested custody of the defendants from Pakistan. This request issued in the form of a diplomatic note presented to the Ministry of Foreign Affairs in Islamabad, Pakistan on January 8, 2010. *Id*. at 24. This diplomatic note requested the transfer by "deportation, expulsion, or other lawful means," of the five defendants named in the compliant. *Id*. at ¶ 24. Because all five defendants were U.S. citizens, the government did not seek extradition. *Id*. at ¶¶ 13, 24. Instead, it sought Pakistan's consent to return them to the U.S. *Id*. The diplomatic note acknowledged that Pakistan had initiated its own criminal proceedings, but nonetheless made the following request: "[the] United States respectfully requests that the Government of Pakistan consider suspending or otherwise deferring its criminal proceedings against the defendants and deporting or expelling them as soon as possible to the United States." *Id*. at ¶ 25. The diplomatic note also argued that because most of the criminal conduct had occurred in the U.S., it would be more appropriate for the defendants to be tried in the U.S. *Id*. The government has no record of a response from Pakistan to this request. Notably, however, in early June 2010,

the U.S. Ambassador to Pakistan met with the Pakistani Minister of Interior to reiterate the U.S.'s position that the defendants be returned to the U.S. [Olson Decl. ¶ 27.]

Pakistan, however, pursued its own criminal prosecution. Within seven months of the defendants' arrest, all five defendants were found guilty of various charges and sentenced to 10 years imprisonment. On June 23, 2010, the day before the Pakistani court issued its Judgment, the Legal Attaché in Islamabad sent a letter to the Pakistani Ministry of Interior about the defendants, reiterating that "the US Government has a strong interest in seeing their custody transferred to the United States at the earliest opportunity." [Attachment 8 at 1].  The letter went on to state that the defendants could be held in custody "until a US Government aircraft could arrive to transport those who are deported out of Pakistan." *Id*.

On March 4, 2013, while the defendants were serving their sentences, the Legal Attaché in Pakistan sent a letter to the Director General of the Federal Investigative Agency in Pakistan regarding these defendants. The letter stressed that the U.S. government was "interested in discussing a number of pending requests for extradition in Pakistan to the United States, such as [the five named defendants in this case]." [Attachment 6 at 1.]

The government's repeated requests to Pakistan to turn over the defendant clearly demonstrate due diligence, even in the absence of a *formal* extradition request prior to 2020. The government repeatedly voiced its commitment to securing custody of the defendant. The government did so before the defendant was charged in Pakistan, during his trial, and even during his period of incarceration, in 2013. The government submitted a formal request for custody through a diplomatic note in January 2010 and the U.S. Ambassador herself later broached the subject with her Pakistani counterpart by reiterating the U.S.'s position that the defendants be returned to the U.S. [Olson Decl. ¶ 27.] Not only did the U.S. government not receive any response from Pakistan to

J.A. 098

its January 2010 request for transfer by "deportation, expulsion, or other lawful means," of the defendants (Olson Decl. at ¶¶ 23–24), but there was a Pakistani court order barring the defendant's transfer to any foreign country since at least December 2009. [Olson Decl. ¶ 21.] In fact, that order remained in effect until at least October 27, 2020. [Olson Decl. ¶ 40.]

The government also affirmed its commitment to securing the defendant by securing a Red Notice and providing it to Pakistan on December 24, 2009, explaining that "[t]he US Government seeks custody of these individuals so that they may stand trial in the US for the charge above and any additional charges that may be added to the complaint.  The Legat office is prepared to facilitate the transfer of the five via air transport from Pakistan to the US within a timeframe of 72 hours." [Attachment 2 at 2]. Moreover, while the defendant was serving his sentence, "Legat routinely inquired with the Pakistan government as to the completion of their sentences." [Olson Decl. ¶ 31.] Toward the end of that sentence, in November 2019, a Department of Justice representative personally travelled to Pakistan to discuss this and other cases with Pakistani counterparts. [Olson Decl. ¶ 32.] Soon after, Olson requested that the Department of State and U.S. Embassy in Islamabad "send a cable to the Pakistan Ministry of Foreign Affairs, noting that it was our understanding that the sentences of the [defendants] were due to expire imminently, and asking for confirmation of that fact so that the U.S. could proceed with extradition or deportation." *Id*. at ¶ 34.

After Pakistan convicted the defendant, secured a 10-year sentence, and failed to grant the U.S. government's numerous transfer requests—including the January 2010 formal diplomatic request—the U.S. government was not required to continually press for the defendant's release. But the government *did* continue pressing Pakistan, including on March 4, 2013, when the Legal Attaché in Pakistan sent a letter to the Director General of the Federal Investigative

20

**J.A. 099**

Agency in Pakistan stressing the government's interest in discussing, among other pending requests, the case of the five defendants [Attachment 6 at 1]. The defendant cites no authority for the proposition that, after clearly demonstrating its commitment to securing custody of a defendant convicted in another country, the U.S. government is required to continually badger that other country through repeated requests to obtain such custody. Such an approach would undermine the principle that "political actors … are best equipped to make the sensitive foreign policy judgments an extradition request demands." *Martinez*, 828 F.3d at 464 (internal quotation marks omitted). Moreover, such an approach runs counter to the treaty governing the defendant's extradition.

Numerous courts, as well as the defendant, recognize that "[t]he government is not duty-bound to pursue futile legal gestures to return the defendant for trial." *United States v. Mitchell*, 957 F.2d 465, 469 (7th Cir. 1992); *Diacolios*, 837 F.2d at 83 ("Due diligence surely does not require the government to pursue that which is futile."); *United States v. Bagga*, 782 F.2d 1541 (11th Cir. 1986) (same). As relevant here, "where our government has a good faith belief supported by substantial evidence that seeking extradition from a foreign country would be futile, due diligence does not require our government to do so." *United States v. Corona-Verbera*, 509 F.3d 1105, 1114 (9th Cir. 2007). Here, the government repeatedly communicated its commitment to securing the defendant's custody from Pakistan. But Pakistan, as is its sovereign right, opted to pursue its own charges. Even so, the government continued to press for release, both during the defendant's trial and during his incarceration.

Article 4 of the United States's extradition treaty with Pakistan provides as follows: "If the person claimed should be under examination or under punishment in the territories of the High Contracting Party applied to for any other crime or offence, his extradition shall be deferred

21

**J.A. 100**

until the conclusion of the trial and the full execution of any punishment awarded to him." [Attachment 4 at 3]. The "Treaty is clear that the nation which holds the fugitive has the right to complete any proceedings against him before instituting extradition proceedings[.]" [Olson Decl. ¶ 29.] As Jeffery Olson explains, because Article 4 "required that the 'full execution of any punishment' be completed in Pakistan, and there being no prisoner transfer treaty in place between the United States and Pakistan, the United States was obliged to wait until the defendants had completed the sentences they were given." *Id.* ¶ 30; *see United States v. Carbarcas-A*, 968 F.2d 1212, 1992 WL 158086, at *2 (4th Cir. 1992) (unpublished) (crediting testimony from OIA regarding Columbian extradition practice). This practice is confirmed not only by Olson's experience and the treaty itself, but by Pakistan's prompt request for extradition after the defendant's release from custody in June 2022. *Id.* ¶ 36.

Because the government reasonably believed Pakistan would not release the defendant until the conclusion of his sentence, it was not required to file a premature extradition request. *See United States v. Cabral*, 979 F.3d 150, 158–59 (2d Cir. 2020); *United States v. Wangrow*, 924 F.2d 1434, 1437 (8th Cir. 1991); *Blanco*, 861 F.2d at 778; *Corona-Verbera*, 509 F.3d at 1112; *Walton*, 814 F.2d at 379-80; *Bagga*, 782 F.2d at 1543. This point is reinforced not just by the sequence of events in this case, the fact that the defendant was incarcerated on foreign charges and serving a decade-long sentence, the independent court order barring his transfer to foreign custody, and the governing treaty required deferral until the completion of his sentence, but also by the fact that during the period of his arrest and incarceration in Pakistan, Pakistan successfully extradited only one person to the U.S., despite multiple other requests. [Olson Decl. ¶ 16.] Given the availability of deportation as a route to secure the defendant's custody from Pakistan—a route "typically faster than extradition proceedings" (*id.* ¶ 13)—the U.S. government was not obligated

to prematurely pursue a course of action doomed to fail.

### 2.   Delay Caused by the Extradition Process in Pakistan.

The defendant does not challenge any period of delay postdating the submission of the U.S. government's extradition request. (Def. Mot. 7, 9 (referencing delay between complaint and submission of extradition request).) Nevertheless, for the sake of completeness, the government addresses this period because a separate inquiry is required to evaluate the period between the conclusion of defendant's sentence in June 2020 and his arrival in this Court in December 2023.

The Olson Declaration describes the sequence of events leading up to the defendant's release from prison in Pakistan and the preparation of a formal extradition request by the U.S. [Olson Decl. ¶¶ 32–41.] The U.S. submitted a formal extradition request in November 2020. *Id.* at ¶ 41. Pakistan approved the request in March 2021. *Id.* at ¶ 42. But this approval only triggered the defendant's eligibility for extradition and allowed the case to proceed to judicial review. *Id.* In turn, Pakistan only rearrested the defendant in August 2022. *Id.* at ¶ 46.

This period of about one year and nine months—from November 2020 to August 2022—should be discounted from the *Barker* analysis. "[F]oreign countries extraditing defendants to this country are entitled to follow the extradition procedures established by their laws, and the United States is not responsible in a Sixth Amendment sense when those laws and procedures create delays, however long." *United States v. Reumayr*, 530 F. Supp. 2d 1200, 1206 (D.N.M. 2007); *United States v. Pujols-Guerrero*, 2023 WL 8627668, at *4 (D. Mass. Dec. 13, 2023) ("The Court agrees that the delay from the time the Dominican Republic received the extradition package until Pujols-Guerrero's was extradited to the United States, are the reasonable result of the extradition process, and thus not attributable to the government."); *United States v. Miranda*, 2023 WL 8285225, at *3 (W.D. Tex. Nov. 30, 2023) (same). If not discounted entirely, then the

period between June 2020, when the defendant was released, and August 2022, when he was rearrested, weighs against the defendant. At that point, the defendant was not incarcerated and had been appointed counsel since December 10, 2019. [Dkt. No. 19.] The defendant was aware of the charges and could easily have communicated an interest in returning to the U.S. for the speedy trial he now claims to have wanted. *See Mitchell*, 957 F.2d at 469.

The next period begins once the defendant began contesting his extradition to the U.S. upon his rearrest in August 2022. This delay is solely attributable to the defendant because he contested extradition. The defendant complains that the government did not do more to secure his presence in the U.S. while he was incarcerated in Pakistan. But when the government *did* file a formal extradition request to Pakistan in November 2020, the defendant spent almost a year fighting it until finally relenting in July 2023. [Olson Decl. ¶ 47.] The defendant cannot "avoid a speedy trial by forcing the government to run the gauntlet of obtaining formal extradition and then complain about the delay that he has caused by refusing to return voluntarily to the United States." *United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995). Consistent with *Manning*, courts have held that delay occasioned by a defendant fighting extradition weighs in the government's favor under *Barker*. *See In re Bramson*, 107 F.3d 865, 1997 WL 65499, at *1 (4th Cir. 1997) (unpublished) ("He admits that he is not being held in Liechtenstein for any violation of the laws of that principality, but rather pursuant to that country's extradition treaty with the United States for violations of this country's laws. He therefore can presumably return to this country and stand trial of his own volition at any time. Because Bramson is responsible for the delay of his trial, his Constitutional right to a speedy trial has not been violated."); *see also United States v. Knowles*, 390 F. App'x 915, 929 (11th Cir. 2010); *In re Kashamu*, 769 F.3d at 493 ("he deliberately forewent the opportunity for a speedy trial."); *Demirtas*, 204 F. Supp. 3d at 192 ("the

delay occasioned by Demirtas's 2015 challenge to his extradition from Germany should simply be 'excluded from [the] calculation' of overall delay"); *United States v. Cavan*, 2016 WL 4098582, at *5 (S.D.N.Y. July 28, 2016) ("Rather than consenting to his extradition, Cavan contested his extradition for more than two years. Where, as here, it is manifestly apparent that a defendant has no serious interest in the speedy prosecution of the charges against him, a court need not ignore the defendant's fugitivity or recalcitrance in determining whether his sixth amendment rights have been violated.") (internal quotations and citation omitted); *Reumayr*, 530 F. Supp. 2d at 1206 ("Courts have recognized that a defendant resisting extradition, or otherwise avoiding attempts to bring him to this country, is attempting to avoid going to trial at all in the United States. This is the opposite of insisting on a speedy trial."). Because the defendant "made no attempt to demand a trial, to waive extradition, or to otherwise seek to return to the United States for trial," *Mitchell*, 957 F.2d at 469, the reason for the delay weighs against him.

### C.  The Defendant's Assertion of the Right

The third *Barker* factor weighs against the defendant. As discussed above, the defendant made no effort to assert his speedy trial right because he did not want a speedy trial.  Instead, he chose to contest his extradition proceedings in Pakistan. Pakistan rearrested the defendant on the extradition request around August 17, 2022. [Olson Decl. ¶ 45.] After that, the defendant contested his extradition until he finally consented around July 5, 2023. *Id*. ¶¶ 46–47.

Moreover, the defendant only asserted his speedy trial right in January 2024, through his motion to dismiss. Despite being represented by counsel since at least December 2019, the defendant only recently asserted his interest in a speedy trial in January 2024. In fact, at his arraignment in December 2023, the defendant, who was out on bond, did not object to having the case certified as complex, and knowingly and voluntarily waived the right to a speedy trial.

Notably, if, as the defendant claims, his Sixth Amendment right attached in 2009, then his failure to assert his purported right until 2024 is significant. If the defendant's right attached in 2017, then he waited seven years to assert that right. And of course, the defendant fought his extradition to the U.S. once released from Pakistani custody. "How then can he argue with a straight face that the failure of the United States to extradite him entitles him to dismissal of the charges?" *In re Kashamu*, 769 F.3d at 494; *see also United States v. Tranakos*, 911 F.2d 1422, 1429 (10th Cir. 1990) ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire."). However calculated, the defendant's assertion of his speedy trial right is tardy. Moreover, his recent assertion of the right is undermined by his efforts to avoid returning to the U.S. to face the instant charges. This factor therefore weighs against the defendant under *Barker*. *See Robinson*, 55 F.4th at 400; *Grimmond*, 137 F.3d at 829; *United States v. Quinteros*, 769 F.2d 968, 974 (4th Cir. 1985).

### D. Prejudice to the Defendant

The final *Barker* factor also weighs against the defendant. The defendant's motion barely addresses prejudice. Where it does, it speaks only in the vaguest of terms. (Def. Mot. 10–12.) Prejudice "should be assessed in the light of the interests the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. These include: (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Smith*, 393 U.S. at 378. However, "[p]roof of prejudice must be definite and not speculative." *Manning*, 56 F.3d at 1194. This test is applied "stringently." *Id*.

The first two listed harms, preventing oppressive pretrial incarceration and minimizing the anxiety and concern of the accused, were entirely out of the U.S. government's control until approximately December 6, 2023, when the defendant was transferred to FBI custody after his

**J.A. 105**

challenges to the extradition had concluded. *See United States v. Hall*, 551 F.3d 257, 272–73 (4th Cir. 2009) ("The Defendants contend that, when awaiting trial, they were subjected to an oppressive four-year pretrial incarceration, plus eighteen months of pretrial house arrest during the Maryland proceedings. Of significance, their incarceration occurred during the time of their prosecution in the District of Columbia."). During his incarceration in Pakistan, the U.S. government asked for the defendant to be deported through a formal diplomatic note, filed a Red Notice seeking his custody, and maintained regular contacts with the defendant through consular visits. Yet Pakistan held all five defendants until their sentences were completed in full. Nonetheless, as soon as the defendant arrived in the U.S., the government did not oppose his pretrial release, so there can be no argument that the government contributed to any sort of oppressive pretrial incarceration, or that it contributed to the anxiety and concern of the accused.

The defendant also rues the purportedly lost opportunity to serve a concurrent sentence. (Def. Mot. 10.) But this claim is too speculative to succeed. *See United States v. Lozano*, 962 F.3d 773, 781 (4th Cir. 2020) (rejecting similar argument); *Uribe-Rios*, 558 F.3d at 358. The defendant fails to support the proposition that he could have served a concurrent sentence in the U.S. on Pakistani charges or explain how, or on what authority, such a sentence would have been structured. Furthermore, the Pakistani authorities' insistence on prosecuting the defendant and ensuring the completion of his sentence belies the notion that such a result could have occurred. Moreover, the government did not pursue jail time against any of the other defendants in this case. If, as appears likely, the defendant would be subject to that same sentence, he will not have missed out on any opportunity by being able to run his ten-year sentence in Pakistan concurrently with a potential no-jail sentence in this Court. The defendant also quotes *Smith* for the proposition that "the conditions under which he must serve his sentence [may be] greatly

worsened, by the pendency of another criminal charge outstanding against him." (Def. Mot. 11 (quoting *Smith*, 393 U.S. at 374).) But the defendant fails to explain how the pending U.S. charges adversely affected his prison experience in Pakistan. To the contrary, the U.S. charges triggered numerous visits by U.S. consular officials and likely ensured that he was treated better than other inmates. Nor does the defendant explain how his Pakistani sentence will adversely affect any U.S. sentence. At bottom, none of the defendant's vague assertions implicate the first two listed harms under *Barker*'s fourth prong.

That leaves the final interest identified in *Barker*. Of the three defense interests identified in *Barker*, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. Here, the defendant makes only the most general assertion of prejudice flowing from purported memory loss. (Def. Mot. 11.) But the defendant fails to identify a single individual whose memory might have been affected by the passage of time. This is plainly insufficient to satisfy his burden under *Barker*. *See Hall*, 551 F.3d 257, 272–73 (rejecting prejudice argument where "Defendants are unable to point to any evidence that their defense was impaired by the delay. Indeed, they have not identified any witnesses that were unavailable as a result of the delay; they have not shown that any witness was unable to accurately recall the relevant events; they do not contend that exculpatory evidence was lost; nor have they identified any evidence that was rendered unavailable by the delay."); *United States v. Hopkins*, 310 F.3d 145, 150 (4th Cir. 2002); (same); *Grimmond*, 137 F.3d at 830. Moreover, not only is "such a generalized claim of memory problems [] not sufficient for a defendant to show the required specific prejudice to his defense, *Cabral*, 979 F.3d at 165 (cleaned up), but "delay is a two-edged sword. It is the government that bears the burden of

proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the government to carry this burden[.]" *Loud Hawk*, 474 U.S. at 315.

Additionally, the defendant's theory of memory loss is inconsistent with the facts of this case and the government's anticipated evidence. As noted above, the defendants were so secretive in planning these crimes that they made it certain that there would be few, if any, witnesses. The defendant cannot point to any evidence that has been lost or is unavailable given the passage of time. The defense has been provided with thousands of pages of discovery in this case, which includes the defendants' on-line communications, their travel plans, efforts to obtain money for these trips, and voluminous search warrant returns. This material also includes an FBI-302 detailing the defendant's admission that the Final Message recorded by Minni and Zamzam "speaks for us" and "whatever the video says, I am for that." In short, there is a wealth of inculpatory evidence, and defendant fails to point to any exculpatory evidence that has been lost due to the passage of time.

Again, this is not surprising given the level of secrecy that went into these offenses. Simply put, there is no one who could assist in his defense, because the defendants were so successful in keeping their plans secret from any potential witnesses. The only people with inside knowledge of this conspiracy were the five defendants. Two of those defendants, Minni and Zamzam, have now pleaded guilty to providing material support to a foreign terrorist organization. They have signed robust statements of fact admitting to their own conduct, as well as the conduct of the defendant. To the extent they would have any testimony to offer in this case, it would be helpful to the government, not to the defendant.

Because the defendant's attempt to show prejudice is vague, conclusory, and entirely speculative, the final *Barker* factor weighs against him. Moreover, as the Fourth Circuit recently

held, the defendant's inability to show prejudice undercuts the significance of the other interests he asserts under *Barker*'s fourth prong. *See United States v. Pair*, 84 F.4th 577, 590–591 (4th Cir. 2023); *see also Barker*, 407 U.S. at 534 (finding "absence of serious prejudice" although defendant was incarcerated for ten months before trial and was forced to "liv[e] for over four years under a cloud of suspicion and anxiety" because "there [was] no claim that any of Barker's witnesses died or otherwise became unavailable owing to the delay.").

## Conclusion

"To prevail on a speedy trial claim, a defendant must establish that on balance, [the] four separate factors weigh in his favor." *Id.* at 589. Because the second, third, and fourth *Barker* factors weigh against the defendant, he cannot satisfy his burden of showing a Sixth Amendment speedy trial violation. The Court should therefore deny the defendant's motion to dismiss.[9]

---

[9] With little explanation, the defendant also invokes Rule 48(b) of the Federal Rules of Criminal Procedure. (Def. Mot, 6.) But "Rule 48(b) is 'limited to *post-arrest* situations,'" *United States v. Ball*, 18 F.4th 445, 453 (4th Cir. 2021) (quoting *Marion*, 404 U.S. at 319), and is therefore inapplicable here.

Respectfully submitted,

Jessica D. Aber
United States Attorney


By: _____/s/_____
John T. Gibbs
Assistant United States Attorney
United States Attorney's Office for the
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
703-299-3700


By: _____/s/_____
Joseph Attias
Assistant United States Attorney
Eastern District of Virginia
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Joseph.Attias2@usdoj.gov
804-819-5400

**J.A. 110**

**Certificate of Service**

I hereby certify that on January 12, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record. I hereby certify that on January 12, 2024, I sent a copy of the foregoing to counsel for defendant Chaudhry by electronic mail.

Respectfully submitted,

By: _____/s/_____
John T. Gibbs
Assistant United States Attorney
United States Attorney's Office for the
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
703-299-3700

**J.A. 111**

# Attachment 1



**Drafted By:**   Steps Aaron A

**Synopsis:** ▆▆    Documents the results of a meeting with ▆▆▆▆
▆▆▆▆▆▆ Ministry of Interior, Government of Pakistan
pertaining to Ramy Zamzam, Aman Yemer, Umar Chaudhry, Ahmed
Minni, and Waquar Khan.

**J.A.** ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

**Details:** █████    On 12/15/2009, ALAT Aaron Steps met with ████████
██████████ Director General (DG), National Crisis Management
Center, Ministry of Interior, Government of Pakistan
pertaining to United States citizens Ramy Zamzam, Aman Yemer,
Umar Chaudhry, Ahmed Minni, and Waquar Khan, and the FBI's
desire to return them to the United States.

████    ALAT Steps advised DG ██████ that the FBI and
the United States Department of Justice (DoJ) were preparing
charges against Zamzam, Yemer, Chaudhry, Minni, and Khan and
that the FBI would be seeking their return to the United
States to face these charges.  ALAT Steps requested DG ████████
advice on how the USG could proceed in this matter to ensure a
smooth and quick transfer of the five into United States
custody.

████    DG ██████ advised that because the five had
received a consular visit, their detention was now "formal"
and "on the books", which meant that the Government of
Pakistan (GoP) will want the USG to follow the formal
extradition process.  DG ██████ also advised that a joint
investigation involving multiple intelligence and law
enforcement agencies had been ordered into the five and their
activities, and specifically in an effort to identify any
larger network to which they may have been a part.

████    When asked whether, because the five were United
States citizens, the GoP would be willing to deport the five
directly to a USG operated plane in Pakistan for immediate
repatriation to the United States, DG ██████ advised that this
was possible but harder now that the intelligence agencies
were involved.  DG ██████ further advised that it may take a
bit of time to arrange for their extradition/deportation/
repatriation, and as such the USG should initiate a formal
request soon.  DG ██████ also advised that while the decision
to deport/repatriate the five currently resides with the
district police, it has become a political decision.

████    DG ██████ advised that if the USG wished to
smooth the process of transferring the five into US custody,
Ambassador ████████ should discuss this matter directly with
Minister of the Interior ████████████ and immediately

███████

2



following this discussion, the USG should issue its formal request.

DG ▮▮▮ strongly implied that since this matter was already receiving a lot of press attention, that the decisions the GoP makes could be positively influenced by a press statement praising Pakistani law enforcement, their response to this issue, and their assistance. DG ▮▮▮ also implied that a "sweetener" such as an offer to allow Pakistani investigators access to evidence or witnesses in the United States would be helpful in swaying the political decision makers, and that any request for extradition, deportation, or repatriation should be made quietly. DG ▮▮▮ emphasized that any approach regarding this matter should highlight the cooperation between US and Pakistani law enforcement and the resulting successful disruption of this group's activities.

DG ▮▮▮ advised multiple times during this conversation that the memos passed by the FBI and the resulting investigation on the part of Pakistani law enforcement are a good example of US/Pakistani cooperation.

As an aside DG ▮▮▮ advised that he was currently only aware that the five were in custody in Lahore, and he expected updates only upon significant developments in the case. DG ▮▮▮ also requested a summary of the information the FBI has developed in this case. (**Comment:** ALAT Steps received a similar request on 12/12/2009 from the Federal Investigation Agency. Given that the FBI previously passed information to the five subjects' activities in the United States prior to their departure, and local and provincial Pakistani police have been present for or conducted all investigative activity, interviews, etc. in Pakistan and are therefore privy to all information developed since the group's departure from the United States, Islamabad assesses that these repeated requests indicate an internal breakdown in communications amongst the various Pakistani law enforcement agencies).

3



4



J.A.

# Attachment 2

24 December 2009

Mr ███████████

Secretary

Ministry of Interior

Government of Pakistan

Islamabad, Pakistan

Re: The Five American Citizens Captured in Sargodha -- Transfer of Custody

Dear Sir:

The Legal Attache (Legat) office provides the Ministry of Interior with copies of five

arrest warrants issued by a US Court in the names of the following US citizens:

Ahmed Ameer Minni

Aman Hassan Yemer

Ramy Said Zamzam

Umar Farooq Chaudhry

Waqar Hussein Khan

On 23 December 2009, the five were charged in the US District Court of the Eastern

District of Virginia with one count each of Conspiracy to Provide Material Support to Terrorists

in violation of Title 18 US Code Section 2339A.

J.A. 119

The Legat office is aware these five are currently in the legal custody of the Government

of Pakistan pending an investigation. We request information regarding the status of the

investigation and the intended disposition of the five.


The US Government seeks custody of these individuals so that they may stand trial in the

US for the charge above and any additional charges that may be added to the complaint. The

Legat office is prepared to facilitate the transfer of the five via air transport from Pakistan to the

US within a timeframe of 72 hours of notification.


The Legat office is prepared to discuss the transfer of these five with appropriate officials

of the Government of Pakistan as identified by the Ministry of Interior.


Sincerely yours,




Susan M. Mitchell

Legal Attache

**J.A. 120**

**J.A. 121**

# Attachment 3



**U.S. Department of Justice**

INTERPOL – U.S. National Central Bureau

*Office of the General Counsel*

*Washington D.C. 20530*

30 December 2009

**<u>By Mail</u>**
Neil Hammerstrom
Assistant U.S. Attorney
U.S. Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314

Dear Mr. Hammerstrom:

Re:        Red Notice application for CHAUDHRY, f/n Umar Farooq
           USNCB Case No.: 20091229118
         Red Notice application for KHAN, f/n Waqar Hussain
           USNCB Case No.: 20091229121
         Red Notice application for MINNI, f/n Ahmed Ameer
           USNCB Case No.: 20091229122
         Red Notice application for YEMER, f/n Aman Hassan
           USNCB Case No.: 20091229120
         Red Notice application for ZAMZAM, f/n Ramy Said
           USNCB Case No.: 20091229119

Enclosed are copies of the Interpol Red Notice Applications approved for the fugitives identified above.

The INTERPOL - U.S. National Central Bureau ("USNCB") is forwarding the Applications to INTERPOL's Secretariat General in Lyon, France, for translation and distribution to all of the other 187 INTERPOL member countries.

In addition, I will place the Red Notice applications on an Office of International Affairs, Criminal Division, U.S. Department of Justice (OIA), computer drive accessible to OIA personnel for use in expediting a formal Provisional Arrest (PA) request if:

(1) the fugitive is located in a country that can extradite to the United States for the offense(s) in question; and

(2) OIA determines that provisional arrest is appropriate.

Should your fugitives be located abroad, you will be notified and instructed to contact OIA at: telephone (202) 514-0000, fax (202) 514-0080, to discuss and coordinate their extradition.

NOTE: As previously noted, the Red Notice is a firm commitment by your office, and by the United States to request this fugitive's extradition in all but the most exceptional circumstances. *Cf.* U.S. Attorney's Manual 9 -15.635. The following points are therefore critical.

- ✦ To facilitate extradition:

- ✧ Never archive the fugitive's case file

- ✧ Ensure that any prosecutor covering your cases has access to the file at any time.

- ✦ When your fugitive is located:

- ✧ OIA and/or the USNCB will immediately contact you and the investigator.

- ✧ If the OIA case attorney determines that provisional arrest is appropriate, *immediately* provide any additional information needed to complete the formal PA request to the country in question.

- ✦ To avoid false arrest:

- ✧ Monitor the prosecutability of this case.

- ✧ Notify the USNCB and OIA at once, in writing, if you dismiss the indictment or no longer seek the fugitive internationally.

Finally, please note that Red Notices remain outstanding for 5 years. If not timely re-validated when the Secretariat General asks, European privacy laws may require their cancellation. The INTERPOL - U.S. National Central Bureau will contact the agent about this when appropriate.

Please call me at           , or e-mail me at               if you have any questions or I can be of further assistance.

Sincerely,

Kevin R. Smith
General Counsel

Enclosures

**J.A. 124**

**Red Notice Template for I-Link**

PRIORITY:     Urgent

DATE:         30 December 2009

FROM:         Interpol Washington

TO:           IPSG Lyon - Notices

OUR REF:      20091229118

SUBJECT:      CHAUDHRY, f/n Umar Farooq

Red Notice Application Form

Please specify whether you authorize the General Secretariat to disclose to the public extracts of the information contained in your red notice application, including on Interpol's public website: NO

## 1. IDENTITY PARTICULARS

CAUTION: THIS PERSON IS:
DANGEROUS

PRESENT FAMILY NAME:
CHAUDHRY

FAMILY NAME AT BIRTH:
CHAUDHRY

FORENAMES:
Umar Farooq

SEX: Male

DATE (DD/MM/YYYY) AND PLACE OF BIRTH:
30 April 1985
Pakistan

NICKNAMES: Unknown

ALSO KNOWN AS: Unknown

OTHER DATES OF BIRTH: Unknown

FATHER'S FAMILY NAME AND FORENAMES:
CHAUDHRY, f/n Khalid

MOTHER'S MAIDEN NAME AND FORENAMES:
FAROOQ, f/n Sabira

IDENTITY:
CONFIRMED       YES

NATIONALITY(IES):
Pakistan        (Confirmed)
United States   (Confirmed)

IDENTITY DOCUMENTS:
Nationality: United States
Type: Passport
Number: 464667210
Issued: 05 November 2009
Expiration: 04 November 2019

Nationality: United States
Type: Passport
Number: 017656055

Nationality: United States
Type: Driver's License
Number:
Place of Issue: State of Virginia

OCCUPATION:
Student, Computer Repair Family Business

LANGUAGES SPOKEN:
English, Urdu

DESCRIPTION:
Height (cm):   180
Weight (kg):   55
Build:         Thin
Hair Color:    Brown
Eye Color:     Brown

DISTINGUISHING MARKS AND CHARACTERISTICS: Unknown

DNA CODE: Unknown

REGIONS/COUNTRIES LIKELY TO BE VISITED:
Pakistan

ADDITIONAL INFORMATION:
Currently in Lahore, Pakistan

## 2. JUDICIAL INFORMATION

Information concerning a Fugitive Wanted for Prosecution

FACTS OF THE CASE
Time Frame – FROM: 01 November 2009; TO: 23 December 2009
Place of Offense – TOWN: Virginia; COUNTRY: United States

SUMMARY (*Section is limited to 500 characters, approximately five lines, and only this section will be reviewed and translated by the Interpol Secretariat General. Remainder of facts in excess of 500 characters will be included in the ADDITIONAL FACTS OF THE CASE section*):

In November 2009, Umar Farooq CHAUDHRY and others traveled from the U.S. to Pakistan for the expressed purpose of entering Afghanistan to commit Jihad, or holy war on behalf of Islam, for the purpose of engaging in terrorist activities against the U.S. Upon arrival in Pakistan, CHAUDHRY and the others made contacts with two separate U.S. designated foreign terrorist organizations, Jaish-e-Mohammed and Jamaat Ud-Dawa, for the purpose of seeking assistance in joining in Jihad against the U.S.

ADDITIONAL FACTS OF THE CASE (*Number of characters in this section is not limited, however, this section will not be revised or translated by the Interpol Secretariat General*):

CHAUDHRY and others created a video prior to their departure called "afinalmessage", in which they discussed their goal of participating in Jihad to defend Muslims.

ACCOMPLICES:
MINNI, f/n Ahmed Ameer, born 04 December 1989 (Red Notice Pending)
YEMER, f/n Aman Hassan, born 28 May 1991 (Red Notice Pending)
KHAN, f/n Waqar Hussain, born 11 August 1987 (Red Notice Pending)
ZAMZAM, f/n Ramy Said, born 19 September 1987 (Red Notice Pending)

CHARGE(S):
Conspiracy to provide material support to terrorists

OFFENSE CODE(S) (see list):
Terrorism Related Crime

LAW COVERING THE OFFENSE(S):
Title 18, U.S. Code, Section 2339(A)

MAXIMUM PENALTY POSSIBLE:
15 years imprisonment

TIME-LIMIT FOR PROSECUTION: No Time Limit

ARREST WARRANT (outstanding warrant):
Number: 1:09mj858
Date of issuance: 23 December 2009
Issuing judicial authorities and place of issuance: U.S. District Court, Eastern District of
Virginia, Alexandria
Country: United States
Name/title of Signatory:  Theresa Carroll Buchanan, U.S. Magistrate Judge
Copy of the arrest warrant attached in the language used by the requesting country: NO


## 3. ACTION TO BE TAKEN IF TRACED

**Locate and arrest with a view to extradition**
Assurances are given that extradition will be sought upon arrest of the person, in conformity with
national laws and/or the applicable bilateral and multilateral treaties.

**Provisional arrest**
This red notice is to be treated as a formal request for provisional arrest, in conformity with
national laws and/or the applicable bilateral and multilateral treaties.

Immediately inform INTERPOL Washington
NCB reference: 20091229118
of (Red Notice e-submission dd/mm/yyyy)

Would you like to send a diffusion to all member countries (IPCQ) with the information
contained in this notice request?  NO

(<u>*Note to prosecutor*</u>: *It is the USNCB's practice to issue a wanted person diffusion soon after a
complete Red Notice application package is received at the USNCB, and prior to the case being
reviewed by the Office of the General Counsel. The above question is answered "NO" when the
Red Notice is uploaded into the IPSG's I-Link system by a USNCB caseworker to prevent a
duplicative wanted person diffusion from being dispatched by the IPSG.*)


SIGNATURE

Address of the requesting NCB (telephone and fax numbers):
Interpol Washington
U. S. Department of Justice

Washington, DC 20530
Phone: 202-616-9000, Fax: 202-616-8400

Name of the Officer in charge of this matter:
Case agent name

E-mail address (mandatory for acknowledgement of receipt):
ncb.washington@us.igcs.int

--------------------------------------------------

Additional information found below is for use by the Office of International Affairs, U.S.
Department of Justice, tel. 202-514-0000, in preparing a request for provisional arrest if the
fugitive is located. It will NOT appear in the published Red Notice:

Interpol-USNCB reference number: 20091229118
Prosecutor's Agreement to extradite, photos, warrant, charging instrument, and other information
on file at Interpol USNCB. For further information please contact the General Counsel office at
202-616-4103.

PROSECUTOR CONTACT INFO:
Name: Neil Hammerstrom          Title: Assistant U.S. Attorney
Agency: U.S. Attorney's Office
Jurisdiction: Eastern District of Virginia
Phone: (703) 299-3700
Fax: (703) 299-2584
E-mail:

CHARGING INFORMATION:
Complaint number 1:09mj858 filed in the U.S. District Court, Eastern District of Virginia,
Alexandria, on 23 December 2009

**Red Notice Template for I-Link**

PRIORITY:    Urgent

DATE:        30 December 2009

FROM:        Interpol Washington

TO:          IPSG Lyon - Notices

OUR REF:     20091229121

SUBJECT:     KHAN, f/n Waqar Hussain

Red Notice Application Form

Please specify whether you authorize the General Secretariat to disclose to the public extracts of the information contained in your red notice application, including on Interpol's public website: NO

## 1. IDENTITY PARTICULARS

CAUTION: THIS PERSON IS:
DANGEROUS

PRESENT FAMILY NAME:
KHAN

FAMILY NAME AT BIRTH:
KHAN

FORENAMES:
Waqar Hussain

SEX: Male

DATE (DD/MM/YYYY) AND PLACE OF BIRTH:
11 August 1987
Virginia, United States

NICKNAMES: Unknown

ALSO KNOWN AS:

KHAN, f/n Waqar; KHAN, f/n Waqar H.; KHAN, f/n Waquar Hussain; KHAN, f/n Waqur H.;
KHAN, f/n Waquar

OTHER DATES OF BIRTH: Unknown

FATHER'S FAMILY NAME AND FORENAMES:
KHAN, f/n Mohammad Saeed

MOTHER'S MAIDEN NAME AND FORENAMES:
KHAN, f/n Zahida Parveen

IDENTITY:
CONFIRMED        YES

NATIONALITY(IES):
United States  (Confirmed)

IDENTITY DOCUMENTS:
Nationality: United States
Type: Passport
Number: 438508641
Issued: 05 February 2008
Expiration: 04 February 2018

Nationality: United States
Type: Driver's License
Number:
Place of Issue: State of Virginia

OCCUPATION: Unknown

LANGUAGES SPOKEN:
English, Urdu

DESCRIPTION:
Height (cm):   180
Weight (kg):   73
Build:         Medium
Hair Color:    Black
Eye Color:     Brown

DISTINGUISHING MARKS AND CHARACTERISTICS: Unknown

DNA CODE: Unknown

REGIONS/COUNTRIES LIKELY TO BE VISITED:

Pakistan

ADDITIONAL INFORMATION:
Currently in Lahore, Pakistan


## 2. JUDICIAL INFORMATION

Information concerning a Fugitive Wanted for Prosecution

FACTS OF THE CASE
Time Frame – FROM: 01 November 2009; TO: 23 December 2009
Place of Offense – TOWN: Virginia; COUNTRY: United States

SUMMARY (*Section is limited to 500 characters, approximately five lines, and only this section will be reviewed and translated by the Interpol Secretariat General. Remainder of facts in excess of 500 characters will be included in the ADDITIONAL FACTS OF THE CASE section*):

In November 2009, Waqar Hussain KHAN and others traveled from the U.S. to Pakistan for the expressed purpose of entering Afghanistan to commit Jihad, or holy war on behalf of Islam, for the purpose of engaging in terrorist activities against the U.S. Upon arrival in Pakistan, KHAN and the others made contacts with two separate U.S. designated foreign terrorist organizations, Jaish-e-Mohammed and Jamaat Ud-Dawa, for the stated purpose of seeking assistance in joining in Jihad against the U.S.

ADDITIONAL FACTS OF THE CASE (*Number of characters in this section is not limited, however, this section will not be revised or translated by the Interpol Secretariat General*):

KHAN and others created a video prior to their departure called "afinalmessage", in which they discussed their goal of participating in Jihad to defend Muslims.

ACCOMPLICES:
CHAUDHRY, f/n Umar Farooq, born 30 April 1985 (Red Notice Pending)
MINNI, f/n Ahmed Ameer, born 04 December 1989 (Red Notice Pending)
YEMER, f/n Aman Hassan, born 28 May 1991 (Red Notice Pending)
ZAMZAM, f/n Ramy Said, born 19 September 1987 (Red Notice Pending)

CHARGE(S):
Conspiracy to provide material support to terrorists

OFFENSE CODE(S) (see list):
Terrorism Related Crime

LAW COVERING THE OFFENSE(S):
Title 18, U.S. Code, Section 2339(A)

MAXIMUM PENALTY POSSIBLE:
15 years imprisonment

TIME-LIMIT FOR PROSECUTION: No Time Limit

ARREST WARRANT (outstanding warrant):
Number: 1:09mj858
Date of issuance: 23 December 2009
Issuing judicial authorities and place of issuance: U.S. District Court, Eastern District of
Virginia, Alexandria
Country: United States
Name/title of Signatory: Theresa Carroll Buchanan, U.S. Magistrate Judge
Copy of the arrest warrant attached in the language used by the requesting country: NO


## 3. ACTION TO BE TAKEN IF TRACED

**Locate and arrest with a view to extradition**
Assurances are given that extradition will be sought upon arrest of the person, in conformity with
national laws and/or the applicable bilateral and multilateral treaties.

**Provisional arrest**
This red notice is to be treated as a formal request for provisional arrest, in conformity with
national laws and/or the applicable bilateral and multilateral treaties.

Immediately inform INTERPOL Washington
NCB reference: 20091229121
of (Red Notice e-submission dd/mm/yyyy)

Would you like to send a diffusion to all member countries (IPCQ) with the information
contained in this notice request? NO

(*Note to prosecutor*: *It is the USNCB's practice to issue a wanted person diffusion soon after a
complete Red Notice application package is received at the USNCB, and prior to the case being
reviewed by the Office of the General Counsel. The above question is answered "NO" when the
Red Notice is uploaded into the IPSG's I-Link system by a USNCB caseworker to prevent a
duplicative wanted person diffusion from being dispatched by the IPSG.*)

SIGNATURE

Address of the requesting NCB (telephone and fax numbers):
Interpol Washington
U. S. Department of Justice
Washington, DC 20530
Phone: 202-616-9000, Fax: 202-616-8400

Name of the Officer in charge of this matter:
Case agent name

E-mail address (mandatory for acknowledgement of receipt):
ncb.washington@us.igcs.int

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Additional information found below is for use by the Office of International Affairs, U.S.
Department of Justice, tel. 202-514-0000, in preparing a request for provisional arrest if the
fugitive is located.  It will NOT appear in the published Red Notice:

Interpol-USNCB reference number: 20091229121
Prosecutor's Agreement to extradite, photos, warrant, charging instrument, and other information
on file at Interpol USNCB.  For further information please contact the General Counsel office at
202-616-4103.

PROSECUTOR CONTACT INFO:
Name: Neil Hammerstrom          Title: Assistant U.S. Attorney
Agency: U.S. Attorney's Office
Jurisdiction: Eastern District of Virginia
Phone: (703) 299-3700
Fax: (703) 299-2584
E-mail:

CHARGING INFORMATION:
Complaint number 1:09mj858 filed in the U.S. District Court, Eastern District of Virginia,
Alexandria, on 23 December 2009

**Red Notice Template for I-Link**

PRIORITY:   Urgent

DATE:   30 December 2009

FROM:   Interpol Washington

TO:   IPSG Lyon - Notices

OUR REF:   20091229122

SUBJECT:   MINNI, f/n Ahmed Ameer

Red Notice Application Form

Please specify whether you authorize the General Secretariat to disclose to the public extracts of the information contained in your red notice application, including on Interpol's public website: NO

## 1. IDENTITY PARTICULARS

CAUTION: THIS PERSON IS:
DANGEROUS

PRESENT FAMILY NAME:
MINNI

FAMILY NAME AT BIRTH:
MINNI

FORENAMES:
Ahmed Ameer

SEX: Male

DATE (DD/MM/YYYY) AND PLACE OF BIRTH:
04 December 1989
Arlington, Virginia, United States

NICKNAMES: Unknown

ALSO KNOWN AS:
MINNI, f/n Ahmed; MINNI, f/n Ahmed A.

OTHER DATES OF BIRTH: Unknown

FATHER'S FAMILY NAME AND FORENAMES:
MINNI, f/n Abdulwahab Ahmed

MOTHER'S MAIDEN NAME AND FORENAMES: Unknown

IDENTITY:
CONFIRMED          YES

NATIONALITY(IES):
United States  (Confirmed)

IDENTITY DOCUMENTS:
Nationality: United States
Type: Passport
Number: 461944857
Issued: 27 October 2009
Expiration: 26 October 2019

Nationality: United States
Type: Passport
Number: 016254872

Nationality: United States
Type: Driver's License
Number:
Place of Issue: State of Virginia

OCCUPATION:
Student

LANGUAGES SPOKEN:
English, Arabic

DESCRIPTION:
Height (cm):   168
Weight (kg):   51
Build:         Thin
Hair Color:    Black
Eye Color:     Brown

DISTINGUISHING MARKS AND CHARACTERISTICS: Unknown

DNA CODE: Unknown

**J.A. 136**

REGIONS/COUNTRIES LIKELY TO BE VISITED:
Pakistan

ADDITIONAL INFORMATION:
Currently in Lahore, Pakistan


## 2. JUDICIAL INFORMATION

Information concerning a Fugitive Wanted for Prosecution

FACTS OF THE CASE
Time Frame – FROM: 01 November 2009; TO: 23 December 2009
Place of Offense – TOWN: Virginia; COUNTRY: United States

SUMMARY (*Section is limited to 500 characters, approximately five lines, and only this section will be reviewed and translated by the Interpol Secretariat General. Remainder of facts in excess of 500 characters will be included in the ADDITIONAL FACTS OF THE CASE section*):

In November 2009, Ahmed Ameer MINNI and others traveled from the U.S. to Pakistan for the expressed purpose of entering Afghanistan to commit Jihad, or holy war on behalf of Islam, for the purpose of engaging in terrorist activities against the U.S. Upon arrival in Pakistan, MINNI and the others made contacts with two separate U.S. designated foreign terrorist organizations, Jaish-e-Mohammed and Jamaat Ud-Dawa, for the stated purpose of seeking assistance in joining in Jihad against the U.S.

ADDITIONAL FACTS OF THE CASE (*Number of characters in this section is not limited, however, this section will not be revised or translated by the Interpol Secretariat General*):

MINNI and others created a video prior to their departure called "afinalmessage", in which they discussed their goal of participating in Jihad to defend Muslims.

ACCOMPLICES:
CHAUDHRY, f/n Umar Farooq, born 30 April 1985 (Red Notice Pending)
YEMER, f/n Aman Hassan, born 28 May 1991 (Red Notice Pending)
KHAN, f/n Waqar Hussain, born 11 August 1987 (Red Notice Pending)
ZAMZAM, f/n Ramy Said, born 19 September 1987 (Red Notice Pending)

CHARGE(S):
Conspiracy to provide material support to terrorists

OFFENSE CODE(S) (see list):
Terrorism Related Crime

LAW COVERING THE OFFENSE(S):

Title 18, U.S. Code, Section 2339(A)

MAXIMUM PENALTY POSSIBLE:
15 years imprisonment

TIME-LIMIT FOR PROSECUTION: No Time Limit

ARREST WARRANT (outstanding warrant):
Number: 1:09mj858
Date of issuance: 23 December 2009
Issuing judicial authorities and place of issuance: U.S. District Court, Eastern District of
Virginia, Alexandria
Country: United States
Name/title of Signatory:  Theresa Carroll Buchanan, U.S. Magistrate Judge
Copy of the arrest warrant attached in the language used by the requesting country: NO

## 3. ACTION TO BE TAKEN IF TRACED

**Locate and arrest with a view to extradition**
Assurances are given that extradition will be sought upon arrest of the person, in conformity with
national laws and/or the applicable bilateral and multilateral treaties.

**Provisional arrest**
This red notice is to be treated as a formal request for provisional arrest, in conformity with
national laws and/or the applicable bilateral and multilateral treaties.

Immediately inform INTERPOL Washington
NCB reference: 20091229122
of (Red Notice e-submission dd/mm/yyyy)

Would you like to send a diffusion to all member countries (IPCQ) with the information
contained in this notice request?  NO

(*Note to prosecutor*: *It is the USNCB's practice to issue a wanted person diffusion soon after a
complete Red Notice application package is received at the USNCB, and prior to the case being
reviewed by the Office of the General Counsel. The above question is answered "NO" when the
Red Notice is uploaded into the IPSG's I-Link system by a USNCB caseworker to prevent a
duplicative wanted person diffusion from being dispatched by the IPSG.*)

SIGNATURE

Address of the requesting NCB (telephone and fax numbers):
Interpol Washington
U. S. Department of Justice
Washington, DC  20530

Phone: 202-616-9000, Fax: 202-616-8400

Name of the Officer in charge of this matter:
Case agent name

E-mail address (mandatory for acknowledgement of receipt):
ncb.washington@us.igcs.int

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Additional information found below is for use by the Office of International Affairs, U.S. Department of Justice, tel. 202-514-0000, in preparing a request for provisional arrest if the fugitive is located. It will NOT appear in the published Red Notice:

Interpol-USNCB reference number: 20091229122
Prosecutor's Agreement to extradite, photos, warrant, charging instrument, and other information on file at Interpol USNCB. For further information please contact the General Counsel office at 202-616-4103.

PROSECUTOR CONTACT INFO:
Name: Neil Hammerstrom          Title: Assistant U.S. Attorney
Agency: U.S. Attorney's Office
Jurisdiction: Eastern District of Virginia
Phone: (703) 299-3700
Fax: (703) 299-2584
E-mail:

CHARGING INFORMATION:
Complaint number 1:09mj858 filed in the U.S. District Court, Eastern District of Virginia, Alexandria, on 23 December 2009

**Red Notice Template for I-Link**

PRIORITY:    Urgent

DATE:    30 December 2009

FROM:    Interpol Washington

TO:    IPSG Lyon - Notices

OUR REF:    20091229120

SUBJECT:    YEMER, f/n Aman Hassan


Red Notice Application Form

Please specify whether you authorize the General Secretariat to disclose to the public extracts of the information contained in your red notice application, including on Interpol's public website: NO


## 1. IDENTITY PARTICULARS

CAUTION: THIS PERSON IS:
DANGEROUS

PRESENT FAMILY NAME:
YEMER

FAMILY NAME AT BIRTH:
YEMER

FORENAMES:
Aman Hassan

SEX: Male

DATE (DD/MM/YYYY) AND PLACE OF BIRTH:
28 May 1991
San Jose, California, United States

NICKNAMES: Unknown

ALSO KNOWN AS:
ZEMCHAL, f/n Aman; YEMER, f/n Aman Hassan M.

OTHER DATES OF BIRTH: Unknown

FATHER'S FAMILY NAME AND FORENAMES:
YEMER, f/n Hassan

MOTHER'S MAIDEN NAME AND FORENAMES:
BEYENE, f/n Abeba Atlabachew

IDENTITY:
CONFIRMED          YES

NATIONALITY(IES):
United States (Confirmed)

IDENTITY DOCUMENTS:
Nationality: United States
Type: Passport
Number: 461285038
Issued: 01 October 2009
Expiration: 02 October 2019

Nationality: United States
Type: Passport
Number: 077064404

Nationality: United States
Type: Virginia Driver's License
Number:
Place of Issue: State of Virginia

OCCUPATION:
Student

LANGUAGES SPOKEN:
English

DESCRIPTION:
Height (cm):    168
Weight (kg):    59
Build:          Thin
Hair Color:     Black
Eye Color:      Black

DISTINGUISHING MARKS AND CHARACTERISTICS: Unknown

DNA CODE: Unknown

REGIONS/COUNTRIES LIKELY TO BE VISITED:
Pakistan

ADDITIONAL INFORMATION:
Currently in Lahore, Pakistan


## 2. JUDICIAL INFORMATION

Information concerning a Fugitive Wanted for Prosecution

FACTS OF THE CASE
Time Frame – FROM: 01 November 2009; TO: 23 December 2009
Place of Offense – TOWN: Virginia; COUNTRY: United States

SUMMARY (*Section is limited to 500 characters, approximately five lines, and only this section will be reviewed and translated by the Interpol Secretariat General.  Remainder of facts in excess of 500 characters will be included in the ADDITIONAL FACTS OF THE CASE section*):

In November 2009, Aman Hassan YEMER and others traveled from the U.S. to Pakistan for the expressed purpose of entering Afghanistan to commit Jihad, or holy war on behalf of Islam, for the purpose of engaging in terrorist activities against the U.S. Upon arrival in Pakistan, YEMER and the others made contacts with two separate U.S. designated foreign terrorist organizations, Jaish-e-Mohammed and Jamaat Ud-Dawa, for the stated purpose of seeking assistance in joining in Jihad against the U.S.

ADDITIONAL FACTS OF THE CASE (*Number of characters in this section is not limited, however, this section will not be revised or translated by the Interpol Secretariat General*):

YEMER and others created a video prior to their departure called "afinalmessage", in which they discussed their goal of participating in Jihad to defend Muslims.

ACCOMPLICES:
CHAUDHRY, f/n Umar Farooq, born 30 April 1985 (Red Notice Pending)
MINNI, f/n Ahmed Ameer, born 04 December 1989 (Red Notice Pending)
KHAN, f/n Waqar Hussain, born 11 August 1987 (Red Notice Pending)
ZAMZAM, f/n Ramy Said, born 19 September 1987 (Red Notice Pending)

CHARGE(S):
Conspiracy to provide material support to terrorists

OFFENSE CODE(S) (see list):
Terrorism Related Crime

LAW COVERING THE OFFENSE(S):
Title 18, U.S. Code, Section 2339(A)

MAXIMUM PENALTY POSSIBLE:
15 years imprisonment

TIME-LIMIT FOR PROSECUTION: No Time Limit

ARREST WARRANT (outstanding warrant):
Number: 1:09mj858
Date of issuance: 23 December 2009
Issuing judicial authorities and place of issuance: U.S. District Court, Eastern District of
Virginia, Alexandria
Country: United States
Name/title of Signatory:  Theresa Carroll Buchanan, U.S. Magistrate Judge
Copy of the arrest warrant attached in the language used by the requesting country: NO


## 3. ACTION TO BE TAKEN IF TRACED

**Locate and arrest with a view to extradition**
Assurances are given that extradition will be sought upon arrest of the person, in conformity with
national laws and/or the applicable bilateral and multilateral treaties.

**Provisional arrest**
This red notice is to be treated as a formal request for provisional arrest, in conformity with
national laws and/or the applicable bilateral and multilateral treaties.

Immediately inform INTERPOL Washington
NCB reference: 20091229120
of (Red Notice e-submission dd/mm/yyyy)

Would you like to send a diffusion to all member countries (IPCQ) with the information
contained in this notice request?  NO

(*Note to prosecutor*: *It is the USNCB's practice to issue a wanted person diffusion soon after a
complete Red Notice application package is received at the USNCB, and prior to the case being
reviewed by the Office of the General Counsel. The above question is answered "NO" when the
Red Notice is uploaded into the IPSG's I-Link system by a USNCB caseworker to prevent a
duplicative wanted person diffusion from being dispatched by the IPSG.*)

SIGNATURE

Address of the requesting NCB (telephone and fax numbers):
Interpol Washington
U. S. Department of Justice

**J.A. 143**

Washington, DC 20530
Phone: 202-616-9000, Fax: 202-616-8400

Name of the Officer in charge of this matter:
Case agent name

E-mail address (mandatory for acknowledgement of receipt):
ncb.washington@us.igcs.int

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Additional information found below is for use by the Office of International Affairs, U.S.
Department of Justice, tel. 202-514-0000, in preparing a request for provisional arrest if the
fugitive is located. It will NOT appear in the published Red Notice:

Interpol-USNCB reference number: 20091229120
Prosecutor's Agreement to extradite, photos, warrant, charging instrument, and other information
on file at Interpol USNCB. For further information please contact the General Counsel office at
202-616-4103.

PROSECUTOR CONTACT INFO:
Name: Neil Hammerstrom          Title: Assistant U.S. Attorney
Agency: U.S. Attorney's Office
Jurisdiction: Eastern District of Virginia
Phone: (703) 299-3700
Fax: (703) 299-2584
E-mail:

CHARGING INFORMATION:
Complaint number 1:09mj858 filed in the U.S. District Court, Eastern District of Virginia,
Alexandria, on 23 December 2009

**Red Notice Template for I-Link**

PRIORITY:      Urgent

DATE:          30 December 2009

FROM:          Interpol Washington

TO:            IPSG Lyon - Notices

OUR REF:       20091229119

SUBJECT:       ZAMZAM, f/n Ramy Said


Red Notice Application Form

Please specify whether you authorize the General Secretariat to disclose to the public extracts of the information contained in your red notice application, including on Interpol's public website: NO


## 1. IDENTITY PARTICULARS

CAUTION: THIS PERSON IS:
DANGEROUS

PRESENT FAMILY NAME:
ZAMZAM

FAMILY NAME AT BIRTH:
ZAMZAM

FORENAMES:
Ramy Said

SEX: Male

DATE (DD/MM/YYYY) AND PLACE OF BIRTH:
19 September 1987
Ashmon, Egypt

NICKNAMES: Unknown

ALSO KNOWN AS:
ZAMZAM, f/n Ramy S.; ZAMZAM, f/n Ramy

**J.A. 145**

OTHER DATES OF BIRTH: Unknown

FATHER'S FAMILY NAME AND FORENAMES:
ZAMZAM, f/n Said Abdel Moneim

MOTHER'S MAIDEN NAME AND FORENAMES:
KHALIFA, f/n Amal

IDENTITY:
CONFIRMED      YES

NATIONALITY(IES):
Egypt         (Confirmed)
United States  (Confirmed)

IDENTITY DOCUMENTS:
Nationality: United States
Type: Passport
Number: 309616897
Issued: 14 March 2007
Expiration: 13 March 2017

Nationality: United States
Type: Driver's License
Number:
Place of Issue: State of Virginia

OCCUPATION:
Dental Student

LANGUAGES SPOKEN:
English, Arabic

DESCRIPTION:
Height (cm):  183
Weight (kg):  77
Build:        Medium
Hair Color:   Brown
Eye Color:    Green

DISTINGUISHING MARKS AND CHARACTERISTICS: Unknown

DNA CODE: Unknown

REGIONS/COUNTRIES LIKELY TO BE VISITED:

**J.A. 146**

Pakistan

ADDITIONAL INFORMATION:
Currently in Lahore, Pakistan

## 2. JUDICIAL INFORMATION

Information concerning a Fugitive Wanted for Prosecution

FACTS OF THE CASE
Time Frame – FROM: 01 November 2009; TO: 23 December 2009
Place of Offense – TOWN: Virginia; COUNTRY: United States

SUMMARY (*Section is limited to 500 characters, approximately five lines, and only this section will be reviewed and translated by the Interpol Secretariat General. Remainder of facts in excess of 500 characters will be included in the ADDITIONAL FACTS OF THE CASE section*):

In November 2009, Ramy Said ZAMZAM and others traveled from the U.S. to Pakistan for the expressed purpose of entering Afghanistan to commit Jihad, or holy war on behalf of Islam, for the purpose of engaging in terrorist activities against the U.S. Upon arrival in Pakistan, ZAMZAM and the others made contacts with two separate U.S. designated foreign terrorist organizations, Jaish-e-Mohammed and Jamaat Ud-Dawa, for the stated purpose of seeking assistance in joining in Jihad against the U.S.

ADDITIONAL FACTS OF THE CASE (*Number of characters in this section is not limited, however, this section will not be revised or translated by the Interpol Secretariat General*):

ZAMZAM and others created a video prior to their departure called "afinalmessage", in which they discussed their goal of participating in Jihad to defend Muslims.

ACCOMPLICES:
CHAUDHRY, f/n Umar Farooq, born 30 April 1985 (Red Notice Pending)
MINNI, f/n Ahmed Ameer, born 04 December 1989 (Red Notice Pending)
YEMER, f/n Aman Hassan, born 28 May 1991 (Red Notice Pending)
KHAN, f/n Waqar Hussain, born 11 August 1987 (Red Notice Pending)

CHARGE(S):
Conspiracy to provide material support to terrorists

OFFENSE CODE(S) (see list):
Terrorism Related Crime

LAW COVERING THE OFFENSE(S):
Title 18, U.S. Code, Section 2339(A)

MAXIMUM PENALTY POSSIBLE:
15 years imprisonment

TIME-LIMIT FOR PROSECUTION: No Time Limit

ARREST WARRANT (outstanding warrant):
Number: 1:09mj858
Date of issuance: 23 December 2009
Issuing judicial authorities and place of issuance: U.S. District Court, Eastern District of
Virginia, Alexandria
Country: United States
Name/title of Signatory:  Theresa Carroll Buchanan, U.S. Magistrate Judge
Copy of the arrest warrant attached in the language used by the requesting country: NO


## 3. ACTION TO BE TAKEN IF TRACED

**Locate and arrest with a view to extradition**
Assurances are given that extradition will be sought upon arrest of the person, in conformity with
national laws and/or the applicable bilateral and multilateral treaties.

**Provisional arrest**
This red notice is to be treated as a formal request for provisional arrest, in conformity with
national laws and/or the applicable bilateral and multilateral treaties.

Immediately inform INTERPOL Washington
NCB reference: 20091229119
of (Red Notice e-submission dd/mm/yyyy)

Would you like to send a diffusion to all member countries (IPCQ) with the information
contained in this notice request?  NO

(*Note to prosecutor*: *It is the USNCB's practice to issue a wanted person diffusion soon after a
complete Red Notice application package is received at the USNCB, and prior to the case being
reviewed by the Office of the General Counsel. The above question is answered "NO" when the
Red Notice is uploaded into the IPSG's I-Link system by a USNCB caseworker to prevent a
duplicative wanted person diffusion from being dispatched by the IPSG.*)

SIGNATURE

Address of the requesting NCB (telephone and fax numbers):
Interpol Washington
U. S. Department of Justice
Washington, DC  20530
Phone: 202-616-9000, Fax: 202-616-8400


**J.A. 148**

Name of the Officer in charge of this matter:
Case agent name

E -mail address (mandatory for acknowledgement of receipt):
ncb.washington@us.igcs.int

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Additional information found below is for use by the Office of International Affairs, U.S. Department of Justice, tel. 202-514-0000, in preparing a request for provisional arrest if the fugitive is located. It will NOT appear in the published Red Notice:

Interpol-USNCB reference number: 20091229119
Prosecutor's Agreement to extradite, photos, warrant, charging instrument, and other information on file at Interpol USNCB. For further information please contact the General Counsel office at 202-616-4103.

PROSECUTOR CONTACT INFO:
Name: Neil Hammerstrom          Title: Assistant U.S. Attorney
Agency: U.S. Attorney's Office
Jurisdiction: Eastern District of Virginia
Phone: (703) 299-3700
Fax: (703) 299-2584
E-mail:

CHARGING INFORMATION:
Complaint number 1:09mj858 filed in the U.S. District Court, Eastern District of Virginia, Alexandria, on 23 December 2009

# Attachment 4

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *v.* | ) | |
| | ) | No. 1:17-cr-270-LMB |
| UMAR FAROOQ CHAUDHRY, | ) | |
| | ) | |
| *Defendant*. | ) | |

**DECLARATION OF JEFFREY M. OLSON
IN SUPPORT OF GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR
VIOLATING THE RIGHT TO A SPEEDY TRIAL AND RULE 48**

Pursuant to Title 28, United States Code, Section 1746, I, Jeffrey M. Olson, declare under

penalty of perjury that the following is true and correct:

1.      I am an Associate Director at the Office of International Affairs (OIA) of the

Criminal Division of the United States Department of Justice (DOJ), a position which I have held

since 2010.  I joined OIA initially as a Trial Attorney in 2001.

2.      OIA is the specific component of the Criminal Division of DOJ responsible for

international extraditions.  Thus, among other responsibilities, OIA plays a central role in securing

the return of fugitives from abroad to face prosecution in the United States.

3.      As an Associate Director at OIA, I supervise a group of attorneys and International

Affairs Specialists (IASs) who review, monitor, and facilitate the execution of extradition requests

to and from foreign countries.  Since 2013, I have supervised a team of attorneys and IASs at OIA

who cover approximately 100 countries in Africa, Asia, the Pacific, and the Middle East, including

the Islamic Republic of Pakistan (Pakistan).  As the Associate Director at OIA responsible for

overseeing matters with Pakistan, I have worked on, and overseen, numerous extradition-related

1

**J.A. 151**

matters involving that country.  I am also generally familiar with the U.S.-Pakistan law enforcement relationship during the time period relevant to this case.

4.      I submit this declaration in support of the United States' opposition to defendant Umar Farooq Chaudhry's Motion to Dismiss the Indictment for Violating the Right to a Speedy Trial and Rule 48.  In preparing this declaration, I have relied on my personal knowledge, training, and experience, as well as the knowledge of other OIA attorneys who have worked on matters with Pakistan with whom I have worked and spoken.  I have also reviewed the file for this case and am generally familiar with the dates and events relevant to this matter.  The chronology set forth in this declaration does not constitute the entire chronology in this matter; it highlights those events in which OIA was involved, or of which OIA is aware, and which are most relevant to responding to Chaudhry's motion.

### Overview of the Extradition Process with Pakistan

5.      The United States' process for submitting extradition requests to Pakistan is similar to that which it follows for requesting extradition from many other countries.  The process involves close coordination between the local U.S. Attorney's Office (USAO), OIA, the U.S. Department of State, and the U.S. Embassy in Islamabad, Pakistan.

6.      Once the USAO reaches out to OIA for assistance, the first step in the process is for the USAO to send a package of materials to OIA for proposed inclusion in an extradition request.  The package may contain, among other things, the charging document (a criminal complaint or indictment), the arrest warrant, the text of the laws under which the fugitive is charged, affidavits from a prosecutor and a law enforcement agent in support of the extradition request, and evidence relating to the identity of the fugitive.

7.      Once OIA receives this package, the OIA attorney on my team responsible for matters with Pakistan reviews the request for, among other things, compliance with the extradition treaty between the United States and Pakistan.  OIA provides edits and comments to the USAO on the extradition package, as needed, and the USAO revises the extradition package accordingly.

8.      Once the extradition package is finalized, OIA follows a formal certification process to establish the authenticity of the documents supporting the extradition request.

9.      Once the certification process is complete, the extradition package is submitted to the Department of State, which undertakes its own review of the package, adds its own certification, and prepares a cable to the U.S. Embassy, directing the Embassy to prepare a diplomatic note requesting extradition.  The Department of State then sends the extradition package to the U.S. Embassy in Islamabad, Pakistan, which presents the package to the Pakistani government under cover of the diplomatic note.

10.     I understand from conversations with Pakistani counterparts that, generally, an extradition request is routed through the Pakistani Ministry of Foreign Affairs to the Pakistani Ministry of Interior (MOI).  I understand that officials of the MOI then request a magistrate to inquire into the extradition request, and the magistrate reports the results of that inquiry back to the MOI.  Upon determining that the request comports with Pakistan's extradition laws and the requirements of the applicable extradition treaty, the MOI submits the request to the Cabinet of Pakistan's federal government.  That body then decides whether to grant the extradition request.

11.     The fugitive may challenge the above proceedings in Pakistan's courts.  Judicial proceedings typically begin in one of Pakistan's High Courts, and an unsuccessful fugitive may

3

**J.A. 153**

seek review in the country's appellate courts and even petition Pakistan's Supreme Court.  The

process of contesting an extradition in Pakistan's courts can take several years to complete.

12.     If an extradition request ultimately is granted, U.S. authorities, including OIA,

will coordinate with Pakistani authorities to transport the fugitive to the United States.   OIA

often works with the Legal Attaché (Legat) for the Federal Bureau of Investigation (FBI), based

at the U.S. Embassy in Islamabad, to seek updates from Pakistani authorities throughout the

extradition process.

13.     With Pakistan, there is another route to removing a fugitive from Pakistan to the

United States.  Pakistan will in certain cases agree to deport another country's nationals in lieu of

extradition.  If available, this method is typically faster than extradition proceedings (it still

requires certain approvals within the Pakistan government, but these generally proceed more

quickly).  As we understood all of the defendants in this case to be United States citizens, we

believed this option was available if Pakistan consented to proceed this way.

### Overview of the U.S.-Pakistan Extradition Relationship

14.     The United States and Pakistan are parties to a bilateral extradition treaty, the

Extradition Treaty between the United States and the United Kingdom, U.S.-U.K., Dec. 22,

1931, 47 Stat. 2212 (the Treaty), to which Pakistan acceded after its independence, and which

creates an obligation to extradite fugitives under the circumstances specified therein.   A copy of

this Treaty is attached to the government's response to defendant Chaudhry's motion.

15.     In and around 2013, when I started overseeing the team covering Pakistan, I

quickly learned that OIA faced significant challenges in its extradition relationship with

Pakistan.  Extradition requests that the United States submitted to Pakistan often were not

addressed in a timely manner by the Government of Pakistan, or simply were not addressed at

4

**J.A. 154**

all.  On some occasions, original extradition documents were misplaced or destroyed, which then had to be reassembled and retransmitted, significantly delaying the extradition process.

16.     The difficulties associated with obtaining extradition from Pakistan have persisted.  I am aware that between the initial request for Chaudhry's arrest in January 2010 indictment in this matter and his June 2021 arrest in Pakistan on the indictment, the United States had only one successful extradition from Pakistan, in 2015.  In September 2021, Pakistan extradited a second fugitive to the United States, the second successful extradition from Pakistan in the last fifteen years.  Chaudry's extradition makes the third successful extradition from Pakistan in that time period.  These extraditions are exceptional, however.[1]  Within the past 15 years, the United States has made many other extradition requests to Pakistan, none of which resulted in the surrender of the fugitives sought.

17.     In fact, during my time as Associate Director for the team, most of the United States' extradition requests to Pakistan have failed to receive any official response from Pakistan, despite diplomatic efforts to advance them.  OIA has had difficulty communicating with its counterparts in the Pakistani government even to obtain status updates regarding these extradition requests.  Although I travelled to Islamabad in November 2019 to meet with our counterparts in an effort to improve our relationship, and the lead Trial Attorney that I supervise who is currently handling Pakistan matters travelled to Islamabad in September 2023 in an attempt to do the same, the challenges of extraditing from Pakistan have continued.  As a result, OIA regularly advised U.S. prosecutors and law enforcement agents that the process of requesting extradition from Pakistan is always time-consuming and challenging, and most often

---

[1] All three extradited defendants were U.S. citizens with Pakistani heritage.  In the 2021 matter, the defendant consented to his extradition to the United States after several years of litigation.

unsuccessful.  Even in situations where extradition is successful, the process generally takes

years, and trying to obtain information from Pakistan about the progress of a matter is similarly

challenging.

### Efforts to Extradite Chaudhry

18.     On December 11, 2009, Legat in Islamabad advised that Ahmed Ameer Minni,

Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry and Waqar Hussain Khan

(collectively, the Sargodha Five) had been detained in Sargodha, Pakistan.  Legat informed the

Pakistan Minister of the Interior that the United States intended to bring charges against the

Sargodha Five.

19.     On December 15, 2009, Legat advised that the Sargodha Five had been brought

before a local judge in Pakistan and detained, and that they would likely be charged under

Pakistan's Anti-Terrorism Act.  Legat advised that Legat was still conferring with local officials

in Pakistan to determine whether immediate expulsion or deportation would be possible.

20.     On December 23, 2009, the United States Attorney's Office for the Eastern

District of Virginia (EDVA) filed the criminal complaint in this matter, charging Ahmed Ameer

Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry and Waqar Hussain.

OIA has learned that although Pakistan does not always arrest and detain individuals for whom

an Interpol Red Notice exists, they generally do require a Red Notice when they choose to arrest

or detain.  As a result, the prosecutors contemporaneously obtained a Red Notice through

Interpol (issued on December 29, 2009) for all five defendants.

21.     On December 24, 2009, Legat provided the Ministry of Interior with the U.S.

arrest warrants that had been issued against the Sargodha Five and reiterated the United States'

desire to secure their return to the United States.  That same day, Legat was informed that there

was a court order from the local court which ordered the Sargodha Five's detention, prohibiting their transfer to any foreign government.

22.     On December 28, 2009, Legat advised that an official request from the U.S. Government for the transfer of custody of the Sargodha Five may carry more weight than simply providing the arrest warrants.  Legat noted that the Sargodha Five would likely be formally charged in Pakistan on January 4, 2010, for Directing Terrorist Activities, which carried a life sentence under Pakistani law.

23.     OIA worked with EDVA and the U.S. Department of State to provide an official request to Pakistan to turn over all five defendants for prosecution in the United States.  The request was made in the form of a diplomatic note, which was routed through diplomatic channels and presented to the Ministry of Foreign Affairs in Islamabad, Pakistan, on January 8, 2010 (Diplomatic Note No. 153/10 EXEC).  Due to a typographical error in that diplomatic note, an amended diplomatic note was presented on January 15, 2010 (Diplomatic Note No. 215/10 EXEC).

24.     Diplomatic Note No. 215/10 EXEC requested the transfer by "deportation, expulsion, or other lawful means," of the five defendants named in the compliant:  Ahmed Ameer Minni, Ramy Said Zamzam, Aman Hassan Yemer, Umar Farooq Chaudhry and Waqar Hussain Khan.  Given that our understanding was that all five were United States citizens, we sought Pakistan's consent to return them to the United States without requiring a full extradition request.

25.     Diplomatic Note No. 215/10 EXEC also noted what the defendants had been charged with and summarized the facts establishing probable cause for the arrest of the five defendants.  That Note further acknowledged that Pakistan had initiated its own criminal

proceedings against the five defendants and stated the "United States respectfully requests that the Government of Pakistan consider suspending or otherwise deferring its criminal proceedings against the defendants and deporting or expelling them as soon as possible to the United States." The Note argued that given that most of the charged conduct had occurred in the United States, and that U.S. authorities were continuing to investigate the defendants' network of associates, it would be more appropriate for the defendants to be tried in the United States.

26.     Over the next several months in 2010, Legat liaised with Pakistani law enforcement authorities to try to obtain additional information on their investigation and prosecution of the Sargodha Five.

27.     Legat advised that on about June 5 or 6, 2010, the U.S. Ambassador to Pakistan had met with the Pakistani Minister of Interior to reiterate the United States' position that the Sargodha Five be returned to the United States.

28.     On June 24, 2010, Legat advised that the Sargodha Five had been convicted and sentenced in Pakistan.  They each received 10 years in prison.

29.     Article 4 of the U.S.-Pakistan Extradition Treaty is clear that the nation which holds the fugitive has the right to complete any proceedings against him before instituting extradition proceedings:  "If the person claimed should be under examination or under punishment in the territories of the High Contracting Party applied to for any other crime or offence, his extradition shall be deferred until the conclusion of the trial and the full execution of any punishment awarded to him."

30.     As the Treaty required that the "full execution of any punishment" be completed in Pakistan, and there being no prisoner transfer treaty in place between the United States and

8

J.A. 158

Pakistan, the United States was obliged to wait until the defendants had completed the Pakistani prison sentences they were given.

31.      Over the next ten years while the Sargodha Five served their sentences in Pakistan, Legat routinely inquired with the Pakistan government as to the completion of their sentences.  Additionally, OIA inquired of the assigned prosecutor at EDVA to ensure their charges remained active and the case against all five was still viable.

32.      I traveled to Islamabad in November 2019 to follow up on pending extradition matters with Pakistan, including this case.  The Consular section of the U.S. Embassy, which keeps track of and visits Americans incarcerated in foreign prisons, informed me that they had been tracking this case, and that the Sargodha Five were due to complete their sentences soon. Shortly after my return, in early December 2019, I learned from Legat that the Sargodha Five were due to be released on or about January 3, 2020.

33.      The Red Notices on all of the Sargodha Five remained in effect at this time.

34.      Following up on my visit to Islamabad, in early December 2019, OIA requested that the Department of State and the U.S. Embassy in Islamabad send a cable to the Pakistan Ministry of Foreign Affairs, noting that it was our understanding that the sentences of the Sargodha Five were due to expire imminently, and asking for confirmation of that fact so that the U.S. could proceed with extradition or deportation.

35.      On January 8, 2020, OIA learned that the Sargodha Five had not been released on January 3 as scheduled, as they had outstanding fines that had not been paid.  Legat advised that Legat had been informed by the Ministry of Foreign Affairs that the sentences of the Sargodha Five were actually due to end on March 1, 2020, subject to the payment of fines due, and that

9

**J.A. 159**

Chaudhry had paid his fine and was scheduled to be released on March 29, 2020.  Legat advised

that the sentences for the remaining four defendants were due to end on October 3, 2020.

36.    By Diplomatic Note dated June 22, 2020, and numbered No.USA-120/3/2018-19,

the Pakistan Ministry of Foreign Affairs informed the U.S. Embassy in Islamabad that it was

"request[ing] the esteemed Embassy for provision of extradition documents" for Chaudhry and

Khan," and to "arrange travel documents and confirmed air tickets for deportation" of Zumzum,

Yemer, and Minni.

37.    Upon learning that Pakistan would not consent to the deportation of Chaudhry and

Khan but would instead require requests for their extradition, OIA provided EDVA with

guidance to prepare the necessary documents.  OIA reviewed the drafts received and provided

feedback to ensure they met the requirements of the extradition treaty.

38.    In the interim, a diplomatic note was sent to Pakistan in response to the one

received from them on June 22, 2020.  Through Diplomatic Note numbered 1535/20/POL, the

U.S. Embassy in Islamabad requested additional information on the Sargodha Five.  The

Diplomatic Note referred to a prior diplomatic communication received from Pakistan on March

11, 2020, wherein the Government of Pakistan informed the United States that four of the five

(other than Chaudhry) were due to be released on October 3, 2020.  The U.S. Diplomatic Note

reported that Chaudhry had been in fact released on June 9, 2020, after having paid his fines. The

Diplomatic Note confirmed that extradition packages for Chaudhry and Khan were being

prepared and requested confirmation of release dates for the three Americans, so that flight

clearance could be secured for a government aircraft to deport them to the United States.

39.    On August 24, 2020, OIA received from EDVA two sworn copies of the final

extradition requests.  Due to the pandemic (OIA was fully remote by this point) and as a result of

the original sworn requests being lost, necessitating the creation of duplicates, it took longer than usual to certify the sworn extradition requests for transmission to Pakistan; the certified requests processed by OIA were dated October 27, 2020, and were then sent to the Department of State for their certification, preparation of the cable (with language for a cover diplomatic note), and transmission to Pakistan.

40.   At the same time, on about October 27, 2020, Legat advised that the order from the local Pakistani court in December 2009, prohibiting the transfer of the Sargodha Five to any foreign government, was still in effect.  Legat advised that Legat was working with the Ministry of Interior to petition the local court to lift the order so that the deportation of Minni, Zamzam, and Yemer, and the extradition of Chaudhry and Khan, could proceed.

41.   The extradition requests were sent by the Department of State on or about November 9, 2020, along with instructions to the U.S. Embassy on how to present them, and what information to include in the cover diplomatic note.  They were presented to the Pakistan Ministry of Foreign Affairs on or about November 12, 2020.

42.   Legat advised that on or about March 2, 2021, the Pakistan Minister of Interior informed the U.S. Charge d'Affaires[2] in Islamabad that one of the two extradition requests had been approved by the Pakistani Cabinet and the other would be considered shortly.  This approval only confirmed the individual sought was eligible for extradition and permitted the request to move forward to judicial review.  Legat also learned that the judicial proceedings would begin in the Supreme Court in Islamabad.

43.   Though OIA was in regular contact with Legat in the following months, there was little information provided by way of update.  On May 16, 2022, Legat advised that Legat had

---

[2] A Charge d'Affaires is a diplomatic official who temporarily takes the place of an ambassador.

met with the Federal Secretary of the Ministry of the Interior and were informed that there were non-bailable arrest warrants for both Chaudhry and Khan, and once they were arrested, extradition proceedings could begin.

44.     Legat advised that on May 23, 2022, Legat once again met with the Ministry of Interior, and was told that they had developed a lead to arrest one of the two (Chaudhry or Khan).  Legat was informed Legat would be alerted when either man was in custody.

45.      Legat advised that Chaudhry was detained on approximately August 17, 2022, and that extradition proceedings would then begin.

46.     In the following months, Legat regularly reported to OIA on the course of Chaudhry's extradition proceedings in the Pakistani court, including court sessions held on November 29, 2022; December 13, 2022; January 12, 2023; March 16, 2023; April 18, 2023; May 24, 2023; and June 13, 2023.

47.      On July 5, 2023, roughly 11 months after Chaudhry was arrested so that extradition proceedings could begin, Legat reported that Chaudhry had signed a document consenting to his extradition.  This led to the Magistrate Judge presiding over his extradition proceedings to approve his extradition on July 14, 2023.  At this time, Chaudhry was on bail, and had agreed to return to custody within days of his scheduled extradition date.  The extradition was not final yet, as it needed to be approved once again by the Cabinet of Pakistan.

48.     Legat advised that on September 11, 2023, the Cabinet of Pakistan approved Chaudhry's extradition.

49.     Legat advised that there were great challenges in making arrangements to return Chaudhry to the United States.  Commercial flights could not be used, given his status as a convicted terrorist.  U.S. government flights were also unavailable.  A private charter was

ultimately secured for Chaudhry's return, and special transit permission had to be obtained for a scheduled refueling stop in a third country.  Arrangements also had to be made for his travel documents, both in exiting Pakistan and in entering the United States.  These preparations took time to arrange.  Chaudhry remained on bail for all but the last few days leading up to his extradition.

50.     Legat advised that Chaudhry was extradited from Pakistan on December 6, 2023, and landed at Dulles International Airport in Virginia that same day.

51.     In sum, in my opinion, the United States took all reasonable steps to secure Chaudhry's extradition as expeditiously as possible given the unusual course of the extradition proceedings in Pakistan.


I declare under penalty of perjury that the foregoing is true and correct to my personal knowledge, information, and belief.


Executed on February 9, 2024.

_____
Jeffrey M. Olson
Associate Director
Office of International Affairs
Criminal Division
United States Department of Justice

13

**J.A. 163**

# Attachment 5



*U.S. Department of Justice*
**Federal Bureau of Investigation**

File No.

Office of the Legal Attaché
United States Embassy
Islamabad, Pakistan
051-208-2205

23 June 2010

Mr.
Secretary
Ministry of Interior
Government of Pakistan
Islamabad, Pakistan

**Re: Coordination of disposition of 5 Americans in Sargodha**

Dear Secretary ▮▮▮▮▮

▮▮▮▮▮▮▮▮ As you are aware Ambassador ▮▮▮▮ had a conversation with Minister ▮▮▮▮ over the weekend of 05-06 June 2010 regarding the disposition of the 5 Americans currently on trial in Sargodha. It was communicated during that conversation that the U.S. Government has a strong interest in seeing their custody transferred to the United States at the earliest opportunity.

▮▮▮▮▮▮▮▮ Deputy Chief of Mission ▮▮▮▮▮ and I had a meeting with Minister ▮▮▮ on 18 June 2010. Minister ▮▮▮ directed that the Pakistani visas be canceled for all five of the Americans and the Court was to be advised of this in order to ensure the continuation of detention until the deportation of those who may be acquitted could be processed. The Minister further agreed to hold the five Americans in Government of Pakistan's custody until a U.S. Government aircraft could arrive to transport those who are deported out of Pakistan. It was our understanding that his orders would be communicated to the Court in Sargodha as well as other appropriate officials and the District Police Officer in Sargodha.

▮▮▮▮▮▮▮▮ It has come to our attention that the Minister's directives as set forth above may not have been conveyed to the Court or other officials in Sargodha. This is a matter of

J.A.



serious concern to us as extensive coordination will be needed for us to assume custody of any or all of the Americans depending upon the outcome of the trial and the deportation proceedings. In addition, the U.S. Passports for those being turned over to the U.S. Government will need to accompany them at the time of the transfer of custody.

It is most urgent that the course of action agreed upon during our last meeting and directed by the Minister be communicated to the appropriate officials and the District Police Officer in Sargodha at the earliest opportunity. I request a personal meeting with you on 24 June 2010 to finalize the coordination in this matter.

As always, your assistance in counterterrorism matters is greatly appreciated and I look forward to your reply.

Sincerely yours,

Timothy T. Waters
Legal Attaché

# Attachment 6



██████████████████████████████

**Memorandum**

File No. ██████████                               Office of the Legal Attaché
                                                United States Embassy
                                                Islamabad, Pakistan

                                                04 March 2013

████████████████
Director General
Federal Investigation Agency
Islamabad, Pakistan

███ **Request Meeting to Discuss Development of a Mutual Legal Assistance Treaty**

██████████ HE INFORMATION IN THIS DOCUMENT IS FOR INTELLIGENCE AND LEAD PURPOSES ONLY.  THE INFORMATION IN THIS DOCUMENT MAY NOT BE USED IN ANY LEGAL PROCEEDINGS OR DISSEMINATED TO ANY OTHER AGENCY WITHIN YOUR GOVERNMENT OR TO ANOTHER GOVERNMENT WITHOUT THE ADVANCED AUTHORIZATION OF THE FEDERAL BUREAU OF INVESTIGATION (FBI) HEADQUARTERS.  DO NOT TAKE ANY OVERT INVESTIGATIVE STEPS (INCLUDING BUT NOT LIMITED TO ANY TYPE OF FORMAL LEGAL PROCESS OR DIRECT CONTACT WITH THE SUBJECT) BASED ON THE INFORMATION IN THIS COMMUNICATION WITHOUT FIRST COORDINATING WITH THE FBI HEADQUARTERS.

██████████████████ Our office would like to schedule a meeting with you or your ███████ be available to meet with ████████████, U.S. Department of Justice-Office of International Affairs.  ████████ and his associates will be in Islamabad the week of April 15th, 2013, in order to discuss the development of a Mutual Legal Assistance Treaty (MLAT) between our two nations.

██████████████████ Our office would like to coordinate a meeting to tentatively take place on Wednesday, April17th, 2013.  ████████ would like to address the MLAT, conduct training or briefings on MLAT's, and discuss any pending extradition matters from the United States to Pakistan that you may want information on.  In addition, ████████ is interested in discussing a number of pending requests for extradition of individuals in Pakistan to the United States, such as:

1. Chaudhry, Umar Farooq (Sargoda Five, traveled to Pakistan for Jihad)
2. Khan, Waqar Hussain (Sargoda Five, traveled to Pakistan for Jihad)
3. Minni, Ahmed Ameer (Sargoda Five, traveled to Pakistan for Jihad)
4. Yemer, Aman Hassan (Sargoda Five, traveled to Pakistan for Jihad)
5. Zamzam, Ramy Said (Sargoda Five, traveled to Pakistan for Jihad)

████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████

███████████████████ During his visit, ███████ will also be meeting with the Ministry of the Interior regarding the MLAT issue; however, we feel it is critical to have input from your office. As always, your assistance in law enforcement matters is greatly appreciated.  We look forward to continued cooperation between our two organizations.  The Point of Contact for this issue is Assistant Legal Attaché (ALAT) Kent Hukill Pakistani Mobile #: ████████████ Work phone # ███████████

                                        Sincerely,


                                        Howard Leadbetter II
                                        Legal Attaché

█████████████████████████████████

**J.A. 170**

# Attachment 7

UNITED KINGDOM

EXTRADITION

Treaty Series 849

*1931 U.S.T. LEXIS 60; 12 Bevans 482*

December 22, 1931, Date-Signed

June 24, 1935, Date-In-Force

**STATUS:**

 [*1]  Treaty and exchanges of notes signed at London December 22, 1931
Senate advice and consent to ratification February 19, 1932
Ratified by the President of the United States March 3, 1932
Ratified by the United Kingdom July 29, 1932
Ratifications exchanged at London August 4, 1932
Proclaimed by the President of the United States August 9, 1932
Entered into force June 24, 1935

[NO LONG-TITLE IN ORIGINAL]

**TEXT:**
TREATY

The President of the United States of America,

And His Majesty the King of Great Britain, Ireland and the British Dominions beyond the Seas, Emperor of India;

Desiring to make more adequate provision for the reciprocal extradition of criminals,

Have resolved to conclude a Treaty for that purpose, and to that end have appointed as their plenipotentiaries:

The President of the United States of America:

General Charles G. Dawes, Ambassador Extraordinary and Plenipotentiary of the United States of America at the Court of St. James;

And His Majesty the King of Great Britain, Ireland and the British Dominions beyond the Seas, Emperor of India:

for Great Britain and Northern Ireland:

The Right Honourable Sir John Simon, G.C.S.I., M.P., His Principal Secretary of State for Foreign Affairs;
 [*2]
who, having communicated their full powers, found in good and due form, have agreed as follows:

ARTICLE 1

The High Contracting Parties engage to deliver up to each other, under certain circumstances and conditions stated in the present Treaty, those persons who, being accused or convicted of any of the crimes or offences enumerated in Article 3, committed within the jurisdiction of the one Party, shall be found within the territory of the other Party.

ARTICLE 2

For the purposes of the present Treaty the territory of His Britannic Majesty shall be deemed to be Great Britain and Northern Ireland, the Channel Islands and the Isle of Man, and all parts of His Britannic Majesty's dominions over-seas other than those enumerated in Article 14, together with the territories enumerated in Article 16 and any territories to which it may be extended under Article 17. It is understood that in respect of all territory of His Britannic Majesty as

above defined other than Great Britain and Northern Ireland, the Channel Islands, and the Isle of Man, the present Treaty shall be applied so far as the laws permit.

For the purposes of the present Treaty the territory of the United States shall be deemed [*3] to be all territory wherever situated belonging to the United States, including its dependencies and all other territories under its exclusive administration or control.

ARTICLE 3

Extradition shall be reciprocally granted for the following crimes or offences:

1. Murder (including assassination, parricide, infanticide, poisoning), or attempt or conspiracy to murder.

2. Manslaughter.

3. Administering drugs or using instruments with intent to procure the miscarriage of women.

4. Rape.

5. Unlawful carnal knowledge, or any attempt to have unlawful carnal knowledge, of a girl under 16 years of age.

6. Indecent assault if such crime or offence be indictable in the place where the accused or convicted person is apprehended.

7. Kidnapping or false imprisonment.

8. Child stealing, including abandoning, exposing or unlawfully detaining.

9. Abduction.

10. Procuration: that is to say the procuring or transporting of a woman or girl under age, even with her consent, for immoral purposes, or of a woman or girl over age, by fraud, threats, or compulsion, for such purposes with a view in either case to gratifying the passions of another person provided that such crime or offence is punishable by imprisonment [*4] for at least one year or by more severe punishment.

11. Bigamy.

12. Maliciously wounding or inflicting grievous bodily harm.

13. Threats, by letter or otherwise, with intent to extort money or other things of value.

14. Perjury, or subornation of perjury.

15. Arson.

16. Burglary or housebreaking, robbery with violence, larceny or embezzlement.

17. Fraud by a bailee, banker, agent, factor, trustee, director, member, or public officer of any company, or fraudulent conversion.

18. Obtaining money, valuable security, or goods, by false pretences; receiving any money, valuable security, or other property, knowing the same to have been stolen or unlawfully obtained.

19. (*a*) Counterfeiting or altering money, or bringing into circulation counterfeited or altered money.

(*b*) Knowingly and without lawful authority making or having in possession any instrument, tool, or engine adapted and intended for the counterfeiting of coin.

20. Forgery, or uttering what is forged.

21. Crimes or offences against bankruptcy law.

22. Bribery, defined to be the offering, giving or receiving of bribes.

23. Any malicious act done with intent to endanger the safety of any persons travelling or being upon [*5] a railway.

24. Crimes or offences or attempted crimes or offences in connection with the traffic in dangerous drugs.

25. Malicious injury to property, if such crime or offence be indictable.

26. (*a*) Piracy by the law of nations.

(*b*) Revolt, or conspiracy to revolt, by two or more persons on board a ship on the high seas against the authority of the master; wrongfully sinking or destroying a vessel at sea, or attempting to do so; assaults on board a ship on the high seas, with intent to do grievous bodily harm.

27. Dealing in slaves.

Extradition is also to be granted for participation in any of the aforesaid crimes or offences, provided that such participation be punishable by the laws of both High Contracting Parties.

ARTICLE 4

The extradition shall not take place if the person claimed has already been tried and discharged or punished, or is still under trial in the territories of the High Contracting Party applied to, for the crime or offence for which his extradition is demanded.

If the person claimed should be under examination or under punishment in the territories of the High Contracting Party applied to for any other crime or offence, his extradition shall be deferred [*6] until the conclusion of the trial and the full execution of any punishment awarded to him.

ARTICLE 5

The extradition shall not take place if, subsequently to the commission of the crime or offence or the institution of the penal prosecution or the conviction thereon, exemption from prosecution or punishment has been acquired by lapse of time, according to the laws of the High Contracting Party applying or applied to.

ARTICLE 6

A fugitive criminal shall not be surrendered if the crime or offence in respect of which his surrender is demanded is one of a political character, or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for a crime or offence of a political character.

ARTICLE 7

A person surrendered can in no case be kept in custody or be brought to trial in the territories of the High Contracting Party to whom the surrender has been made for any other crime or offence, or on account of any other matters, than those for which the extradition shall have taken place, until he has been restored, or has had an opportunity of returning, to the territories of the High Contracting Party by whom he has been surrendered.

This stipulation [*7] does not apply to crimes or offences committed after the extradition.

ARTICLE 8

The extradition of fugitive criminals under the provisions of this Treaty shall be carried out in the United States and in the territory of His Britannic Majesty respectively, in conformity with the laws regulating extradition for the time being in force in the territory from which the surrender of the fugitive criminal is claimed.

ARTICLE 9

The extradition shall take place only if the evidence be found sufficient, according to the laws of the High Contracting Party applied to, either to justify the committal of the prisoner for trial, in case the crime or offence had been committed in the territory of such High Contracting Party, or to prove that the prisoner is the identical person convicted by the courts of the High Contracting Party who makes the requisition, and that the crime or offence of which he has been convicted is one in respect of which extradition could, at the time of such conviction, have been granted by the High Contracting Party applied to.

ARTICLE 10

If the individual claimed by one of the High Contracting Parties in pursuance of the present Treaty should be also claimed by one or several [*8] other Powers on account of other crimes or offences committed within their respective jurisdictions, his extradition shall be granted to the Power whose claim is earliest in date, unless such claim is waived.

ARTICLE 11

If sufficient evidence for the extradition be not produced within two months from the date of the apprehension of the fugitive, or within such further time as the High Contracting Party applied to, or the proper tribunal of such High Contracting Party, shall direct, the fugitive shall be set at liberty.

ARTICLE 12

All articles seized which were in the possession of the person to be surrendered at the time of his apprehension, and any articles that may serve as a proof of the crime or offence shall be given up when the extradition takes place, in so far as this may be permitted by the law of the High Contracting Party granting the extradition.

ARTICLE 13

All expenses connected with the extradition shall be borne by the High Contracting Party making the application.

ARTICLE 14

His Britannic Majesty may accede to the present Treaty on behalf of any of his Dominions hereafter named--that is to say, the Dominion of Canada, the Commonwealth of Australia (including for this [*9] purpose Papua and Norfolk Island), the Dominion of New Zealand, the Union of South Africa, the Irish Free State, and Newfoundland--and India. Such accession shall be effected by a notice to that effect given by the appropriate diplomatic representative of His Majesty at Washington which shall specify the authority to which the requisition for the surrender of a fugitive criminal who has taken refuge in the Dominion concerned, or India, as the case may be, shall be addressed. From the date when such notice comes into effect the territory of the Dominion concerned or of India shall be deemed to be territory of His Britannic Majesty for the purposes of the present Treaty. n1

n1 The treaty was made applicable from Aug. 30, 1935, to Australia (including Papua, Norfolk Island, and mandated territories of New Guinea and Nauru) and Newfoundland. (It ceased to apply to Newfoundland, however, when Newfoundland entered the Confederation of Canada on Mar. 31, 1949.) It was also made applicable to Burma from Nov. 1, 1941, and to India from Mar. 9, 1942.

[*10]

The requisition for the surrender of a fugitive criminal who has taken refuge in any of the above-mentioned Dominions or India, on behalf of which His Britannic Majesty has acceded, shall be made by the appropriate diplomatic or consular officer of the United States of America.

Either High Contracting Party may terminate this Treaty separately in respect of any of the above-mentioned Dominions or India. Such termination shall be effected by a notice given in accordance with the provisions of Article 18.

Any notice given under the first paragraph of this Article in respect of one of His Britannic Majesty's Dominions may include any territory in respect of which a mandate on behalf of the League of Nations has been accepted by His Britannic Majesty, and which is being administered by the Government of the Dominion concerned; such territory shall, if so included, be deemed to be territory of His Britannic Majesty for the purposes of the present Treaty. Any notice given under the third paragraph of this Article shall be applicable to such mandated territory.

ARTICLE 15

The requisition for the surrender of a fugitive criminal who has taken refuge in any territory of His Britannic Majesty [*11] other than Great Britain and Northern Ireland, the Channel Islands, or the Isle of Man, or the Dominions or India mentioned in Article 14, shall be made to the Governor, or chief authority, of such territory by the appropriate consular officer of the United States of America.

Such requisition shall be dealt with by the competent authorities of such territory: provided, nevertheless, that if an order for the committal of the fugitive criminal to prison to await surrender shall be made, the said Governor or chief authority may, instead of issuing a warrant for the surrender of such fugitive, refer the matter to His Majesty's Government in the United Kingdom of Great Britain and Northern Ireland.

ARTICLE 16

This Treaty shall apply in the same manner as if they were Possessions of His Britannic Majesty to the following British Protectorates, that is to say, the Bechuanaland Protectorate, Gambia Protectorate, Kenya Protectorate, Nigeria Protectorate, Northern Rhodesia, Northern Territories of the Gold Coast, Nyasaland, Sierra Leone Protectorate, Solomon Islands Protectorate, Somaliland Protectorate, Swaziland, Uganda Protectorate and Zanzibar, and to the following territories in respect [*12]  of which a mandate on behalf of the League of Nations has been accepted by His Britannic Majesty, that is to say, Cameroons under British mandate, Togoland under British mandate, and the Tanganyika Territory.

ARTICLE 17

If after the signature of the present Treaty it is considered advisable to extend its provisions to any British Protectorates other than those mentioned in the preceding Article or to any British-protected State, or to any territory in respect of which a mandate on behalf of the League of Nations has been accepted by His Britannic Majesty, other than those mandated territories mentioned in Articles 14 and 16, the stipulations of Articles 14 and 15 shall be deemed to apply to such Protectorates or States or mandated territories from the date and in the manner prescribed in the notes to be exchanged for the purpose of effecting such extension. n2

> n2 The treaty was made applicable from June 24, 1935, to Palestine and Transjordan (see exchanges of notes, below); from July 31, 1939, to the Federated Malay States (Negri, Sembilan, Pahang, Perak and Selangor), to the Unfederated Malay States (Johore, Kedah, Kelantan, Perlis and Trengganu), Brunei, and North Borneo; and from Aug. 1, 1966, to Tonga.

[*13]

ARTICLE 18

The present Treaty shall come into force ten days after its publication, in conformity with the forms prescribed by the laws of the High Contracting Parties. It may be terminated by either of the High Contracting Parties by a notice not exceeding one year and not less than six months.

In the absence of an express provision to that effect, a notice given under the first paragraph of this Article shall not affect the operation of the Treaty as between the United States of America and any territory in respect of which notice of accession has been given under Article 14.

The present Treaty shall be ratified, and the ratifications shall be exchanged at London as soon as possible.

On the coming into force of the present treaty the provisions of Article 10 [X] of the treaty of the 9th August, 1842, n3 of the Convention of the 12th July, 1889, n4 of the supplementary Convention of the 13th December, 1900, n5 and of the supplementary Convention of the 12th April, 1905, n6 relative to extradition, shall cease to have effect, save that in the case of each of the Dominions and India, mentioned in Article 14, those provisions shall remain in force until such Dominion or India shall  [*14]  have acceded to the present treaty in accordance with Article 14 or until replaced by other treaty arrangements.

> n3 TS 119, *ante*, p. 88.

> n4 TS 139, *ante*, p. 211.

> n5 TS 391, *ante*, p. 256.

> n6 TS 458, *ante*, p. 272.

In faith whereof the above-named plenipotentiaries have signed the present Treaty and have affixed thereto their seals.

Done in duplicate at London this twenty-second day of December, 1931.

EXCHANGES OF NOTES

*The Secretary of State for Foreign Affairs to the American Ambassador*

FOREIGN OFFICE, S.W. 1.

No. T 15523/46/374

*22nd December, 1931*

YOUR EXCELLENCY,

With reference to Article 17 of the Extradition Treaty between His Majesty The King of Great Britain, Ireland and the British Dominions beyond the Seas and the President of the United States of America, signed this day at London, I have the honour to inform Your Excellency that His Majesty's Government in the United Kingdom desire that the provisions of the above mentioned Treaty shall, as from the date of its entry into [*15] force, be applicable to Palestine (excluding Transjordan).

2. I have accordingly the honour to enquire whether the United States Government agree with this proposal. In this event the present note and Your Excellency's reply to that effect will be regarded as placing on record the agreement arrived at in the matter.

I have the honour to be, with the highest consideration,

Your Excellency's obedient Servant,

*The American Ambassador to the Secretary of State for Foreign Affairs*

EMBASSY OF THE

UNITED STATES OF AMERICA

LONDON, *December 22, 1931*

No. 1582

SIR:

With reference to Article 17 of the Extradition Treaty between the President of the United States of America and His Majesty The King of Great Britain, Ireland and the British Dominions beyond the Seas, signed this day at London, I have the honor to inform you that the Government of the United States of America is agreeable to the proposal of His Majesty's Government in the United Kingdom that the provisions of the above mentioned Treaty shall, as from the date of its entry into force, be applicable to Palestine (excluding Transjordan).

I have the honor to be, with the highest consideration, Sir,

Your most obedient, humble [*16]  Servant,

*The Secretary of State for Foreign Affairs to the American Ambassador*

FOREIGN OFFICE, S.W. 1.

No. T 15523/46/374

*22nd December, 1931*

YOUR EXCELLENCY,

With reference to Article 17 of the Extradition Treaty between His Majesty The King of Great Britain, Ireland and the British Dominions beyond the Seas and the President of the United States of America, signed this day at London, I have the honour to inform Your Excellency that His Majesty's Government in the United Kingdom desire that the provisions of the above mentioned Treaty shall, as from the date of its entry into force, be applicable to Transjordan.

**J.A. 177**

2. I have accordingly the honour to enquire whether the United States Government agree with this proposal. In this event the present note and Your Excellency's reply to that effect will be regarded as placing on record the agreement arrived at in the matter.

I have the honour to be, with the highest consideration,

Your Excellency's obedient Servant,

*The American Ambassador to the Secretary of State for Foreign Affairs*

EMBASSY OF THE

UNITED STATES OF AMERICA

LONDON, *December 22, 1931*

No. 1583

SIR:

With reference to Article 17 of the Extradition Treaty [*17]  between the President of the United States of America and His Majesty The King of Great Britain, Ireland and the British Dominions beyond the Seas, signed this day at London, I have the honor to inform you that the Government of the United States of America is agreeable to the proposal of His Majesty's Government in the United Kingdom that the provisions of the above mentioned Treaty shall, as from the date of its entry into force, be applicable to Transjordan.

I have the honor to be, with the highest consideration, Sir,

Your most obedient, humble Servant,

**SIGNATORIES:**
CHARLES G. DAWES

[SEAL]

JOHN SIMON

[SEAL]

JOHN SIMON
His Excellency

General CHARLES G. DAWES, C.B.,

*etc., etc., etc.*

CHARLES G. DAWES
The Right Hon<ble>

Sir JOHN SIMON, G.C.S.I., *etc., etc., etc., Foreign Office, S.W. 1.*

**J.A. 178**