No. 24-4471

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

UMAR FAROOQ CHAUDHRY,
*Defendant/Appellant.*
_____

On Appeal From the United States District Court
for the Eastern District of Virginia
Alexandria Division (The Hon. Leonie M. Brinkema)
_____

REPLY BRIEF OF THE APPELLANT
_____

Geremy C. Kamens
Federal Public Defender for the
  Eastern District of Virginia
Counsel for Appellant
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800
Geremy_Kamens@fd.org

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................. iii

Introduction ....................................................................................................1

Argument.........................................................................................................2

The District Court Erred in Denying Chaudhry's Motion to Dismiss Because the Government's Deliberate Decision to Wait More Than a Decade Before Seeking His Extradition Violated His Sixth Amendment Right to a Speedy Trial ......................................................................................2

A.    The Government's Response Fails to Address *Doggett*'s Framework for Analyzing Uncommonly Long Post-Accusation Delays Until Trial. ...............................................................................2

B.    The Government Failed to Diligently Seek Chaudhry's Return Because Deportation Was Never a Viable Option for a Pakistani Citizen.......................................................................................................5

    1.    Chaudhry's Dual Citizenship Barred His Deportation From Pakistan. ...........................................................................6

    2.    Pakistan Explicitly Invited an Extradition Request in December 2009. ...........................................................................7

    3.    The Fact That the Pakistani Prosecution Was Fraudulent Undermines the Government's Rationale for Delay. ................10

    4.    The Extradition Treaty's Deferral Provision Does Not Excuse the Failure to Request Extradition Until 2020. ............11

C.    Chaudhry Made a Timely Invocation of His Sixth Amendment Right to a Speedy Trial...................................................................16

D.    The Government Fails to Rebut *Doggett*'s Presumption of Prejudice. ............................................................................................22

Conclusion ...........................................................................................................28

Certificate of Compliance

# TABLE OF AUTHORITIES

## Cases

*Barker v. Wingo*, 407 U.S. 514 (1972) .............................................................*passim*

*Beukes v. Pizzi*, 888 F. Supp. 465 (E.D.N.Y. 1995) ................................................14

*Doggett v. United States*, 505 U.S. 647 (1992).................................................*passim*

*Fong Yue Ting v. United States*, 149 U.S. 698 (1893)..............................................6

*In re Bramson*, 107 F.3d 865 (4th Cir. 1997) .........................................................19

*In re Kashamu*, 769 F.3d 490 (7th Cir. 2014)..........................................................19

*Maples v. Stegall*, 427 F.3d 1020 (6th Cir. 2005)..............................................23, 26

*Plaster v. United States*, 720 F.2d 340 (4th Cir. 1983) ..........................................13

*Prince v. State of Ala.*, 507 F.2d 693 (5th Cir. 1975) .............................................22

*Pullman-Standard v. Swint*, 456 U.S. 273 (1982) ....................................................9

*Smith v. Hooey*, 393 U.S. 374 (1969) ...............................................................*passim*

*Terlinden v. Ames*, 184 U.S. 270 (1902)..................................................................13

*United States v. Battis*, 589 F.3d 673 (3d Cir. 2009)...............................................17

*United States v. Brice*, 38 F. App'x 898 (4th Cir. 2002) ...........................................2

*United States v. Cavan*, 2016 WL 4098582 (S.D.N.Y. 2016)........................... 19-20

*United States v. Demirtas*, 204 F. Supp. 3d 158 (D.D.C. 2016).........................8, 15

*United States v. Diacolios*, 837 F.2d 79 (2d Cir. 1988)............................................7

*United States v. Duran-Gomez*, 984 F.3d 366 (5th Cir. 2020) ..........................23, 24

*United States v. Erenas-Luna*, 560 F.3d 772 (8th Cir. 2009) ............................23, 24

*United States v. Fernandes*, 618 F. Supp. 2d 62 (D.D.C. 2009) .................8, 9, 13

*United States v. Fernandez Sanchez*, 46 F.4th 211 (4th Cir. 2022)..........................4

*United States v. Ferreira*, 665 F.3d 701 (6th Cir. 2011) .........................................24

*United States v. Grimmond*, 137 F.3d 823 (4th Cir. 1998)...............................10, 26

*United States v. Heshelman*, 521 F. App'x 501 (6th Cir. 2013).........................8, 23

*United States v. Hunt*, 123 F.4th 697 (4th Cir. 2024) ...............................................4

*United States v. Ingram*, 446 F.3d 1332 (11th Cir. 2006) ......................................15

*United States v. Kin-Hong*, 110 F.3d 103 (1st Cir. 1997) ......................................13

*United States v. Lloyd*, 645 F. App'x 273 (4th Cir. 2016)................................22, 23

*United States v. Lozano*, 962 F.3d 773 (4th Cir. 2020) ..........................................21

*United States v. MacDonald*, 435 U.S. 850 (1978) ................................................11

*United States v. Manning*, 56 F.3d 1188 (9th Cir. 1995)........................................19

*United States v. McDonald*, 172 F. Supp. 2d 941 (W.D. Mich. 2001)...................20

*United States v. Moreno*, 789 F.3d 72 (2d Cir. 2015) ..............................................6

*United States v. Pomeroy*, 822 F.2d 718 (8th Cir. 1987)...........................8, 14, 20

*United States v. Reumayr*, 530 F. Supp. 2d 1200 (D.N.M. 2007) ...................19, 20

*United States v. Robinson*, 55 F.4th 390 (4th Cir. 2022).........................................9

*United States v. Seltzer*, 595 F.3d 1170 (10th Cir. 2010) .................................10, 11

*United States v. Shealey*, 641 F.3d 627 (4th Cir. 2011)............................................9

*United States v. Thomas*, 55 F.3d 144 (4th Cir. 1995) ...........................3, 4, 17, 21

*United States v. Tranakos*, 911 F.2d 1422 (10th Cir. 1990)...................................19

*United States v. Velazquez*, 749 F.3d 161 (3d Cir. 2014)....................16, 17, 18, 22

iv

*United States v. Walton*, 814 F.2d 376 (7th Cir. 1987) ...................................7, 8, 9

*United States v. Woolfolk*, 399 F.3d 590 (4th Cir. 2005)......................................3, 4

Constitutional Provisions, Statutes, Rules, and Treaties

U.S. Const. amend. VI ..........................................................................3, 4, 7, 9, 16

18 U.S.C. § 3184................................................................................................13

Extradition Treaty between the United States and the United Kingdom, U.S.-U.K., Dec. 22, 1931, 47 Stat. 2212 ............................................................. 11-16

Other Authorities

Office of the Press Secretary, The United States and Pakistan – a Strong and Enduring Relationship (Oct. 22, 2015), *available at* https://obamawhitehouse.archives.gov/the-press-office/2015/10/22/fact-sheet-united-states-and-pakistan-%E2%80%93-strong-and-enduring-relationship.......................................................................................................15

No. 24-4471

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH COURT
_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

UMAR FAROOQ CHAUDHRY,
*Defendant/Appellant*.

_____

On Appeal From the United States District Court
for the Eastern District of Virginia
Alexandria Division (The Hon. Leonie M. Brinkema)

_____

REPLY BRIEF OF THE APPELLANT

_____

## **INTRODUCTION**

The government's response fails to address two fundamental defects in its position. First, it ignores the Supreme Court's holding in *Doggett v. United States* that where delay is "uncommonly long," the government's negligence in bringing a defendant to trial "compounds over time as the presumption of evidentiary prejudice grows." 505 U.S. 647, 657 (1992). Second, because countries cannot lawfully deport their own citizens, extradition was the only viable mechanism by which to obtain Chaudhry's custody from Pakistan. The government's two 2010 requests for his

deportation were thus entirely futile, and the government failed for over a decade to comply with its "constitutional duty to make a diligent, good-faith effort to bring [Chaudhry] before the [U.S. district] court for trial." *Smith v. Hooey*, 393 U.S. 374, 383 (1969). The Court should therefore vacate the conviction and remand for dismissal.

## ARGUMENT

THE DISTRICT COURT ERRED IN DENYING CHAUDHRY'S MOTION TO DISMISS BECAUSE THE GOVERNMENT'S DELIBERATE DECISION TO WAIT MORE THAN A DECADE BEFORE SEEKING HIS EXTRADITION VIOLATED HIS SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL

### A.  The Government's Response Fails to Address *Doggett*'s Framework for Analyzing Uncommonly Long Post-Accusation Delays Until Trial.

The threshold question regarding the length of post-accusation delay "is actually a *double* enquiry" that first asks whether the delay is "presumptively prejudicial" enough to trigger the *Barker* analysis, but then requires consideration of "*the extent* to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 651-52 (emphasis added); *see also United States v. Brice*, 38 F. App'x 898, 900 (4th Cir. 2002) (unpublished) ("the first factor actually involves two inquiries").

As the Supreme Court explained in *Doggett*, "[t]his latter enquiry is significant to the speedy trial analysis because … the presumption that pretrial delay

has prejudiced the accused intensifies over time." 505 U.S. at 652. A post-accusation delay of five years, for example, carries more weight in the *Barker v. Wingo* calculus than a delay of two years.

The government's response acknowledges only the first inquiry, conceding that the delay here satisfies the threshold to warrant judicial review. Gov't Br. 26 & n.7. But it fails to grapple with how the extraordinary length of delay—stretching more than a decade beyond the minimum threshold of eight months to a year— affects the remaining factors. To be sure, "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria[.]" *Doggett*, 505 US. at 656. Yet the government's suggestion that this Court should simply ignore whether the post-accusation delay in this case stretched from either the December 2009 criminal complaint, or the November 2017 indictment, is incompatible with *Doggett*'s requirement that "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum" necessary to require judicial consideration. *Id.* at 652.

As explained in Chaudhry's opening brief, criminal complaints and arrest warrants constitute official accusations sufficient to trigger the Sixth Amendment's speedy trial protections. Appellant's Br. 16-18. Most significantly, *United States v. Thomas*, 55 F.3d 144 (4th Cir. 1995), and *United States v. Woolfolk*, 399 F.3d 590 (4th Cir. 2005), establish that the speedy trial clock in this case began ticking in

December 2009, based upon the filing of the complaint, arrest warrant, and international red notice. *See Thomas*, 55 F.3d at 149 ("the combination of the criminal complaint, the arrest warrant, and the federal detainer were sufficient to implicate the speedy trial provision of the Sixth Amendment"); *Woolfolk*, 399 F.3d at 597 ("Under *Thomas*, the filing of the detainer, warrant and complaint … triggered Woolfolk's Sixth Amendment speedy trial rights").

Aside from a sentence in a footnote, the government doesn't respond to this argument. Gov't Br. 26 n.7. It thus forfeited the issue. *See, e.g.*, *United States v. Hunt*, 123 F.4th 697, 701 (4th Cir. 2024) ("the government's failure to respond to an argument featured prominently in an opening brief [] deprive[s] this Court of an adversarial presentation about a disputed legal issue."); *United States v. Fernandez Sanchez*, 46 F.4th 211, 219 (4th Cir. 2022) (noting that "a single sentence" was insufficient "to preserve the Government's argument").

This failure infects the government's analysis of the *Barker* factors. Under *Doggett*, "the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness." 505 U.S. at 657. Yet the government's response treats the more-than-decade-long post-accusation delay in this case as if it were no different from a much shorter delay.

The government's emphasis on Pakistan's general unresponsiveness to extradition requests only reinforces *Doggett*'s observation that extensive delay between the government's criminal accusation and trial demonstrates the government's lack of interest in a swift prosecution. As the Supreme Court explained in *Doggett*, "the more weight the Government attaches to securing a conviction, the harder it will try to get it." 505 U.S. at 657. Conversely, "persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice." *Id.* If extradition from Pakistan was as difficult as the government claims, and it attached any weight to securing Chaudhry's prompt prosecution, it would not have waited a decade to request his extradition.

## B. The Government Failed to Diligently Seek Chaudhry's Return Because Deportation Was Never a Viable Option for a Pakistani Citizen.

Although Chaudhry was imprisoned by another sovereign, the U.S. government "had a constitutional duty to make a diligent, good-faith effort to bring him before the [U.S. district] court for trial." *Smith*, 393 U.S. at 383. To satisfy that obligation, the government had to make a "serious effort" to do so. *Doggett*, 505 U.S. at 652.

The government's claimed diligence in pursuing Chaudhry's deportation via two diplomatic notes sent in 2010 cannot be reconciled with the ubiquitous principle that nations cannot deport their own citizens. As explained in the opening brief,

deportation is universally restricted to non-citizens because it is premised on "[t]he power of the government to exclude foreigners from the country." *Fong Yue Ting v. United States*, 149 U.S. 698, 707 (1893); *see also* Appellant's Br. 25-26.

### 1. Chaudhry's Dual Citizenship Barred His Deportation From Pakistan.

Dual-citizens—persons with citizenship in more than one country—are still citizens, and the government explicitly acknowledged Chaudhry's Pakistani citizenship in its January 2010 diplomatic note to Pakistan. J.A. 405; J.A. 408; *see United States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015) (diligence is measured by "what was known to the government at the time of the investigation"). In 2020, Pakistan reiterated that it required "extradition documents" for Chaudhry, but not his three non-Pakistani co-defendants, because of his citizenship. J.A. 160.

The government never addresses this fundamental legal barrier to Chaudhry's deportation from Pakistan in its response, other than to falsely accuse Chaudhry of "provid[ing] no support for this claim," Gov't Br. 42. As noted in Chaudhry's opening brief, deportation of citizens is prohibited by Pakistan's Constitution, international law, and is a principle "well-known and obvious" to U.S. officials. Appellant's Br. 25-26 & n.3. Instead, the government relies on statements about Pakistan's occasional willingness to deport "another country's nationals" (Gov't Br. 39)—an irrelevant observation given Chaudhry's Pakistani citizenship. The government's two requests in 2010 that Chaudhry be deported were legally

impossible to fulfill from the outset, and thus did not constitute a "serious effort" to obtain his custody. *See Doggett*, 505 U.S. at 652.

### 2. Pakistan Explicitly Invited an Extradition Request in December 2009.

The futility of seeking deportation is underscored by Pakistan's explicit invitation for the United States to submit an extradition request. On December 15, 2009, a Pakistani official specifically told U.S. officials that Pakistan "will want the [U.S. Government] to follow the formal extradition process," that "the USG should initiate a formal request soon," and provided guidance for doing so. J.A. 114-115.

Principally relying upon *United States v. Walton*, 814 F.2d 376 (7th Cir. 1987), and *United States v. Diacolios*, 837 F.2d 79 (2d Cir. 1988), the government argues that a "formal extradition request" is not "the only hallmark of government diligence under the Sixth Amendment." Gov't Br. 29. But *Walton* and *Diacolios* are inapposite because in both cases (as explained in Chaudhry's brief at 27), formal extradition was demonstrably futile. In *Diacolios*, "no right of extradition exist[ed] under the treaty with that country to secure [the defendant's] return" due to that defendant's citizenship. 837 F.2d at 82. In *Walton*, the foreign country explicitly advised the United States several times that it had "no interest in extraditing [the defendant]." 814 F.2d at 379.

This case involves the opposite circumstance in which the foreign country expressly invited the United States to formally seek extradition. Two other cases

cited by the government, *United States v. Fernandes*, 618 F. Supp. 2d 62 (D.D.C. 2009), and *United States v. Demirtas*, 204 F. Supp. 3d 158 (D.D.C. 2016), note that "where a defendant is located abroad for much of the delay—the hallmark of government diligence is extradition." *Fernandes*, 618 F. Supp. 2d at 69; *Demirtas*, 204 F. Supp. 3d at 171 (quoting *Fernandes*); *see also United States v. Pomeroy*, 822 F.2d 718, 720 (8th Cir. 1987) (government is obligated "to seek extradition of an accused incarcerated in a foreign state when a treaty exists under which the accused could be extradited").

The government tries to distinguish *Pomeroy* and *United States v. Heshelman*, 521 F. App'x 501 (6th Cir. 2013), on the ground that the government "did nothing to facilitate the defendant's transfer" in *Pomeroy*, and "made only one attempt to inquire as to the conditions of the defendant's extradition" in *Heshelman*. Gov't Br. 41. But the government's two requests in 2010 for deportation were no more genuine as to Chaudhry, who was not deportable.

To be clear, there is no bright-line rule requiring the government to formally request extradition in every case involving an accused who is overseas. But there is likewise no bright-line rule that any effort by the United States to obtain custody of an accused is sufficient, no matter how ineffectual. As the court in *Walton* "warn[ed]," although a showing of due diligence may not require "a formal extradition request" in every such case, "the due diligence factor should be

adjudicated on a case-by-case basis taking into account the totality of the circumstances." *Walton*, 814 F.2d at 380. Here, Pakistan not only explicitly advised the United States to seek extradition promptly after the defendants' arrest, but deportation was entirely foreclosed as to Chaudhry. As such, "the hallmark of government diligence [was] extradition," *Fernandes*, 618 F. Supp. 2d at 69, which the government only pursued a decade after the speedy trial clock began.

The government wrongly characterizes the district court's legal conclusions regarding whether the government's efforts satisfied the diligence requirement as a question of fact deserving deference. Gov't Br. 30, 40. The facts about (1) what the government did and did not do (two diplomatic notes requesting deportation in 2010, no extradition request until 2020); (2) Pakistan's 2009 and 2020 requests that the U.S. seek Chaudhry's formal extradition; and (3) Chaudhry's dual citizenship and the government's knowledge of that fact, are not in dispute.

The legal import of those undisputed facts is subject to de novo review. *See United States v. Robinson*, 55 F.4th 390, 399 (4th Cir. 2022) (noting that Court "[r]eview[s] the district court's decision de novo" as to Sixth Amendment right to speedy trial); *United States v. Shealey*, 641 F.3d 627, 633 (4th Cir. 2011) ("'We review de novo the legal conclusions of the district court,' including Sixth Amendment claims.") (citation omitted); *cf. Pullman-Standard v. Swint*, 456 U.S. 273, 290 n.19 (1982) (noting that "whether the rule of law as applied to the

established facts is or is not violated" constitutes a mixed question of law and fact).

To the extent the district court's ruling is subject to deference, it was clearly erroneous to conclude that the government's two 2010 requests constituted a serious effort to secure Chaudhry's return for trial.

### 3. The Fact That the Pakistani Prosecution Was Fraudulent Undermines the Government's Rationale for Delay.

The government claims that "the delay in bringing Chaudhry to trial was due to the fact that he was arrested, convicted, and imprisoned in Pakistan between December 2009 and June 2020." Gov't Br. 28 (citing *United States v. Grimmond*, 137 F.3d 823 (4th Cir. 1998)). But *Grimmond* only permitted the U.S. to delay diligent efforts to obtain custody until June 2010, when Chaudhry was convicted, and not thereafter. Appellant's Br. 23. Furthermore, while "awaiting the completion of another sovereign's prosecution may be a plausible reason for delay in some circumstances, [] that does not necessarily mean that it is a justifiable excuse in every case." *United States v. Seltzer*, 595 F.3d 1170, 1178 (10th Cir. 2010).

In this case, the fraudulent nature of the Pakistani prosecution undermines the government's rationale for delaying efforts to obtain Chaudhry's custody. As Chaudhry argued below, "[k]nowing that these baseless charges and convictions were based on false evidence, the U.S. government cannot claim that its delay in seeking extradition was due to a reasoned decision to allow Pakistan to prosecute

Chaudhry without interference from the United States." J.A. 182-183. Nor has "the U.S. government []ever contested that Umar's prosecution in Pakistan, and his ten years of imprisonment, were based on a false charge and false evidence." J.A. 288.

While the government falsely states that Chaudhry "fail[ed] to substantiate this contention," Gov't Br. 42 n.9, a declaration from Chaudhry's father, who attended the trial, attests to the fraudulent emails and false testimony he observed. J.A. 293-295. Conceding that Chaudhry may have "violated United States law," he averred that "[t]he entire prosecution in Pakistan was a sham and based on fake evidence and testimony." J.A. 295.[1] Given "the government's burden to explain why such a wait was necessary in [this] particular case," *Seltzer*, 595 F.3d at 1178, its continued failure to identify anything in support of the Pakistani prosecution illustrates the illogic of declining to pursue Chaudhry's extradition so he could fully serve a fraudulent sentence in Pakistan.

### 4. The Extradition Treaty's Deferral Provision Does Not Excuse the Failure to Request Extradition Until 2020.

The government's reliance on Article 4 of the extradition treaty confuses the timing of surrender—which pursuant to the extradition treaty may be deferred until

---

[1] Such evidence was properly before the district court even though presented subsequent to the motion hearing. *United States v. MacDonald*, 435 U.S. 850, 858-59 (1978) ("[P]retrial denial of a speedy trial claim can never be considered a complete, formal, and final rejection by the trial court of the defendant's contention; rather, the question at stake in the motion to dismiss necessarily 'remains open, unfinished [and] inconclusive' until the trial court has pronounced judgment.").

a domestic sentence on an unrelated offense is fully served—with the government's constitutional obligation to diligently seek Chaudhry's return.[2] Nothing in the treaty prevented the United States from diligently pursuing extradition and resolving the outstanding court order barring transfer that would have positioned Chaudhry for surrender upon completion of his sentence in 2020, rather than in December 2023.

The government also wrongly assumes that Pakistan would have invoked Article 4 and deferred Chaudhry's return until he completed his sentence. Despite Pakistan's 2009 invitation for the United States to request extradition, the government failed to ask whether Pakistan would be willing to extradite Chaudhry until 2020.  That Pakistan may not have honored an earlier request for extradition is not an excuse for failing to make one. The lesson of *Smith v. Hooey*—which the government fails to address—is that "the possibility of a refusal is not the equivalent of asking and receiving a rebuff." *Smith*, 393 U.S. at 382.

Nor has the government established that such a request would have been futile. The government successfully pursued extradition in another case involving an

---

[2] The first paragraph of Article 4 provides that "[t]he extradition shall not take place if the person claimed … is still under trial in the territories of the High Contracting Party applied to, *for the crime or offence for which his extradition is demanded*." J.A. 174 (emphasis added). Because the fraudulent Pakistani charges were ostensibly distinct from the U.S. charges, this paragraph was inapplicable. If, however, the U.S. government believed that the Pakistani offenses were part of the same crime for which it sought extradition, then extradition was deferrable only until the conclusion of the trial in Pakistan in June 2010.

accused from Pakistan in 2015, J.A. 155, and it successfully pursued Chaudhry's extradition in 2023. "This is meager evidence that extradition would have been futile; it does not approach the definitive, multi-source evidence other courts have found sufficient to excuse a failure to request extradition." *Fernandes*, 618 F. Supp. 2d at 69 (noting that a "single conversation" in which agents "were told that extradition might take several years" did not suffice to establish futility).

"Extradition" means "the surrender by one nation to another of an individual accused or convicted of an offense outside of its own territory, and within the territorial jurisdiction of the other, which, being competent to try and to punish him, demands the surrender." *Terlinden v. Ames*, 184 U.S. 270, 289 (1902). Article 3 of the extradition treaty defines the offenses for which "[e]xtradition shall be reciprocally granted." J.A. 173-174. In the United States, whether a person is extraditable is initially determined by a court. 18 U.S.C. § 3184.

Article 4, by contrast, does not concern whether Chaudhry was extraditable. Instead, it addresses the timing of a person's extradition to a requesting State, a matter that is exclusively within the discretion of the treaty signatory. *See, e.g.*, *Plaster v. United States*, 720 F.2d 340, 354 (4th Cir. 1983) ("[T]he ultimate decision to extradite is, as has frequently been noted, reserved to the Executive as among its powers to conduct foreign affairs."); *United States v. Kin-Hong*, 110 F.3d 103, 109 (1st Cir. 1997) (same); Appellant's Br. 32.

That explains why, in *Beukes v. Pizzi*, 888 F. Supp. 465, 469 (E.D.N.Y. 1995), the United States could decline to exercise its discretion to invoke a provision authorizing the deferral of extradition until that defendant competed his U.S. sentence. The government seeks to distinguish *Beukes* based on the *reasons* the U.S. declined to exercise its deferral authority, but that misses the point. Gov't Br. 46 n.10. *Beukes* illustrates that treaty signatories enjoy discretion to invoke or not invoke standard extradition deferral provisions like Article 4, even when the provision says "extradition shall be deferred until … the full execution of any punishment awarded to him." Appellant's Br. 31-32.

While the deferral provision at issue in *Pomeroy* said "surrender *may* be deferred," not "shall," 822 F.2d 718, 721 n.7 (8th Cir. 1987) (emphasis added), whether to invoke *any* such deferral provision—regardless of whether it says "shall" as in *Beukes* or "may" as in *Pomeroy*—remains within the discretion of the treaty signatory. Consequently, in this case, "[a]lthough under Article [4] of the treaty, [Pakistani] officials admittedly had the discretion to deny [Chaudhry's] surrender, there is nothing in the record to indicate they would have done so had a proper request been made by the Government." *Pomeroy*, 822 F.2d at 721-22.

Perhaps Pakistan would have been willing to extradite Chaudhry because, having obtained propaganda value arising from the prosecution of the Sargodha Five, it no longer viewed it necessary for the defendants to fully serve their

sentences. Or perhaps the 2013 election of Nawaz Sharif as Prime Minister and the resumption of high-level diplomatic relations (in the wake of the 2011 killing of Osama Bin Laden) altered Pakistan's views regarding extradition of the Sargodha Five.[3] Of course, that's all speculation. But because the U.S. government never asked Pakistan to extradite Chaudhry between 2010 and 2020, it is not entitled to assume the answer. *Smith*, 393 U.S. at 382 ("[T]he possibility of a refusal is not the equivalent of asking and receiving a rebuff.").

In response, the government says it is Chaudhry's burden to establish that Pakistan "would" have exercised its "discretion to waive the terms of the treaty." Gov't Br. 45. That's backwards. It remains the government's responsibility to bring a defendant to trial, to establish a valid reason for post-accusation delays, and to show it made a diligent, good faith effort to pursue a speedy trial. *See Barker v. Wingo*, 407 U.S. 514, 527 (1972); *see also United States v. Ingram*, 446 F.3d 1332, 1337 (11th Cir. 2006) ("the burden is on the prosecution to explain the cause of the pre-trial delay") (citation omitted); *United States v. Demirtas*, 204 F. Supp. 3d 158, 171 (D.D.C. 2016) ("It is [] the government's burden to show that it pursued the defendant 'with reasonable diligence'"). The government's failure to ask Pakistan to

---

[3] *See, e.g.*, Office of the Press Secretary, The United States and Pakistan – a Strong and Enduring Relationship (Oct. 22, 2015) (describing Presidential visit by Prime Minister Nawaz Sharif to the White House), *available at* https://obamawhitehouse.archives.gov/the-press-office/2015/10/22/fact-sheet-united-states-and-pakistan-%E2%80%93-strong-and-enduring-relationship.

extradite Chaudhry between 2009 and 2020, therefore, must be held against the government. *See Smith*, 393 U.S. at 382.

The upshot is that the U.S. government took no serious steps to obtain Chaudhry's custody from Pakistan between 2009 and 2020. Furthermore, the government has no response to the argument that Article 4 cannot provide a valid reason for the U.S. government to delay its extradition request because the provision relates solely to the timing of surrender, not the timing of its extradition request. By failing to request Chaudhry's extradition until after his release in 2020, the government thus ensured an additional period of delay until the scheduled trial in 2024. Assuming for the sake of argument that Pakistan would have deferred Chaudhry's extradition pursuant to Article 4 had the U.S. initiated the extradition process during the previous decade, it could have obtained his return at the latest upon Chaudhry's release in 2020.

### C. Chaudhry Made a Timely Invocation of His Sixth Amendment Right to a Speedy Trial.

The third *Barker* factor, "whether, in due course, the defendant asserted his right to a speedy trial," *Doggett*, 505 U.S. at 651, must be balanced with the government's burden "to show that the claimed waiver was knowingly and voluntarily made." *Barker*, 407 U.S. at 529. In other words, "a defendant's limited responsibility to assert his speedy trial right exists alongside the government's overarching burden to prove waiver of that fundamental right." *United States v.*

*Velazquez*, 749 F.3d 161, 182 (3d Cir. 2014). "Whether and how a defendant asserts his right is closely related to the other factors," because "[t]he more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 531. On the other hand, if a defendant "explicitly decline[s]" to assert their speedy trial right, this factor will weigh heavily against the defendant. *United States v. Thomas*, 55 F.3d 144, 150 (4th Cir. 1995).

But to assert, or knowingly fail to assert, the right to a speedy trial, the defendant must have knowledge of the pending charges. *Doggett*, 505 U.S. at 653. The government's response does not dispute that while Chaudhry was imprisoned in Pakistan between 2009 and 2020, he "had no knowledge of the pending U.S. charges." Appellant's Br. 35; *cf. Barker*, 407 U.S. at 529 (government bears burden of establishing defendant's knowledge of charges); *Velazquez*, 749 F.3d at 184 (noting "the government's burden to demonstrate [the defendant's] knowledge"). Accordingly, he is "not to be taxed for [failing to] invoke[e] his speedy trial right" during that time. *Doggett*, 505 U.S. at 654.

For counseled defendants, assertion of the right to speedy trial requires "a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success." *United States v. Battis*, 589 F.3d 673, 681 (3rd Cir. 2009). Prompt filing of a speedy trial motion before the district court satisfies this standard. *See, e.g., Velazuez*, 749 F.3d at 184 (filing of

motion within four months of arrest weighed in defendant's favor). On the other hand, counsel's failure to object to eleven continuances, after which the defendant files a motion to dismiss on speedy trial grounds (but consents to two more continuances), weighs against a defendant. *Barker*, 407 U.S. at 535-36. Chaudhry filed a motion to dismiss on speedy trial grounds within 30 days of his arraignment.

The government says this factor weighs in its favor because (1) Chaudhry "spent almost a year contesting" his extradition following his release from prison in Pakistan; and (2) he consented at arraignment to a single continuance of the trial date after the district court had already certified the case as complex. Gov't Br. 47-49. Neither argument has merit.

First, courts "assign[] responsibility for specific periods of delay," and the failure to raise a premature speedy trial claim after Chaudhry was released in Pakistan does not "outweigh a period of [government] negligence that was more than four times as long." *See Velazquez*, 749 F.3d at 181 n.19. Indeed, the government fails to respond to the argument that Chaudhry's initial opposition to extradition following his release does not implicitly waive his speedy trial claim based on the government's failure to act diligently during the prior decade. Appellant's Br. 37. In other words, because Chaudhry's speedy trial claim does not include the one-year period in which he opposed extradition from Pakistan, he did not implicitly waive his challenge to the government's lack of diligence during the distinct period

between 2009 and 2020. Following his extradition, Chaudhry promptly challenged the government's previous decade-long failure to make a serious effort to obtain his custody at the first available opportunity.

Second, none of the cases cited by the government (Gov't Br. 47-48) are apposite because each involved circumstances in which the defendant's speedy trial claim depended on periods of post-accusation delay for which *the defendant* was responsible. *See In re Bramson*, 107 F.3d 865 (4th Cir. 1997) (unpublished, denying petition for mandamus where delay was "clearly primarily attributable to [the defendant's] decision to flee this country" following indictment); *In re Kashamu*, 769 F.3d 490, 492 (7th Cir. 2014) (denying mandamus on ground that district court lacked jurisdiction and Sixth Amendment challenge was premature, but stating in dicta that defendant couldn't complain about successfully avoiding extradition); *United States v. Tranakos*, 911 F.2d 1422, 1428-29 (10th Cir. 1990) (defendants waived Speedy Trial Act rights and initially moved to continue trial for eight months, one moved for a subsequent continuance, only filing motion to dismiss thereafter); *United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995) (defendant challenged 30-month post-indictment delay that he "could have avoided" by returning to the United States given his knowledge of charges); *United States v. Reumayr*, 530 F. Supp. 2d 1200, 1206-07 & n.6 (D.N.M. 2007) (defendant responsible for delay caused by extradition proceedings); *see also United States v. Cavan*, 2016 WL

4098582, at *5 (S.D.N.Y. July 28, 2016) (defendant challenged post-accusation delay in which he "was aware" of the pending charges, yet failed to assert his speedy trial rights).

None of these cases involve defendants who challenged post-accusation delay that either was not attributable to the defendant or in which the defendant was unaware of pending charges. Indeed, after reciting the general rule that courts usually hold "the defendant, rather than the government, liable for delay caused by extradition proceedings or by other attempts to remain outside the United States," the court in *Reumayr* noted that "[t]he only exceptions to the above rule have occurred where the government was dilatory or negligent in pursuing extradition." *Reumayr*, 530 F. Supp. 2d at 1206.

"In such cases," the *Reumayr* court explained, "courts have been willing to hold the government responsible for the delay between accusation and trial, even if the defendant is out of the country for much of that period of time." *Id.* (citing *United States v. Pomeroy*, 822 F.2d 718 (8th Cir. 1987), and *United States v. McDonald*, 172 F. Supp. 2d 941 (W.D. Mich. 2001)). The court distinguished *Pomeroy* and *McDonald* because unlike in those cases, "the Government did not sleep on its extradition rights at all, let alone for over ten years [as in *McDonald*]. Instead, the Government initiated the extradition process only a few days after Defendant was arrested[.]" *Id.* at 1207 n.7.

Third, the government's reliance on *United States v. Thomas*, 55 F.3d at 150 (citing *Barker*, 407 U.S. at 531-32), and *United States v. Lozano*, 962 F.3d 773 (4th Cir. 2020), to support its argument that Chaudhry's consent to extend the trial date one time by two and a half months—after the district court already certified the case as complex on the government's motion—is misplaced. Gov't Br. 49. As noted in Appellant's Br. 36 n.5, neither *Thomas* (in which the defendant explicitly declined to assert his speedy trial right) nor *Lozano* (involving a defendant who failed to raise a speedy trial claim before the district court) have any similarity to this case. Although this Court in *Thomas*, citing *Barker*, noted that the failure to seek a speedy trial "is a factor in determining whether the defendant's speedy-trial right has been violated," *Thomas*, 55 F.3d at 150, *Barker*'s support for that observation was made in the context of the defendant's failure to object to *eleven* continuance motions. *Barker*, 407 U.S. at 517. Even in that context, the Supreme Court described the case as "close," *id.* at 533, and emphasized that "[c]ourts should indulge every reasonable presumption against waiver … [and] not presume acquiescence in the loss of fundamental rights." *Id.* at 525-26.

The government seeks what *Barker* warned against: a presumption of acquiescence in the loss of a fundamental right based upon a single assent to extend the Speedy Trial Act deadline by two-and-a-half months, after the district court had already granted the government's motion to certify the case as complex,

21

notwithstanding the prompt filing of a motion to dismiss on speedy trial grounds. The Court should reject the government's argument and find that this factor weighs heavily in favor of Chaudhry.

### D. The Government Fails to Rebut *Doggett*'s Presumption of Prejudice.

Chaudhry argued in his opening brief that this case involves both actual prejudice and presumptive prejudice. Appellant's Br. 38-41. The government argues that Chaudhry failed to identify actual prejudice, and that the district court's determination as to actual prejudice deserves deference. Gov't Br. 49-54. But it fails to respond to the argument at Appellant's Br. 38-39 that prejudice must be presumed.

Furthermore, both the government and the district court failed to assess prejudice in the context of a protracted post-accusation delay stretching for more than a decade. *Doggett*, 505 U.S. at 655-56 (noting that prejudice factor requires assessment in context of "the length of delay"). Because both the government and the district court failed to acknowledge the length of the post-accusation delay, the district court's prejudice determination does not warrant deference. *See Velazquez*, 749 F.3d at 184 (rejecting district court's actual prejudice analysis because it ignored presumptive prejudice).

"Negligence over a sufficiently long period can establish a general presumption that the defendant's ability to present a defense is impaired, meaning that a defendant can prevail on his claim despite not having shown specific

prejudice." *United States v. Lloyd*, 645 F. App'x 273, 278 (4th Cir. 2016) (quoting *Velazquez*, 749 F.3d at 175); *see also United States v. Erenas-Luna*, 560 F.3d 772, 779 (8th Cir. 2009) ("Where the government has been negligent … prejudice can be presumed if there has been an excessive delay."). Presumptive prejudice applies in this case because the government's "[m]ere inquiries about release and availability" for deportation were "not compliance with [its] duty" to make serious efforts to bring Chaudhry to trial. *See Prince v. State of Ala.*, 507 F.2d 693, 705 (5th Cir. 1975). Due to the valid extradition treaty and Chaudhry's Pakistani citizenship, the government's failure to seek Chaudhry's extradition for ten years establishes its lack of diligence. *Smith*, 393 U.S. at 382.

Government negligence over a period of three to five years in pursuing custody of a defendant is sufficient to trigger presumptive prejudice for purposes of the fourth *Barker* criteria.[4] *See Erenas-Luna*, 560 F.3d at 779 (three-year delay sufficient to apply presumption of prejudice); *United States v. Heshelman*, 521 F. App'x 501, 510 (6th Cir. 2013) (three-year delay caused by "government's intentional delay in seeking extradition warrants a presumption of prejudice"); *Velazquez*, 749 F.3d at 184-85 (five-year delay); *United States v. Duran-Gomez*, 984

---

[4] "'[P]resumptively prejudicial' for purposes of triggering the *Barker* four-factor inquiry is different from 'presumptively prejudicial' for purposes of assessing the prejudice prong." *Maples v. Stegall*, 427 F.3d 1020, 1030 (6th Cir. 2005).

F.3d 366, 379 (5th Cir. 2020) (delay due to government negligence of five years "g[ives] rise to the presumption of prejudice").

Here, the ten-year period of post-accusation delay is two to three times greater than that required to warrant presumptive prejudice. Given the length of the delay, the burden shifts to the government to "persuasively rebut" the presumption of prejudice by "affirmatively prov[ing] that the delay left [the defendant's] ability to defend himself unimpaired." *Doggett*, 505 U.S. at 658 & n.4. "[T]he government faces a high, and potentially insurmountable, hurdle in seeking to disprove general prejudice where the period of delay is extraordinarily long." *Velazquez*, 749 F.3d at 185; *accord United States v. Ferreira*, 665 F.3d 701, 708 (6th Cir. 2011) ("The government's negligence cannot be tolerated 'simply because the accused cannot demonstrate exactly how it has prejudiced him.'") (quoting *Doggett*). Given its lack of diligence, even if this Court were to conclude that "the Government ably counter[ed] [Chaudhry's] efforts to demonstrate particularized trial prejudice," such arguments "[do] not, and probably could not [], affirmatively prove[] that the delay left his ability to defend himself unimpaired." *Doggett*, 505 U.S. at 658 n.4.

In sum, because the government did not diligently pursue a speedy trial, and the period of post-accusation delay attributable to the government's negligence was excessive, prejudice is presumed. *Doggett*, 505 U.S. at 656-58. Accordingly, all four

*Barker* criteria weigh heavily in Chaudhry's favor, and the Court need not reach the question of actual prejudice.

Nonetheless, even if the Court determined that the government exercised reasonable diligence in seeking to obtain Chaudhry's custody, the record also demonstrates actual prejudice. *See Erenas-Luna*, 560 F.3d at 778-79 ("A showing of actual prejudice is required if the government exercised reasonable diligence in pursuing the defendant."). With respect to actual prejudice, the government argues that because Chaudhry was unaware of the pending charges while he was incarcerated in Pakistan, he could not have experienced anxiety and concern. Gov't Br. 50-51. It also claims that both the possibility of earlier release from Pakistani prison and impairment to Chaudhry's defense due to post-accusation delay are too speculative. Gov't Br. 49-54.

Although Chaudhry was unaware of formal charges, the looming uncertainty about whether he faced or would face U.S. charges was itself a source of anxiety and concern. His anxiety was evidenced by his 2018 inquiry to consular officials about whether charges were pending. J.A. 197. The government should not be permitted to use Chaudhry's lack of knowledge about formal charges—a circumstance entirely of the government's own making through its failure to pursue extradition—as a shield against his legitimate claim of prejudice.

Anxiety and concern that accompany the prospect of pending charges weigh as heavily on an incarcerated person as on one who is not. *See Smith*, 393 U.S. at 379. Chaudhry endured not just the anxiety of potential charges, but also concern about the possibility of additional imprisonment after serving a sentence on false charges under incredibly harsh conditions. As such, the record is sufficient to establish that Chaudhry "suffered 'anxiety and concern.'" *See Maples v. Stegall*, 427 F.3d 1020, 1032 (6th Cir. 2005) (concluding that defendant's letter to court demonstrated that he suffered anxiety and concern during delay).

With respect to the possibility of concurrent sentences, courts have long recognized that the loss of concurrent sentencing opportunities constitutes actual prejudice in speedy trial cases. *See Smith*, 393 U.S. at 378 (recognizing possible concurrent sentences as legitimate concern protected by speedy trial right); *United States v. Grimmond*, 137 F.3d 823, 830 n.10 (4th Cir. 1998). The fact that concurrent service of U.S. and Pakistani sentences might have required diplomatic negotiations does not make the prejudice speculative; it simply underscores why the government's failure to even attempt extradition was so damaging to Chaudhry's interests.

Moreover, the government cannot credibly argue that claims of lost concurrent sentencing opportunities are too speculative when its own failure to seek extradition eliminated any possibility of such relief. Had the government pursued

extradition, there would be no need to speculate—we would know definitively whether concurrent sentences were possible. The government's argument attempts to benefit from the very uncertainty it created through its decade of inaction.

Finally, as to impairment of Chaudhry's defense, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655-56. This principle applies with particular force here, where the government's delay led directly to conditions that destroyed a co-defendant's capacity to testify. The fact that other co-defendants might have been available to testify does not eliminate the prejudice, as Yemer's unique perspective and potential testimony have been entirely lost.

Pointing to the video that was posted on YouTube after Chaudhry and his co-defendants left the country, Gov't Br. 52-53, the government argues that Chaudhry cannot specify exactly what defenses he was deprived of making as a result of his co-defendant's unavailability. But the video says nothing about providing material support to *Jaish-e-Mohammed*, the offense of conviction. J.A. 246 (plea agreement). All of the purported evidence about providing support to JEM occurred in Pakistan, and all defenses that Chaudhry might have pursued turn on the testimony and evidence of those who were there, including Yemer. The government should not be permitted to profit from uncertainty about the significance of Yemer's potential

testimony when its own delay may have contributed to the circumstances that rendered Yemer unable to testify.

The actual prejudice Chaudhry suffered, from anxiety and harsh conditions of confinement, to lost concurrent sentencing opportunities, to the permanent loss of Yemer's potential testimony, was substantial and concrete. The speculative elements the government identifies are a direct result of its own failure to seek extradition for over a decade. The government should not be permitted to use the uncertainty created by its own delay to defeat Chaudhry's legitimate claims of prejudice.

## CONCLUSION

The government's response confirms that it made no meaningful effort to obtain Chaudhry's custody from Pakistan for over a decade. Under *Doggett*'s framework for analyzing such protracted delays, this violation of Chaudhry's constitutional right to a speedy trial requires reversal of the district court's denial of his motion to dismiss and that his conviction be vacated.

Respectfully submitted,

s/   Geremy C. Kamens
_____

Geremy C. Kamens
Federal Public Defender for the
  Eastern District of Virginia
Counsel for Appellant
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800
Geremy_Kamens@fd.org

Dated February 10, 2025

# **CERTIFICATE OF COMPLIANCE**

1.     This brief has been prepared using Microsoft Word for Office 365 software, Times New Roman font, 14-point proportional type size.

2.     Excluding the table of contents, table of authorities, signature block, statement with respect to oral argument, and this certificate of compliance, this brief contains no more than 6,500 words, specifically 6,474 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

     February 10, 2025                   s/  Geremy C. Kamens      
           Date                         Geremy C. Kamens
                                         Federal Public Defender